No. 22-13005-F

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————————

DONALD J. TRUMP,

Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA,

Defendant-Appellant.

————————————

On Appeal from the United States District Court
for the Southern District of Florida

————————————

**MOTION FOR PARTIAL STAY PENDING APPEAL**

————————————

JUAN ANTONIO GONZALEZ
  *United States Attorney*
  *Southern District of Florida*
  *99 NE 4th Street, 8th Floor*
  *Miami, FL 33132*
  *305-961-9001*

MATTHEW G. OLSEN
  *Assistant Attorney General*

JAY I. BRATT
  *Chief, Counterintelligence and Export
  Control Section*
JULIE EDELSTEIN
SOPHIA BRILL
JEFFREY SMITH
  *Attorneys*
  *National Security Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
    *202-233-0986*

*Donald J. Trump v. United States of America*, No. 22-13005-F

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLSOURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendants-Appellants certify that the following have an interest in the outcome of this appeal:

American Broadcasting Companies, Inc. (DIS)

Associated Press

Bloomberg, LP

Bratt, Jay I.

Brill, Sophia

Cable News Network, Inc. (WBD)

Cannon, Hon. Aileen M.

Caramanica, Mark Richard

CBS Broadcasting, Inc. (CBS)

Corcoran, M. Evan

Cornish, Sr., O'Rane M.

Cunningham, Clark

Dearie, Hon. Raymond J.

Dow Jones & Company, Inc. (DJI)

Edelstein, Julie

Eisen, Norman Larry

E.W. Scripps Company (SSP)

*Donald J. Trump v. United States of America*, No. 22-13005-F

Finzi, Roberto

Fischman, Harris

Former Federal and State Government Officials

Fugate, Rachel Elise

Gonzalez, Juan Antonio

Gray Media Group, Inc. (GTN)

Gupta, Angela D.

Halligan, Lindsey

Inman, Joseph M.

Karp, Brad S.

Kessler, David K.

Kise, Christopher M Knopf, Andrew Franklin

Lacosta, Anthony W.

LoCicero, Carol Jean

McElroy, Dana Jane

Minchin, Eugene Branch

NBC Universal Media, LLC (CMCSA)

Patel, Raj K.

Rakita. Philip

Reeder, Jr., L. Martin

Reinhart, Hon. Bruce E.

*Donald J. Trump v. United States of America*, No. 22-13005-F

Rosenberg, Robert

Seidlin-Bernstein, Elizabeth

Shapiro, Jay B.

Shullman, Deanna Kendall

Smith, Jeffrey

The New York Times Company (NYT)

The Palm Beach Post

Times Publishing Company

Tobin, Charles David

Trump, Donald J.

Trusty, James M.

United States of America

Wertheimer, Fred

WP Company. LLC.

Dated:  September 16, 2022          */s/ Juan Antonio Gonzalez*
                                    Juan Antonio Gonzalez
                                    United States Attorney

*Donald J. Trump v. United States of America*, No. 22-13005-F

## INTRODUCTION AND SUMMARY

The district court has entered an unprecedented order enjoining the Executive Branch's use of its own highly classified records in a criminal investigation with direct implications for national security. In August 2022, the government obtained a warrant to search the residence of Plaintiff, former President Donald J. Trump, based on a judicial finding of probable cause to believe that the search would reveal evidence of crimes including unlawful retention of national defense information. Along with other evidence, the search recovered roughly 100 records bearing classification markings, including markings reflecting the highest levels of classification and extremely restricted distribution. Two weeks later, Plaintiff filed an action seeking the appointment of a special master to review the seized materials and an injunction barring the government from continuing to use them in the meantime. The court granted that extraordinary relief, enjoining further review or use of any seized materials "for criminal investigative purposes" pending a special-master process that will last months. A36-A37.[1]

Although the government believes the district court fundamentally erred in appointing a special master and granting injunctive relief, the government seeks to stay only the portions of the order causing the most serious and immediate harm to the government and the public by (1) restricting the government's review and use of records bearing classification markings and (2) requiring the government to disclose those

---

[1] References to "A__" refer to the Addendum to this motion.

