# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

DONALD J. TRUMP,

Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA,

Defendant-Appellant

---

On Appeal from the United States District Court
for the Southern District of Florida

---

## PLAINTIFF-APPELLEE DONALD J. TRUMP'S RESPONSE TO APPELLANT'S MOTION FOR PARTIAL STAY PENDING APPEAL

---

**James M. Trusty**
Ifrah Law PLLC
1717 Pennsylvania Avenue N.W.
Suite 650
Washington, DC 20006
Telephone: (202) 524-4176
Email: jtrusty@ifrahlaw.com

*/s/ Christopher M. Kise*
**Christopher M. Kise**
Florida Bar No. 855545
Chris Kise & Associates, P.A.
201 East Park Avenue
5th Floor
Tallahassee, FL 32301
Telephone: (850) 270-0566
Email: chris@ckise.net

*Donald J. Trump v. United States of America*, No 22-13005-F

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1-1(a)(2) of the Eleventh Circuit Rules, Appellee Donald J. Trump, submits this Notice of Certificate of Interested Persons and Corporate Disclosure Statement. The following have an interest in the outcome of this proceeding:

1. American Broadcasting Companies, Inc. (DIS)

2. Associated Press

3. Bloomberg, LP

4. Bratt, Jay I.

5. Brill, Sophia

6. Cable News Network, Inc. (WBD)

7. Cannon, Hon. Aileen M.

8. Caramanica, Mark Richard

9. CBS Broadcasting, Inc. (CBS)

10. Corcoran, M. Evan

11. Cornish, Sr., O'Rane M.

12. Cunningham, Clark

13. Dearie, Hon. Raymond J.

14. Dow Jones & Company, Inc. (DJI)

*Donald J. Trump v. United States of America*, No 22-13005-F

15.    Edelstein, Julie

16.    Eisen, Norman Larry

17.    E.W. Scripps Company (SSP)

18.    Finzi, Roberto

19.    Fischman, Harris

20.    Former Federal and State Government Officials

21.    Fugate, Rachel Elise

22.    Gonzalez, Juan Antonio

23.    Gray Media Group, Inc. (GTN)

24.    Gupta, Angela D.

25.    Halligan, Lindsey

26.    Inman, Joseph M.

27.    Karp, Brad S.

28.    Kessler, David K.

29.    Kise, Christopher M.

30.    Knopf, Andrew Franklin

31.    Lacosta, Anthony W.

32.    LoCicero, Carol Jean

33.    McElroy, Dana Jane

*Donald J. Trump v. United States of America*, No 22-13005-F

34.    Minchin, Eugene Branch

35.    NBC Universal Media, LLC (CMCSA)

36.    Patel, Raj K.

37.    Rakita, Philip

38.    Reeder, Jr., L. Martin

39.    Reinhart, Hon. Bruce E

40.    Rosenberg, Robert

41.    Seidlin-Bernstein, Elizabeth

42.    Shapiro, Jay B.

43.    Shullman, Deanna Kendall

44.    Smith, Jeffrey

45.    The New York Times Company (NYT)

46.    The Palm Beach Post

47.    Times Publishing Company

48.    Tobin, Charles David

49.    Trump, Donald J.

50.    Trusty, James M.

51.    United States of America

52.    Wertheimer, Fred

*Donald J. Trump v. United States of America*, No 22-13005-F

53.    WP Company, LLC


Dated:  September 20, 2022          */s/ Christopher M. Kise*
                                    Christopher M. Kise

*Donald J. Trump v. United States of America*, No 22-13005-F

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT............................ C-1
TABLE OF CONTENTS ..........................................................i
TABLE OF AUTHORITIES......................................................ii
I.    SUMMARY OF ARGUMENT ......................................... 1
II.   FACTUAL BACKGROUND AND
      PROCEDURAL HISTORY........................................... 2
III.  STANDARDS OF REVIEW ........................................... 5
      A. Standard of Review – Injunction ........................... 7
      B. Standard of Review – Appointment of Special Master ......... 8
IV.   ARGUMENT .......................................................... 9
      A. THE DISTRICT COURT PROPERLY TEMPORARILY
         ENJOINED THE GOVERNMENT FROM REVIEWING
         AND USING PURPORTEDLY CLASSIFIED MATERIAL
         FOR CRIMINAL INVESTIGATIVE PURPOSES................ 9
         1.   The Government Misconstrues
              Rule 41(g) Standing ................................... 10
         2.   The Government has not Proven
              the Documents are Classified.......................... 11
         3.   President Trump has a Possessory Interest in
              Presidential Records .................................. 13
         4.   The Government Cannot Demonstrate
              it will be Irreparably Harmed Absent a Stay .......... 16
         5.   President Trump and the Public would be
              Harmed by a Stay ..................................... 19
      B. THIS COURT LACKS JURISDICTION TO REVIEW
         THE SPECIAL MASTER'S AUTHORITY BECAUSE
         THE APPOINTMENT ORDER IS NOT
         APPEALABLE ON AN INTERLOCUTORY BASIS........... 20
CONCLUSION .................................................................27