*Donald J. Trump v. United States of America*, No. 22-13005

records for a special-master review process. This Court should grant that modest but critically important relief for three reasons.

First, the government is likely to succeed on the merits. The district court appointed a special master to consider claims for return of property under Federal Rule of Criminal Procedure 41(g) and assertions of attorney-client or executive privilege. All of those rationales are categorically inapplicable to the records bearing classification markings. Plaintiff has no claim for the return of those records, which belong to the government and were seized in a court-authorized search. The records are not subject to any possible claim of personal attorney-client privilege. And neither Plaintiff nor the court has cited any authority suggesting that a former President could successfully invoke executive privilege to prevent the Executive Branch from reviewing its own records. Any possible assertion of executive privilege over these records would be especially untenable and would be overcome by the government's "demonstrated, specific need" for them, *United States v. Nixon*, 418 U.S. 683, 713 (1974), because they are central to its ongoing investigation.

Second, the government and the public would suffer irreparable harm absent a stay. The district court recognized the government's overriding interest in assessing and responding to the national-security risk from the possible unauthorized disclosure of the records bearing classification markings. The court thus stated that its order was not intended to "impede" an ongoing "classification review and/or intelligence assessment" of those records by the Intelligence Community (IC). A14-A15. But as the head of the

2

*Donald J. Trump v. United States of America*, No. 22-13005

Counterintelligence Division of the Federal Bureau of Investigation (FBI) explained in a sworn declaration, the criminal investigation is itself essential to the government's effort to identify and mitigate potential national-security risks. A38-A43. The court's order hamstrings that investigation and places the FBI and Department of Justice (DOJ) under a Damoclean threat of contempt should the court later disagree with how investigators disaggregated their previously integrated criminal-investigative and national-security activities. It also irreparably harms the government by enjoining critical steps of an ongoing criminal investigation and needlessly compelling disclosure of highly sensitive records, including to Plaintiff's counsel.

Third, the limited stay sought here would impose no cognizable harm on Plaintiff. It would not disturb the special master's review of other materials, including records potentially subject to attorney-client privilege. Nor would a stay infringe any interest in confidentiality: The government's criminal investigators have already reviewed the records bearing classification markings, and the district court's order contemplates that the IC may continue to review and use them for certain national-security purposes.

Finally, because the government and the public will suffer irreparable injury absent a stay, the United States respectfully asks that the Court act on this motion as soon as practicable.

*Donald J. Trump v. United States of America*, No. 22-13005

## STATEMENT

### A.   Background

1.      In the year after Plaintiff left office, the National Archives and Records Administration (NARA) endeavored to recover what appeared to be missing records subject to the Presidential Records Act (PRA). A44. The PRA provides that the United States retains "complete ownership, possession, and control of Presidential records," 44 U.S.C. § 2202, which the law defines to include all records "created or received by the President" or his staff "in the course of conducting activities which relate to or have an effect upon" the President's official duties, *id.* § 2201(2). The PRA specifies that when a President leaves office, NARA "shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." *Id.* § 2203(g)(1).

Plaintiff ultimately provided NARA with 15 boxes of records in January 2022. A44. NARA discovered that the boxes contained "items marked as classified national security information, up to the level of Top Secret and including Sensitive Compartmented Information and Special Access Program materials." *Id.* Material is marked as Top Secret if its unauthorized disclosure could reasonably be expected to cause "exceptionally grave damage" to national security. Exec. Order 13,526 § 1.2(1) (Dec. 29, 2009).

NARA referred the matter to DOJ, noting that highly classified records appeared to have been improperly transported and stored. A63-A64. DOJ then sought access to

4

*Donald J. Trump v. United States of America*, No. 22-13005

the 15 boxes under the PRA's procedures governing presidential records in NARA's custody. A44-A45; *see* 44 U.S.C. § 2205(2)(B). Plaintiff, after receiving notification of DOJ's request, neither attempted to pursue any claim of executive privilege in court, *see* 44 U.S.C. § 2204(e), nor suggested that any documents bearing classification markings had been declassified. *See* A45.