*Donald J. Trump v. United States of America*, No 22-13005-F

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Fulton County*,

    207 F.3d 1303 (11th Cir. 2000) ........................................................8

*Armstrong v. Exec. Office of the President*,

    1 F.3d 1274 (D.C. Cir. 1993) ........................................................13

*Bogard v. Wright*,

    159 F.3d 1060 (7th Cir. 1998) ........................................................23

*Bridgeport Guardians, Inc. v. Delmonte*,

    537 F.3d 214 (2d Cir. 2008)...........................................................25

*Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*,

    112 F.3d 1125, 1126 (11th Cir. 1997) .............................................7

*Cohen v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J.*,

    867 F.2d 1455 (3d Cir. 1989).........................................................24

*Cooter & Gell v. Hartmarx Corp.*,

    496 U.S. 384 (1990) ........................................................................8

*Dep't of Navy v. Egan*,

    484 U.S. 518 (1988) ......................................................................11

*Doe No. 1 v. United States*,

    749 F.3d 999 (11th Cir. 2014) ......................................................21

*Drummond Co., Inc. v. Conrad & Scherer, LLP*,

    885 F.3d 1324 (11th Cir. 2018) ....................................................24

*Garcia-Mir v. Meese,*

781 F.2d 1450 (11th Cir. 1986) ..................................................... 6, 7

*Gary W. v. State of Louisiana,*

601 F.2d 240 (5th Cir.1979) ............................................................. 8

*Grilli v. Metropolitan Life Insurance Co.,*

78 F.3d 1533 (11th Cir.1996) ........................................................... 8

*Gulfstream Aerospace Corp. v. Mayacamas Corp.,*

485 U.S. 271 (1988) ........................................................................ 24

*Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.,*

845 F. Supp. 2d 288 (D.D.C. 2012) ........................................... 14, 15

*Lelsz v. Kavanagh,*

112 F.R.D. 367 (N.D. Tex. 1986) .................................................... 25

*Macri v. U.S. ex. rel. John H. Maxwell & Co.,*

353 F.2d 804 (9th Cir. 1965) ............................................................ 8

*McFarlin v. Conseco Servs., LLC,*

381 F.3d 1251 (11th Cir. 2004) ...................................................... 22

*National Org. for the Reform of Marijuana Laws v. Mullen,*

828 F.2d 536 (9th Cir. 1987) .......................................................... 23

*Nken v. Holder,*

556 U.S. 418 (2009) ....................................................................... 6-7

*Packwood v. Senate Select Comm. on Ethics,*

510 U.S. 1319 (1994) ........................................................................ 6

iii

*Pearson v. Kemp*,

    831 F. App'x 467 (11th Cir. 2020) ................................................. 25

*Reynolds v. McInnes*,

    380 F.3d 1303 (11th Cir. 2004) ........................................................ 8

*Ruiz v. Estelle,*

    650 F.2d 555 (5th Cir. 1981) ............................................................ 7

*Shakman v. Clerk of Cook Cnty.*,

    994 F.3d 832 (7th Cir. 2021) .......................................................... 23

*Siegel v. LePore*,

    234 F.3d 1163 (11th Cir. 2000) ........................................................ 7

*State of Fla. v. Dep't of Health & Hum. Servs.*,

    19 F.4th 1271 (11th Cir. 2021)........................................................ 17

*Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*,

    385 U.S. 23 (1966) .......................................................................... 24

*Thompson v. Enomoto,*

    815 F.2d 1323 (9th Cir. 1987) ........................................................ 23

*United States v. Melquiades,*

    394 F. App'x 578 (11th Cir. 2010) ................................................. 10

*United States v. Rodriguez-Aguirre,*

    264 F.3d 1195 (10th Cir. 2001) ................................................. 10, 11

*Va. Petroleum Jobbers Ass'n v. FPC,*

    259 F.2d 921 (D.C. Cir. 1958)......................................................... 6

*Virginian R. Co. v. United States,*

     272 U.S. 658 (1926) ..........................................................................6

*Williams v. Zbaraz,*

     442 U.S. 1309 (1979) .......................................................................5

**Statutes**

18 U.S.C. § 793(e) .................................................................................12

28 U.S.C. § 1291 ....................................................................................21

28 U.S.C. § 1292(a)(1) ....................................................................22, 23

28 U.S.C. § 1292(b)..........................................................................22, 24

44 U.S.C. § 2201(2)-(3) .........................................................................14

44 U.S.C. § 2203(f)(1) ...........................................................................14

44 U.S.C. § 2204 ....................................................................................15

44 U.S.C. § 2205(3)................................................................................15

44 U.S.C. §§ 2201, *et seq.* ....................................................................15

50 U.S.C. § 3161 ....................................................................................12

50 U.S.C. § 3163 ....................................................................................12

**Other Authorities**

Devlin Barrett and Carol D. Leonnig, *Material on foreign nation's
    nuclear capabilities seized at Trump's Mar-a-Lago*, WASH. POST (Sept.
    6, 2022), https://www.washingtonpost.com/national-
    security/2022/09/06/trump-nuclear-documents/ ..................................16