2.      The FBI developed evidence that additional boxes remaining at Plaintiff's residence at the Mar-a-Lago Club in Palm Beach, Florida, were also likely to contain classified information. On May 11, 2022, Plaintiff's counsel was served with a grand-jury subpoena for "[a]ny and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump bearing classification markings." A48.

In response, Plaintiff's counsel and his custodian of records produced an envelope containing 38 documents bearing classification markings. A76-A77. Plaintiff's counsel represented that the records came from a storage room at Mar-a-Lago, where all records removed from the White House had been placed, and that no such records were in any other location.  A76-A77. Plaintiff's custodian also certified, "on behalf of the Office of Donald J. Trump," that a "diligent search was conducted of the boxes that were moved from the White House to Florida" and that "[a]ny and all responsive documents accompany this certification." A50. Again, Plaintiff did not assert any claim

*Donald J. Trump v. United States of America*, No. 22-13005

of privilege, and did not suggest that any documents bearing classification markings had been declassified.

3.      The FBI uncovered evidence that the response to the grand-jury subpoena was incomplete, that classified documents likely remained at Mar-a-Lago, and that efforts had likely been undertaken to obstruct the investigation. On August 5, 2022, the government applied to a magistrate judge for a search warrant, citing 18 U.S.C. § 793 (willful retention of national defense information), 18 U.S.C. § 2071 (concealment or removal of government records), and 18 U.S.C. § 1519 (obstruction). A54. The magistrate judge found probable cause that evidence of those crimes would be found at Mar-a-Lago and authorized the government to seize, among other things, "[a]ny physical documents with classification markings, along with any containers/boxes ... in which such documents are located." A96, A98. The magistrate judge also approved the government's proposed filter protocols for handling any materials potentially subject to personal attorney-client privilege. A87-A88.

The government executed the warrant on August 8, 2022. The search recovered roughly 11,000 documents from the storage room as well as Plaintiff's private office, roughly 100 of which bore classification markings, including markings indicating the highest levels of classification. A17 & n.4; *see* A51 (photograph); A115-A121 (inventory). In some instances, even FBI counterintelligence personnel required additional clearances to review the seized documents. Dist. Ct. Docket Entry (D.E.) 48 at 12-13.

*Donald J. Trump v. United States of America*, No. 22-13005

**B.      Proceedings below**

1.      Two weeks later, Plaintiff filed a "Motion for Judicial Oversight and Additional Relief" asking the district court to appoint a special master to adjudicate potential claims of executive and attorney-client privilege, to enjoin DOJ from further review and use of the seized documents, and to order the government to return certain property under Rule 41(g). The district court granted Plaintiff's motion in part, authorizing appointment of a special master to "review the seized property," make recommendations on "assertions of privilege," and "evaluate claims for return of property." A36. Pending the special-master review, the court enjoined the government from "further review and use" of all seized materials "for criminal investigative purposes." *Id.* The court stated that the government "may continue to review and use the materials seized for purposes of intelligence classification and national security assessments." A37.

The district court acknowledged that the exercise of equitable jurisdiction to restrain a criminal investigation is "reserved for 'exceptional' circumstances." A21 (quoting *Hunsucker* v. *Phinney*, 497 F.2d 29, 32 (5th Cir. 1974)). The court also concluded that Plaintiff had not shown that the court-authorized search violated his constitutional rights. A22. But the court concluded that the other considerations set forth in *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975), favored the exercise of jurisdiction, principally because the seized materials included some "personal documents." *Id.*; *see* A22-A25. The court similarly found that Plaintiff had standing because he had made "a colorable

7

*Donald J. Trump v. United States of America*, No. 22-13005

showing of a right to possess at least some of the seized property," namely, his personal effects and records potentially subject to personal attorney-client privilege. A26.