Exec. Order 13526 (Dec. 29, 2009) ........................................................12

*Donald J. Trump v. United States of America*, No 22-13005-F

## Rules

Fed.R.Civ.P. 53 ................................................................................ 8

Fed. R. Civ. P. 41(g) ............................................................... 10, 15

*Donald J. Trump v. United States of America*, No 22-13005-F

# I.   SUMMARY OF THE ARGUMENT

This investigation of the 45th President of the United States is both unprecedented and misguided.  In what at its core is a document storage dispute that has spiraled out of control, the Government wrongfully seeks to criminalize the possession by the 45th President of his own Presidential and personal records.  Recognizing the extraordinary circumstances presented by this case, the District Court determined that the appointment of a special master and entry of a limited injunction were "fully consonant" with "the public interest, the principles of civil and criminal procedure, and the principles of equity."A13.[1]

Having failed to convince the District Court to impose a stay of its Order, the Government now asks this Court to "presuppose[] the content, designation, and associated interests in materials under its control," A7, and to preclude any review by a highly regarded and jointly recommended special master of what the Government unilaterally contends are "classified records."  This Court should, respectfully, decline the Government's invitation to proceed directly toward a preordained conclusion.

---

[1] References to "A __" refer to the Addendum to the Government's Motion.

*Donald J. Trump v. United States of America*, No 22-13005-F

The District Court did not err in temporarily enjoining the Government's review and use of records bearing classification markings for criminal investigative purposes because the merits support that narrowly tailored injunction. Moreover, this Court should deny the Government's request to stay the portion of the Appointment Order requiring disclosure of the purported "classified records" to the Special Master because that Order Appointing Special Master, AA78,[2] is simply not appealable under 28 U.S.C. § 1292.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 8, 2022, the Government executed a search warrant at the residence of former President Donald J. Trump, where dozens of federal agents seized a multitude of records and other property, including personal materials and purported "classified records." Immediately after the search, Plaintiff's counsel asked the Government for a copy of the affidavit in support of the warrant, the Government's consent to appoint a special master to "protect the integrity of privileged documents," a detailed list of what was taken from the residence and from where

---

[2] Citations to President Trump's Addendum are cited as "AA__."

*Donald J. Trump v. United States of America*, No 22-13005-F

exactly, and an opportunity to inspect the seized property. A17-18. The Government declined Plaintiff's requests. A18.

To safeguard his interest in the seized materials, President Trump filed the underlying civil action, requesting, *inter alia*, that the District Court appoint a third-party to review the seized materials and enjoin further review of the materials by the Government.

The District Court temporarily enjoined the Government from "further review and use of any of the materials seized from Plaintiff's residence on August 8, 2022, for criminal investigative purposes pending resolution of the special master's review process as determined by this Court." A36. However, the District Court explicitly permitted the Government's continued review and use of the seized materials "for purposes of intelligence classification and national security assessments." A36-37.

Thereafter, the District Court appointed the Honorable Raymond J. Dearie, Senior United States District Judge for the Eastern District of New York as Special Master. AA78. In addition to his service of more than thirty years as a United States District Judge, Judge Dearie served on the Foreign Intelligence Surveillance Court ("FISA Court") for seven

*Donald J. Trump v. United States of America*, No 22-13005-F

years.  The District Court's Order Appointing Special Master, AA78, authorized Judge Dearie to review all of the seized materials, verify that such materials represent the full and accurate extent of the property seized, allocate those materials to one of four categories agreed to by the Government, and adjudicate certain disputes between the parties. AA78. Further, the order laid out precise procedural steps and deadlines to ensure that the entire Special Master review and related litigation is undertaken before the end of November.

In the District Court, the Government sought a stay of the order to the extent the order (1) enjoined the further review and use for criminal investigative purposes of records bearing classification markings that were recovered pursuant to the search warrant and (2) required the Government to disclose purported "classified records" to a special master for review.  *See* AA57.

The District Court denied the Government's stay request, noting it was not inclined to hastily adopt the Government's contention that the approximately 100 purportedly "classified" documents were, in fact, classified, and that President Trump could not possibly have a possessory interest in any of them.  A6.  The District Court further concluded that a

*Donald J. Trump v. United States of America*, No 22-13005-F

neutral third-party—in this case, a Senior United States District Judge with FISA Court experience dealing with the most sensitive national security matters—was best suited to conduct an initial review of those documents. A7.  To address the Government's concerns, the District Court directed the Special Master to "prioritize, as a matter of timing, the documents marked as classified." AA83.