The district court then held that "review of the seized property" was necessary to adjudicate Plaintiff's claims for return of property and potential assertions of privilege. A27-A32. As to attorney-client privilege, the court concluded that further review would ensure that the attorney-client filter process approved in the warrant had not overlooked privileged material. A28-A29. The court did not resolve the government's arguments that a former President cannot assert executive privilege to prevent the Executive Branch from reviewing its own records and that any assertion of privilege here would in any event be overcome. A29-A30. Instead, the court stated only that "even if any assertion of executive privilege by Plaintiff ultimately fails," he should be allowed "to raise the privilege as an initial matter." A30-A31.

2.    The government appealed and sought a partial stay of the order as it applied to records bearing classification markings. D.E. 69. The court denied the motion. A4-A13. The court declined to address the government's argument that those records are not subject to any plausible claim for return or assertion of privilege, instead referring generally to "factual and legal disputes as to precisely which materials constitute personal property and/or privileged materials." A7. The court reiterated that its order does not bar the IC's review and assessment of the records bearing classification markings and suggested that even criminal investigative steps are permitted if they are "truly ... inextricable" from the IC's activities. A11-A12. But the

*Donald J. Trump v. United States of America*, No. 22-13005

court gave little further guidance on distinguishing between permitted and prohibited investigative steps.

Finally, the district court confirmed that as part of its special-master review, the government must allow Plaintiff's counsel to inspect the records bearing classification markings. D.E. 91 at 4. The court directed the master to prioritize review of those records, and directed him to submit all recommendations by November 30, 2022, subject to extensions. *Id.* at 5.

## ARGUMENT

In determining whether to grant a stay pending appeal, this Court considers (1) the likelihood of success on appeal; (2) whether the movant will suffer irreparable injury; (3) the balance of hardships; and (4) the public interest, which merges with harm to the government. *Nken v. Holder*, 556 U.S. 418, 434-435 (2009); *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). "Ordinarily the first factor is the most important." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). Here, all factors strongly support a partial stay.

## I.   The government is likely to succeed on the merits as to the records bearing classification markings.

The district court erred in exercising jurisdiction as to the records bearing classification markings. Even if the exercise of jurisdiction were proper, there would be no basis for preventing the government from using its own records. And the court's

*Donald J. Trump v. United States of America*, No. 22-13005

suggestion that there are "factual and legal disputes" about the records bearing classification markings, A7, is incorrect and not relevant in any event.

> **A.    The district court erred by exercising jurisdiction as to records bearing classification markings.**

1.    "In order for an owner of property to invoke Rule 41(g), he must show that he had a possessory interest in the property seized by the government." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). The district court held that Plaintiff had standing because he had made "a colorable showing of a right to possess at least some of the seized property." A26. But "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Plaintiff lacks standing at least as to the discrete set of records with classification markings because those records are government property, over which the Executive Branch has exclusive control and in which Plaintiff has no property interest. *See* 44 U.S.C. § 2202; Exec. Order 13,526, § 1.1(2); *see also Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).

2.    Likewise, the district court's exercise of equitable jurisdiction regarding an ongoing criminal investigation—which is reserved for "exceptional" circumstances, *Hunsucker*, 497 F.2d at 32—cannot extend to these records. Under *Richey*, four factors guide the exercise of that jurisdiction: (1) whether the government has "displayed 'a callous disregard for the constitutional rights'" of the search's subject; (2) "whether the plaintiff has an individual interest in and need for the material"; (3) "whether the

*Donald J. Trump v. United States of America*, No. 22-13005

plaintiff would be irreparably injured by denial of the return of the property"; and (4) "whether the plaintiff has an adequate remedy at law." 515 F.2d at 1243-44 (citation omitted). None of those factors favors exercising jurisdiction as to the records with classification markings.