As it did below, the Government seeks a stay of the order "(1) restricting the government's review and use of records bearing classification markings and (2) requiring the government to disclose those records for a special-master review process." Appellant Mot. p. 5-6.  In sum, the Government seeks to limit the scope of any review of its investigative conduct and presuppose the outcome, at least as to what it deems are "classified records."  However, the District Court's orders, A4, A14, are a sensible preliminary step toward restoring order from chaos, and this Court should therefore deny the Government's Motion.

## III.   STANDARDS OF REVIEW

A stay pending appeal is an "extraordinary" remedy for a court to invoke, *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979), and the applicant bears an "especially heavy" burden of proving that such relief is

*Donald J. Trump v. United States of America*, No 22-13005-F

warranted, *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1320 (1994). "A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant[.]'" *Id.* (citations omitted) (quoting *Va. Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C. Cir. 1958) (*per curiam*), and *Virginian R. Co. v. United States,* 272 U.S. 658, 672 (1926)).

Unlike in the District Court, on appeal there is a deferential, and "well-settled," standard for seeking this "extraordinary remedy." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453, 1455 (11th Cir. 1986). Because the Eleventh Circuit "must always be diffident in interposing the power of an appellate court into the province of the trial court and its orders save upon full briefing and mature reflection by this Court," granting the Government's motion would be "exceptional." *Id.*

The Government, as the movant, must demonstrate: 1) it is likely to prevail on the merits on appeal; 2) that absent a stay the Government will suffer irreparable damage; 3) that President Trump will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be served by issuing the stay. *Id.*; *see also Nken v. Holder*,

*Donald J. Trump v. United States of America*, No 22-13005-F

556 U.S. 418, 426 (2009). But the Court's review of these factors is not *de novo*. For the Government to prevail, it must show that the District Court's determination as to the likelihood of success was "clearly erroneous." *Garcia-Mir*, 781 F.2d at 1453.

If the district court's determination concerning the first factor was not "clearly erroneous," then the Government can *only* prevail on its motion if it shows that "the balance of the equities identified in factors 2, 3, and 4 weighs *heavily* in favor of granting the stay." *Id.* (alteration adopted) (emphasis added) (quoting *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981)).

## A.    Standard of Review – Injunction

The grant or denial of a preliminary injunction is a decision within the discretion of the district court and review of that decision is extremely narrow in scope. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126, 1127 (11th Cir. 1997) (citation omitted). The Court of Appeals may reverse the decision of the district court's grant or denial of a preliminary injunction only if there was a *clear* abuse of discretion. *Siegel v. LePore*, 234 F.3d 1163, 1175 (11th Cir. 2000). Under this standard of review, an appellate court will "uphold any district court

*Donald J. Trump v. United States of America*, No 22-13005-F

determination that falls within a permissible range of permissible conclusions." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990); *see also Alexander v. Fulton County*, 207 F.3d 1303, 1326 (11th Cir. 2000) (court of appeals must affirm unless "the district court has made a clear error of judgment, or has applied an incorrect legal standard.")

## B.   Standard of Review – Appointment of Special Master[3]

The appointment of a special master under Federal Rule of Civil Procedure 53 is reviewed by the Court of Appeals under an abuse of discretion standard. *Reynolds v. McInnes*, 380 F.3d 1303, 1305, fn. 3 (11th Cir. 2004) (citing *Grilli v. Metropolitan Life Insurance Co.*, 78 F.3d 1533, 1538 (11th Cir.1996)); *Gary W. v. State of Louisiana*, 601 F.2d 240, 245 (5th Cir.1979); *see also Macri v. U.S. ex. rel. John H. Maxwell & Co.*, 353 F.2d 804, 809 (9th Cir. 1965) ("[w]here trial court had power to enter an order of reference to a special master pursuant to Fed.R.Civ.P. 53, the only inquiry by Court of Appeals would center on question of whether trial court abused its discretion.").

---

[3] As developed below, the Court should not reach the question of whether the district court abused its discretion in appointing a special master because that order is not appealable.

*Donald J. Trump v. United States of America*, No 22-13005-F

# IV.    ARGUMENT

## A. THE DISTRICT COURT PROPERLY TEMPORARILY ENJOINED THE GOVERNMENT FROM REVIEWING AND USING PURPORTEDLY CLASSIFIED MATERIAL FOR CRIMINAL INVESTIGATIVE PURPOSES.

The seizure of records from President Trump's home presents extraordinary circumstances that warrant review by a neutral third-party. The District Court's injunction preserved, without objection,[4] the Government's ability to review and use the materials for purposes of intelligence classification and national security assessments. Thus the current Motion demonstrates the Government has misinterpreted the Order as a prohibition on conducting a national security assessment. *See* A11-12 ("[T]o the extent that the Security Assessments truly are, in fact, inextricable from criminal investigative use of the seized materials, the Court makes clear that the September 5 Order does not enjoin the Government from taking actions necessary for the Security Assessments.")].

---

[4] As noted previously, President Trump does not oppose any action advancing the legitimate national security interests of the United States. AA57.