On the "[f]irst, and perhaps foremost" factor, *id.* at 1243, the district court correctly found that Plaintiff has not shown any violation of his rights. A22. The remaining factors apply only to "material whose return [plaintiff] seeks" and to injury resulting from "denial of the return of the property." *Richey*, 515 F.2d at 1243. Plaintiff has no right to the "return" of records with classification markings, which are not his property. *Id.* The district court reasoned that other materials in which Plaintiff might have a cognizable interest cannot readily be separated from those in which he does not. A22. But that rationale is inapplicable to records with classification markings, which are easily identifiable and already segregated from the other seized materials. D.E. 48 at 13.

3.    Plaintiff has observed that the PRA generally provides that presidential records from his tenure shall be "available" to him. 44 U.S.C. § 2205(3). But a right to *access* records in NARA's custody does not support any claim for the *return* of records owned by the government. *Id.* § 2202. And Plaintiff is in any event poorly positioned to invoke the PRA in seeking extraordinary equitable relief because he failed to comply with his PRA obligation to deposit the records at issue with NARA in the first place.

*Donald J. Trump v. United States of America*, No. 22-13005

**B.    The records bearing classification markings are not subject to any plausible claim of privilege that would prevent the government from reviewing and using them.**

The district court restrained the government's review and use of seized materials to allow the special master to consider claims for return of personal property and assertions of attorney-client or executive privilege. None of those rationales applies to the records bearing classification markings: The markings establish on the face of the documents that they are not Plaintiff's personal property, and neither Plaintiff nor the court has suggested that they might be subject to attorney-client privilege. Plaintiff has never even attempted to make or substantiate any assertion of executive privilege. Even if he did, no such assertion could justify restricting the Executive Branch's review and use of these records for multiple independent reasons.

1.    Executive privilege exists "not for the benefit of the President as an individual, but for the benefit of the Republic." *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 449 (1977) (*GSA*). Consistent with the privilege's function of protecting the confidentiality of Executive Branch communications, it may be invoked to prevent the sharing of materials *outside* the Executive Branch. *Cf. Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (per curiam). But neither Plaintiff nor the district court cited any case in which executive privilege has been successfully invoked to prohibit the sharing of documents within the Executive Branch itself.

To the contrary, in what appears to be the only case in which such an assertion was made, the Supreme Court rejected former President Nixon's claim that a statute

*Donald J. Trump v. United States of America*, No. 22-13005

requiring the GSA to review documents and recordings created during his presidency violated executive privilege. *GSA*, 433 U.S. at 446-55. The Court emphasized that the former President was attempting to assert "a privilege against the very Executive Branch in whose name the privilege is invoked." *Id.* at 447-48. And the Court "readily" rejected that assertion because the review at issue was "a very limited intrusion by personnel in the Executive Branch sensitive to executive concerns." *Id.* at 451.

This case similarly involves potential assertions of executive privilege by a former President against "the very Executive Branch in whose name the privilege is invoked." *Id.* at 447-48. Here, too, review and use of the records in a criminal investigation is a "limited intrusion by personnel in the Executive Branch sensitive to executive concerns." *Id.* at 451. And an executive privilege claim would be especially implausible as to records like those at issue here because the Constitution vests the incumbent President, as "head of the Executive Branch and as Commander in Chief," with the authority "to classify and control access to information bearing on national security." *Egan*, 484 U.S. at 527. Accordingly, even if an assertion of privilege might justify withholding the records at issue from Congress or the public, there would be no basis for withholding them from the Executive Branch itself.

2.    Even if a former President could assert executive privilege against the Executive Branch's review and use of its own documents, any such assertion would inevitably fail as to the records bearing classification markings. Executive privilege is qualified, not absolute. In *United States v. Nixon*, the Supreme Court emphasized that

13

*Donald J. Trump v. United States of America*, No. 22-13005

privilege claims "must be considered in light of our historic commitment to the rule of law." 418 U.S. at 708. The Court thus held that executive privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial." *Id.* at 713; *see also In re Sealed Case*, 121 F.3d 729, 754-56 (D.C. Cir. 1997) (applying *United States v. Nixon* in the context of a grand-jury subpoena). This case does not involve a pending trial, but the need for the records bearing classification markings is even more clearly "demonstrated" and "specific": The government is investigating potential violations of 18 U.S.C. § 793(e), which prohibits unauthorized retention of national defense information. The records here are not merely relevant evidence; they are the very objects of the offense. Similarly, the government's investigation of potential violations of 18 U.S.C. § 1519, prohibiting obstruction of justice, requires assessing the adequacy of the response to a grand-jury subpoena for all documents in Plaintiff's possession "bearing classification markings." A48. Again, the records at issue are central to that investigation.