*Donald J. Trump v. United States of America*, No 22-13005-F

The Government also argues incorrectly that President Trump cannot have a possessory interest in documents with classification markings, and therefore, the Government is likely to succeed on appeal. This argument (1) misconstrues the standing requirement under Rule 41(g), (2) assumes—without *either* side presenting any proof—that the documents are, in fact, classified, and (3) ignores that President Trump has a cognizable interest in his own Presidential records—irrespective of alleged classification markings.

## 1.    The Government Misconstrues Rule 41(g) Standing.

The material seized from President Trump's home includes not only "personal effects without evidentiary value" but also approximately five hundred pages of material that is likely subject to attorney-client privilege, as well as medical documents, and tax and accounting information.  AA03.  As the District Court understood, "to satisfy the standing requirements" under Rule 41(g), the claimant need only allege "a colorable ownership, possessory or security interest *in at least a portion* of the" seized property. *United States v. Melquiades*, 394 F. App'x 578, 584 (11th Cir. 2010) (emphasis added) (quoting *United States v.*

*Donald J. Trump v. United States of America*, No 22-13005-F

*Rodriguez-Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001)). Since President Trump has satisfied this initial threshold, determining "whether some of the listed property does not, in fact, belong to [President Trump] is a matter better dealt with on summary judgment or at trial." *Id.* (quoting *Rodriguez-Aguirre*, 264 F.3d at 1204).

Noting the "disputes as to the proper designation of the seized materials, the legal implications flowing from those designations, and the intersecting bodies of law permeating those designations," the court did not err—clearly or otherwise—by "declin[ing] to conduct a subset-by-subset, piecemeal analysis of the seized property, based entirely on the Government's representations about what is contained in a select portion of the property." A7-8.

## 2. <u>The Government has not Proven the Documents are Classified.</u>

The Government again presupposes that the documents it claims are classified are, in fact, classified and their segregation is inviolable. However, the Government has not yet proven this critical fact. The President has broad authority governing classification of, and access to, classified documents. *See Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988).

*Donald J. Trump v. United States of America*, No 22-13005-F

Congress provided certain parameters for controlling classified information but primarily delegated to the President how to regulate classified information. 50 U.S.C. § 3161. At the same time, Congress exempted the President from complying with such requirements. *Id.* § 3163 ("Except as otherwise specifically provided, the provisions of this subchapter shall not apply to the President . . . .").

President Obama enacted the current Executive Order prescribing the parameters for controlling classified information in 2009. *See* Exec. Order 13526 (Dec. 29, 2009). That Executive Order, which controlled during President Trump's term in office, designates the President as an original classification authority, *Id.* § 1.3(a)(1), and grants authority to declassify information to either the official who originally classified the information or that individual's supervisors—necessarily including the President. *Id.* § 3.1(b)(1), (3). Thus, assuming the Executive Order could even apply to constrain a President, *cf.* 50 U.S.C. § 3163, the President has absolute authority to declassify any information. There is no legitimate contention that the President's declassification of documents requires approval of bureaucratic components of the executive branch. Yet, the Government apparently contends that President Trump, who

*Donald J. Trump v. United States of America*, No 22-13005-F

had full authority to declassify documents, "willfully" retained classified information in violation of the law. *See* 18 U.S.C. § 793(e); AA66. Moreover, the Government seeks to preclude any opportunity for consideration of this issue.[5]

### 3.   President Trump has a Possessory Interest in Presidential Records.

All government records (classified or otherwise) fall into two basic categories; they fall under the PRA or the Federal Records Act ("FRA"). "The FRA defines a class of materials that are federal records subject to its provisions, and the PRA describes another, mutually exclusive set of materials that are subject to a different, less rigorous regime.  In other words, no individual record can be subject to both statutes because their provisions are inconsistent.  *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1293 (D.C. Cir. 1993).

---

[5] The fact the documents contain classification markings does not necessarily negate privilege claims. For example, the partially unredacted search warrant affidavit states that certain documents with classification markings allegedly contain what appear to be President Trump's handwritten notes. A57–58.  Those notes could certainly contain privileged information; further supporting the need for an independent, third-party review of these documents.

*Donald J. Trump v. United States of America*, No 22-13005-F

The PRA "distinguishes Presidential records from 'personal records'" and "requires that all materials produced or received by the President, 'to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately.'" *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 845 F. Supp. 2d 288, 291 (D.D.C. 2012) (quoting 44 U.S.C. § § 2203(b)); *see also* 44 U.S.C. § 2201(2)-(3). "*The categorization of the records during the Presidency controls what happens next . . . .* The statute assigns the Archivist *no role* with respect to personal records once the Presidency concludes." *Id.* (emphasis added). "The PRA contains no provision obligating or even permitting the Archivist to assume control over records that the President 'categorized' and 'filed separately' as personal records. At the conclusion of the President's term, the Archivist only 'assumes responsibility for the Presidential records." *Id.* (quoting 44 U.S.C. § 2203(f)(1)). "[T]he PRA does not confer any mandatory or even discretionary authority on the Archivist to classify records. Under the statute, this responsibility is left solely to the President." *Id.* at 301 (describing categorization decision made by former President Clinton as not within the discretion of the Archivist as the subject materials "were