Even more clearly than in *United States v. Nixon*, there is no risk that the government's review of the seized records would chill communications by future presidential advisors. *See* 418 U.S. at 712 (presidential advisors would not "be moved to temper the candor of their remarks  by the infrequent occasions of disclosure" for a "criminal prosecution"). Just the opposite: The government seeks to ensure compliance with laws protecting the confidentiality and proper treatment of sensitive government

14

*Donald J. Trump v. United States of America*, No. 22-13005

records—a process that should enhance, rather than undermine, the candor of future presidential communications.

3.    Finally, Plaintiff declined to assert executive privilege when his custodian was served with a grand-jury subpoena seeking "[a]ny and all documents or writings" in his custody "bearing classification markings." A48. Instead, Plaintiff's counsel produced a set of classified records to the government, and Plaintiff's custodian certified that "[a]ny and all responsive documents" had been produced after a "diligent search." A50. Now that the government has discovered more than 100 additional responsive records, Plaintiff cannot claim that those records are shielded from review by a privilege that he failed to assert at the appropriate time.

**C.    No factual or legal disputes justify the district court's order as to the records bearing classification markings.**

The district court did not identify any basis on which Plaintiff might successfully assert executive privilege—or any other legal ground—to prevent the government from reviewing the records bearing classification markings. Instead, it stated that the special-master process is needed to resolve "disputes as to the proper designation of the seized materials." A7-A8. That is doubly mistaken.

1.    Plaintiff has never disputed that the government's search recovered records bearing classification markings. *See* A115-A121. Instead, the district court cited portions of Plaintiff's filings in which he suggested that he *could have* declassified those documents or purported to designate them as "personal" records under the PRA before

15

*Donald J. Trump v. United States of America*, No. 22-13005

leaving office. A7-A8. But despite multiple opportunities, Plaintiff has never represented that he *in fact* took either of those steps—much less supported such a representation with competent evidence. The court erred in granting extraordinary relief based on unsubstantiated possibilities.

2.      In any event, even if Plaintiff had asserted in court that he declassified the records, the government would still need to review the records to assess that claim, and they would still have been responsive to the grand-jury subpoena for all records "bearing classification markings." A48. Any assertion of executive privilege would thus plainly be overcome under *United States v. Nixon* because the government would still need to assess the records in investigating possible violations of Sections 793(e) and 1519. And if the records had actually been declassified, the government would have an additional compelling need to understand what had been declassified and why (and who has seen it) to protect intelligence sources and methods.

Similarly, Plaintiff only weakens his case by suggesting that he might have purported to categorize these records as "personal" records under the PRA. Such a categorization would be flatly inconsistent with the statute, which defines "personal records" as those "of a purely private or nonpublic character which do not relate to" the President's official duties. 44 U.S.C. § 2201(3). And if Plaintiff truly means to assert—implausibly—that records containing sensitive national-security information fit that description, he cannot maintain that the same records are protected by executive

16

*Donald J. Trump v. United States of America*, No. 22-13005

privilege—*i.e.*, that they are "Presidential communications" made in furtherance of the "performance of" his official "duties." *United States v. Nixon*, 418 U.S. at 705.

## II.     Absent a partial stay, the government and the public will be irreparably harmed.

The district court's order irreparably harms the government and the public by (A) interfering with the government's response to the national-security risks arising from the mishandling and possible disclosure of records bearing classification markings; (B) impairing a criminal investigation into these critical national-security matters; and (C) forcing the government to disclose highly sensitive materials as part of the special-master review.