*Donald J. Trump v. United States of America*, No 22-13005-F

not provided to the Archives at" the end of the Clinton presidency). Critically, the former President had sole discretion to classify a record as personal or Presidential. *See Jud. Watch, Inc.*, 845 F. Supp. 2d at 301.[6]

Accordingly, all the records at issue in the Government's motion fall into two categories: (1) Presidential records, governed *exclusively* by the Presidential Records Act; and (2) personal records, the determination of which was in President Trump's discretion. *See id.*

To the extent certain of the seized materials constitute Presidential records, a former President has an unfettered right of access to his Presidential records even though he may not "own" them. *See* 44 U.S.C. § 2205(3). Moreover, under the PRA, President Trump has specified rights to restrict access to his Presidential records. 44 U.S.C. § 2204.

---

[6] The ultimate disposition of all the "classified records," and likely most of the seized materials, is indisputably governed by the provisions of the Presidential Records Act ("PRA"). *See* 44 U.S.C. §§ 2201, *et seq.* Thus, at best, the Government might ultimately be able to establish certain Presidential records should be returned to NARA. What is clear regarding all of the seized materials is that they belong with either President Trump (as his personal property to be returned pursuant to Rule 41(g)) or with NARA, but not with the Department of Justice. However, it is not even possible for this Court, or anyone else for that matter, to make *any* determination as to which documents and other items belong where and with whom without first conducting a thoughtful, organized review.

*Donald J. Trump v. United States of America*, No 22-13005-F

Thus, President Trump has a sufficient, cognizable interest in his own Presidential records.

### 4.   The Government Cannot Demonstrate it will be Irreparably Harmed Absent a Stay.

The District Court correctly found the Government's alleged irreparable harm was insufficient to warrant a stay.[7] The Government asserts it will be irreparably harmed if it cannot continue its criminal investigation and if it "disclose[s] highly sensitive materials as part of the special-master review."[8] Appellant's Mot. p. 17. However, the Government cannot demonstrate a short pause of the criminal

---

[7] The Government collapses the second and fourth prongs of the analysis—asserting that its interests necessarily align with the public. This presumption is misguided. As the District Court noted, "[a] commitment to the appearance of fairness is critical, now more than ever." A29.

[8] As the District Court noted, *see* A11*,* the Government is apparently not concerned with unauthorized leaks regarding the contents of the purported "classified records," *see, e.g.*, Devlin Barrett and Carol D. Leonnig, *Material on foreign nation's nuclear capabilities seized at Trump's Mar-a-Lago*, WASH. POST (Sept. 6, 2022), https://www.washingtonpost.com/national-security/2022/09/06/trump-nuclear-documents/, and would presumably be prepared to share all such records publicly in any future jury trial.  However, the Government herein advances the untenable position that the secure review by a Court appointed special master with FISA Court experience under controlled access conditions somehow poses a risk to national security.

*Donald J. Trump v. United States of America*, No 22-13005-F

investigation harms national security. Moreover, there can be no serious argument that allowing Judge Dearie to review the documents inflicts harm.

The Government argues that because the FBI has "integrated its intelligence and law-enforcement functions" it cannot do one without the other. Appellant's Mot. p. 17. But as the District Court held, these arguments simply show that it would be *easier* to allow the Government to conduct the criminal investigation and national security assessment in tandem.

The Government also continues to advance hypothetical situations to attempt to demonstrate "irreparable injury." But the District Court already explained these "hypothetical scenarios and generalized explanations . . . do not establish irreparable injury." A11; *See also State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1292 (11th Cir. 2021) (denying stay pending appeal because, *inter alia*, the movant's proffered irreparable harm was speculative and conclusory). As in *State of Florida*, the Government has not shown how the District Court's findings are erroneous. *See* 19 F.4th at 1292. Instead of detailing any irreparable harm it faces going forward, it attempts to shift the focus to

*Donald J. Trump v. United States of America*, No 22-13005-F

past events, claiming that "the materials were stored in an unsecure manner . . . ." Appellant's Mot. p. 19. This is simply irrelevant.

Further, the Government argues the "injunction itself prevents the government from even beginning to" perform a whole host of activities. Appellant's Mot. p. 17. The Government then refutes this contention a few pages later, emphasizing that "[c]riminal investigators have already conducted an initial review of the records, and the court allowed other government officials to continue to review them for national-security purposes." Appellant's Mot. p. 21.

The District Court addressed all these purported concerns by describing what is and is not authorized under the injunction. *See* A11-12 ("[T]o the extent that the Security Assessments truly are, in fact, inextricable from criminal investigative use of the seized materials, the Court makes clear that the September 5 Order does not enjoin the Government from taking actions necessary for the Security Assessments.")]. Of course, since the District Court could not address every conceivable action the Government could take, it tailored an injunction that describes "in reasonable detail" the "acts restrained." Fed. R. Civ. P. 65.