A.     By enjoining the review and use of the records bearing classification markings for criminal-investigative purposes, the district court's order impedes the government's efforts to protect the Nation's security. As explained by the Assistant Director who oversees the FBI's Counterintelligence Division, the Bureau's national-security and law-enforcement missions cannot be bifurcated without impairing its work. A38-A43. Since the 9/11 attacks, the FBI has integrated its intelligence and law-enforcement functions when it pursues its national-security mission. A41. The FBI's investigation into mishandling of classified information is thus "an exercise both of the FBI's criminal investigation authority and of the FBI's authority to investigate threats to the national security." *Attorney General's Guidelines for Domestic FBI Operations* 6 (2008),

*Donald J. Trump v. United States of America*, No. 22-13005

https://www.justice.gov/archive/opa/docs/guidelines.pdf. Enjoining criminal investigative activity in this area thus inevitably harms national security.

The district court specified that its order should not interfere with the IC's "classification review and/or intelligence assessment," A14, and later clarified that "to the extent that such intelligence review becomes truly and necessarily inseparable from criminal investigative efforts," the order "does not enjoin the Government from proceeding with its Security Assessments," A9. But that is not sufficient. The IC's review and assessment seek to evaluate the harm *that would* result from disclosure of the seized records. A40-A41. The court's injunction restricts the FBI—which has lead responsibility for investigating such matters in the United States—from using the seized records in its criminal-investigative tools to assess which if any records *were in fact disclosed*, to whom, and in what circumstances.

For example, the court's injunction bars the government from "using the content of the documents to conduct witness interviews." A9. The injunction also appears to bar the FBI and DOJ from further reviewing the records to discern any patterns in the types of records that were retained, which could lead to identification of other records still missing. *See* A42 (describing recovery of "empty folders with 'classified' banners"). And the injunction would prohibit the government from using any aspect of the seized records' contents to support the use of compulsory process to locate any additional records.

18

*Donald J. Trump v. United States of America*, No. 22-13005

Disregarding a sworn declaration from a senior FBI official, the court dismissed such concerns as "hypothetical scenarios" and faulted the government for not identifying an "emergency" or "imminent disclosure of classified information." A11. But the record makes clear that the materials were stored in an unsecure manner over a prolonged period, and the court's injunction itself prevents the government from even beginning to take necessary steps to determine whether improper disclosures might have occurred or may still occur.

Furthermore, although the court purported to leave the IC's review and assessment undisturbed, those reviews involve DOJ and FBI personnel and are closely tied to the ongoing criminal investigation. A40-A42. The court offered little guidance on how FBI and DOJ personnel should bifurcate their efforts, forcing them to discern that line for themselves on pain of contempt should the court later disagree with their judgments—a threat that will inevitably chill their legitimate activities.

B.       The injunction also unduly interferes with the criminal investigation.  It prohibits the government from accessing the seized records to evaluate whether charges are appropriate and even from "bringing charges based on" those records. A9. "The notion that a district court could have *any* input on a United States Attorney's investigation and decision whether to ... bring a case" is "entirely incompatible with the constitutional assignment to the Executive Branch of exclusive power over prosecutorial decisions." *In re Wild*, 994 F.3d 1244, 1287 (11th Cir. 2021) (Tjoflat, J., concurring).

*Donald J. Trump v. United States of America*, No. 22-13005

Moreover, the public has an "interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973); *see Cobbledick v. United States*, 309 U.S. 323, 325 (1940) ("[E]ncouragement of delay is fatal to the vindication of the criminal law."). The government's need to proceed apace is heightened where, as here, it has reason to believe that obstructive acts may impede its investigation. *See* A108-09 (finding of probable cause for violations of 18 U.S.C. § 1519 and discussing risks of "obstruction of justice"). And the prohibition on review and use of records bearing classification markings is uniquely harmful here, where the criminal investigation concerns retention and handling of *those very records*.