*Donald J. Trump v. United States of America*, No 22-13005-F

Ultimately, any brief delay to the criminal investigation will not irreparably harm the Government. The injunction does not preclude the Government from conducting a criminal investigation, it merely delays the investigation for a short period while a neutral third party reviews the documents in question. The District Court also directed the Special Master to expedite its review of the challenged documents to alleviate the Government's concerns. *Id.* at 8–9.

### 5.    <u>President Trump and the Public would be Harmed by a Stay</u>

The Government argues that allowing it "to use and review the records bearing classification markings for criminal-investigative purposes would not cause any cognizable injury" to President Trump. Appellant's Motion p. 21. The Government's predetermination the documents are what the Government says they is sufficient for all involved, including now this Court. Setting aside that it is the Government's burden to prove President Trump would *not* be harmed— not President Trump's burden to show that he would—harm would most definitely occur if (1) a separate review by a special master were denied,

*Donald J. Trump v. United States of America*, No 22-13005-F

and (2) the Government was permitted to continue its criminal investigation, using documents that may very well be off limits.

Recognizing same, the District Court noted that "evenhanded procedure does not demand unquestioning trust in the determinations of the Department of Justice." A12. Furthermore, while the Government argues that "requiring disclosure of classified records to a special master and to Plaintiff's counsel would impose irreparable harm on the government and public," Appellant's Mot. p. 20, it has not—and cannot—show any harm to the public in allowing such review. If anything, as the District Court noted, "[t]he investigation and treatment of a former president is of unique interest to the general public, and the country is served best by an orderly process that promotes the interest and perception of fairness." A35.

## B.    THIS COURT LACKS JURISDICTION TO REVIEW THE SPECIAL MASTER'S AUTHORITY BECAUSE THE APPOINTMENT ORDER IS NOT APPEALABLE ON AN INTERLOCUTORY BASIS.

The District Court issued several orders regarding the Special Master's appointment and authority. First, on August 27, 2022, the district court indicated its preliminary intent to appoint a special master.

*Donald J. Trump v. United States of America*, No 22-13005-F

AA01.   On September 5, 2022, the District Court ordered the appointment of a special master and invited the parties to submit candidate proposals.   A36-37. Finally, on September 15, 2022, the District Court appointed Judge Dearie as Special Master and defined the parameters, expectations, and timing of his review of the seized materials.  AA78.  Notably, the injunction relating to the review and use of the purportedly classified documents for investigative purposes and the appointment of a special master were separated by the District Court.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. A special master shall be **APPOINTED** . . . .

2. The Government is **TEMPORARILY ENJOINED** . . . .

A35-37.

Generally, federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291.   "A final decision is one by which a district court disassociates itself from the case . . . ." *Doe No. 1 v. United States*, 749 F.3d 999, 1004 (11th Cir. 2014) (internal quotation marks omitted).  Title 28 § 1292 provides for interlocutory review only in certain enumerated

*Donald J. Trump v. United States of America*, No 22-13005-F

instances.  Relevant here, courts of appeal have jurisdiction to hear interlocutory orders of the "district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ."  28 U.S.C. § 1292(a)(1).

Outside of the categories of appealable actions enumerated in §1292(a), appeals from non-final orders require the district court to make certain findings *and* the court of appeals to exercise its discretion to accept jurisdiction.  28 U.S.C. § 1292(b); *cf. McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004) (orders certified under §1292(b) provide appellate courts with "discretion to exercise appellate jurisdiction").

Thus, the plain text of the statute requires the District Court to take three actions: (1) find that its order involves a controlling question of law as to which there is substantial ground for difference of opinion; (2) find that an immediate appeal from the order may materially advance the ultimate termination of the litigation; and (3) state so in writing in the order.  None of that occurred here.

Indeed, the Government effectively concedes its appeal related to the Special Master's authority to review documents with classification

*Donald J. Trump v. United States of America*, No 22-13005-F

markings is directed to the District Court's order appointing Judge Dearie as Special Master, AA78:

> Finally, requiring disclosure of classified records to a special master and to Plaintiff's counsel, *see* D.E. 91 at 4, would impose irreparable harm on the government and public . . .

Appellant's Mot. pp. 24-25. The Government's unequivocal invocation of docket entry 91 demonstrates its challenge to the Special Master's authority is untethered from the District Court's injunction. *See* A14.

Thus, in the context of the appointment of a special master, interlocutory relief under § 1292(a)(1) is inapplicable. *See Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 838 (7th Cir. 2021) ("Nor does § 1292(a)(1) provide us jurisdiction, as '[t]he appointment of a special master' is a procedural order, and 'procedural orders, though they often have the form of an injunction, are not classified as injunctions for purposes of section 1292(a)(1).'"(quoting *Bogard v. Wright*, 159 F.3d 1060, 1063 (7th Cir. 1998))); *National Org. for the Reform of Marijuana Laws v. Mullen,* 828 F.2d 536, 540 (9th Cir. 1987) (appointment of special master was not an appealable order under 28 U.S.C. § 1292(a)(1)); *Thompson v. Enomoto,* 815 F.2d 1323, 1326–27 (9th Cir. 1987) (appointment of special master not appealable under § 1292(a)(1)).