C.    Finally, requiring disclosure of classified records to a special master and to Plaintiff's counsel, *see* D.E. 91 at 4, would impose irreparable harm on the government and public. The Supreme Court has emphasized that courts should be cautious before "insisting upon an examination" of records whose disclosure would jeopardize national security "even by the judge alone, in chambers." *United States v. Reynolds*, 345 U.S. 1, 10 (1952). In criminal proceedings, courts have routinely rejected arguments that cleared defense counsel are entitled to classified information without the requisite "need to know"—even after a prosecution has commenced. *See, e.g.*, *United States v. Daoud*, 755 F.3d 479, 483-85 (7th Cir. 2014) (reversing order requiring disclosure); *United States v. Asgari*, 940 F.3d 188, 191 (6th Cir. 2019) (similar). Indeed, in the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, which governs criminal proceedings, Congress aimed "to protect classified information from unnecessary disclosure at any

20

*Donald J. Trump v. United States of America*, No. 22-13005

stage of a criminal trial," *United States v. O'Hara,* 301 F.3d 563, 568 (7th Cir. 2002), including by permitting the government to move the court *ex parte* to withhold classified information from the defense, *see* 18 U.S.C. App. III § 4; *United States v. Campa*, 529 F.3d 980, 994-96 (11th Cir. 2008). Yet the district court here ordered disclosure of highly sensitive material to a special master and to Plaintiff's counsel—potentially including witnesses to relevant events—in the midst of an investigation, where no charges have been brought. Because that review serves no possible value, there is no basis for disclosing such sensitive information.

## III.    A partial stay would impose no cognizable harm on Plaintiff.

Allowing the government to use and review the records bearing classification markings for criminal-investigative purposes would not cause any cognizable injury to Plaintiff. Plaintiff has no property or other legal interest in those records. None of the potential harms to Plaintiff identified by the district court, *cf.* A34, are applicable to those records. Criminal investigators have already conducted an initial review of the records, A19, and the court allowed other government officials to continue to review and use them for national-security purposes. Plaintiff has identified no cognizable harm from merely allowing criminal investigators to continue to review and use this same subset of the seized records.

Plaintiff's only possible "injury" is the government's investigation, but that injury is not legally cognizable. "[T]he cost, anxiety, and inconvenience of having to defend against" potential criminal prosecution cannot "by themselves be considered

21

*Donald J. Trump v. United States of America*, No. 22-13005

'irreparable' in the special legal sense of that term." *Younger v. Harris*, 401 U.S. 37, 46 (1971). That is why courts have exercised great caution before interfering through civil actions with criminal investigations or cases. *See id.*; *see also, e.g.*, *Deaver v. Seymour*, 822 F.2d 66, 69-71 (D.C. Cir. 1987); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993). The district court erred by departing from that fundamental principle of judicial restraint.

*Donald J. Trump v. United States of America*, No. 22-13005

## CONCLUSION

The district court's order should be stayed to the extent it (1) enjoins the further review and use for criminal-investigative purposes of the seized records bearing classification markings and (2) requires the government to disclose those records for a special-master review process.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
  *United States Attorney*
  *Southern District of Florida*
  *99 NE 4th Street, 8th Floor*
  *Miami, FL 33132*
  *305-961-9001*

MATTHEW G. OLSEN
  *Assistant Attorney General*

JAY I. BRATT
  *Chief, Counterintelligence and Export Control Section*
JULIE EDELSTEIN
SOPHIA BRILL
JEFFREY SMITH
  *Attorneys*
  *National Security Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  202-233-0986

  *Counsel for Appellant*

Dated:  September 16, 2022

23

*Donald J. Trump v. United States of America*, No. 22-13005

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,197 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6)because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.


*/s/ Juan Antonio Gonzalez*
Juan Antonio Gonzalez
United States Attorney

*Donald J. Trump v. United States of America*, No. 22-13005

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system. Plaintiffs' counsel was also notified of this motion by email.

*/s/ Juan Antonio Gonzalez*
Juan Antonio Gonzalez
United States Attorney