*Donald J. Trump v. United States of America*, No 22-13005-F

As the Supreme Court has explained, "[o]rders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view 'interlocutory' within the meaning of [§] 1292(a)(1)." *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25 (1966); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988) ("An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)."); *Cohen v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J.*, 867 F.2d 1455, 1464 (3d Cir. 1989) ("[A]n order staying or refusing to stay an action for equitable relief does not fall under section 1292(a)(1), even though it postpones or accelerates resolution of an action seeking injunctive relief.").

Thus, in the context of an order appointing a special master, the requirements of § 1292(b) must be met for the court of appeals to have the authority to exercise its jurisdiction. *Cf. Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1327 (11th Cir. 2018) (refusing in-part to exercise "rare" section 1292(b) appellate jurisdiction where a special master was appointed to review for attorney-client privilege and

*Donald J. Trump v. United States of America*, No 22-13005-F

where district court certified questions); *Bridgeport Guardians, Inc. v. Delmonte*, 537 F.3d 214, 220–21 (2d Cir. 2008) ("This Court cannot review whether the special master may rule on the civilian complaint at issue in this appeal until the special master has made a determination, and the district court, in turn, has had an opportunity to rule on that determination in an appealable order that is then brought before us."); *Lelsz v. Kavanagh*, 112 F.R.D. 367, 371 (N.D. Tex. 1986) (order appointing special master not reviewable under section 1292(b)).

The Government's challenge of the District Court's order appointing the Special Master is therefore simply an invitation to issue an advisory opinion that this Court should emphatically reject. *See Pearson v. Kemp*, 831 F. App'x 467, 473 (11th Cir. 2020) ("We cannot use Section 1292(b) to offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development." (cleaned up)). Accordingly, even if the Government had proceeded correctly under Section 1292(b), which it did not, this Court should decline to exercise its jurisdiction to review the Special Master's order of appointment.

Assuming *arguendo* the Court were to exercise its discretion to evaluate the authority of the Special Master to review documents with

25

*Donald J. Trump v. United States of America*, No 22-13005-F

classification markings for privilege, the Court should find the District Court's order is reasonably tailored given the significance of this investigation.[9]  As correctly stated by the District Court, President Trump "faces an unquantifiable potential harm by way of improper disclosure of sensitive information to the public."  A22-23. This is evidenced by various media reports in recent days regarding the contents of purportedly "classified" documents seized by the Government. Irreparable injury could most certainly occur if the Government were permitted to improperly use the documents seized.  As the District Court aptly stated:

> As a function of [President Trump's] former position as President of the United States, the stigma associated with the subject seizure is in a league of its own.  A future indictment, based to any degree on property that ought to be returned, would result in reputational harm of a decidedly different order of magnitude.

---

[9] Note also, if any purported "classified records" are Presidential records, President Trump (or his designee, including a neutral designee such as a special master) has an absolute right of access to same under the PRA. 44 U.S.C. § 2205(3).  Accordingly, President Trump (and, by extension, a requested special master) cannot in any event be denied access to those documents.

*Donald J. Trump v. United States of America*, No 22-13005-F

A23.  Here, the Government has criminalized a document dispute and now vehemently objects to a transparent process that simply provides much-needed oversight.   The Government's attempt to shield the purportedly classified documents from the ambit of a Senior United States District Judge who served for seven years on a court dealing with the most sensitive national security matters therefore illustrates precisely why the District Court found a special master was appropriate and necessary under the circumstances.

## CONCLUSION

For the foregoing reasons, the Court should deny the Government's Motion for Partial Stay Pending Appeal.

Dated: September 20, 2022              Respectfully submitted,

**James M. Trusty**                              */s/ Christopher M. Kise*
Ifrah Law PLLC                                      **Christopher M. Kise**
1717 Pennsylvania Avenue N.W.          Florida Bar No. 855545
Suite 650                                              Chris Kise & Associates, P.A.
Washington, DC 20006                         201 East Park Avenue
Telephone: (202) 524-4176                   5th Floor
Email: jtrusty@ifrahlaw.com                 Tallahassee, FL 32301
                                                           Telephone: (850) 270-0566
                                                           Email: chris@ckise.net

*Donald J. Trump v. United States of America*, No 22-13005-F

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,166 words.  This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Christopher M. Kise*
Christopher M. Kise

*Donald J. Trump v. United States of America*, No 22-13005-F

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of September, 2022, I caused the foregoing to be electronically filed using the Court's CM/ECF System, thereby serving all registered users in this case by operation of that electronic filing system.

/s/ *Christopher M. Kise*
Christopher M. Kise