**No. 22-13005**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DONALD J. TRUMP,

          Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA,

          Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Florida

**REPLY IN SUPPORT OF MOTION
FOR PARTIAL STAY PENDING APPEAL**

JUAN ANTONIO GONZALEZ
  *United States Attorney*
  *99 NE 4th Street, 8th Floor*
  *Miami, FL 33132*
  305-961-9001

MATTHEW G. OLSEN
  *Assistant Attorney General*

JAY I. BRATT
  *Chief, Counterintelligence and Export Control Section*

JULIE EDELSTEIN
SOPHIA BRILL
JEFFREY M. SMITH
  *Attorneys*
  *National Security Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  202-233-0986

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLSOURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellant certify that the certificate of interested persons included in the stay motion is complete.

Dated: September 20, 2022     */s/ Jeffrey M. Smith*
                                                                                   Jeffrey M. Smith

## INTRODUCTION AND SUMMARY

The district court's injunction is preventing the government from using its own records with classification markings—including markings reserved for records of the highest sensitivity—in an ongoing criminal investigation into whether those very records were mishandled or compromised. The court entered that unprecedented relief to allow a special master to consider Plaintiff's claims of privilege or for "return" of records. A36. Plaintiff's response confirms that a partial stay is warranted because he cannot articulate any plausible claim for such relief as to the records with classification markings. Indeed, Plaintiff scarcely even attempts to explain how such records could be subject to a valid claim of executive privilege, attorney-client privilege, or return of property under Rule 41(g).

Instead, Plaintiff again implies that he *could* have declassified the records before leaving office. As before, however, Plaintiff conspicuously fails to represent, much less show, that he *actually* took that step. And Plaintiff is now resisting the special master's proposal that he identify any records he claims to have declassified and substantiate those claims with evidence. D.E. 97 at 2-3. In any event, Plaintiff's effort to raise questions about classification status is a red herring. As the government has explained (Mot. 15-17), even if Plaintiff could show that he declassified the records at issue, there would still be no justification for restricting the government's use of evidence at the center of an ongoing criminal investigation. Again, Plaintiff offers no response.

Plaintiff likewise fails to rebut the motion's showing that the injunction is irreparably harming the government and the public. He emphasizes that the district court allowed the government to continue to use the records for certain national-security purposes. But Plaintiff cannot deny that the injunction is impeding the criminal investigation, which is itself an essential component of the government's effort to identify and respond to the threats posed by the mishandling of records bearing classification markings reflecting their extreme sensitivity. And Plaintiff cannot show that he would suffer any cognizable injury from a partial stay.

## ARGUMENT

### I. The government is likely to succeed on the merits as to the records bearing classification markings.

#### A. Plaintiff has no claim of privilege or for return of property as to the records bearing classification markings.

The district court recognized that its "limited" equitable jurisdiction gave it no general authority to superintend the government's criminal investigation. A21. Instead, it enjoined the use of evidence recovered in a court-authorized search solely to allow a special master to consider "claims for return of property" and "assertions of privilege." A36. As the party seeking that "exceptional" relief, A21, Plaintiff bore the burden of justifying it. But Plaintiff has identified no plausible basis on which he could seek the return of, or assert privilege over, the records bearing classification markings.

2

1. The government explained that Plaintiff has no right to the return of those records—indeed, no standing to invoke Rule 41(g) at all—because they belong to the United States. 44 U.S.C. § 2202; *see* Mot. 10-11. Plaintiff offers no persuasive response.

First, Plaintiff asserts (at 10) that he owns *other* seized evidence, such as "personal effects." He may well have standing to seek return of that "portion" of the seized evidence. *United States v. Melquiades*, 394 Fed. Appx. 578, 584 (11th Cir. 2010). But he cites no authority supporting a claim for return of records that do not belong to him.

Second, Plaintiff implies (at 14-15) that the PRA gave him "sole discretion to classify a record as personal" before leaving office. But Plaintiff does not represent that he categorized any of the records bearing classification markings as personal. Any attempt to do so would have been flatly contrary to the statute, which limits personal records to those "of a purely private or nonpublic character." 44 U.S.C. § 2201(3).[1]

Third, Plaintiff asserts (at 15-16) that the PRA gives him a "cognizable interest" in presidential records owned by the government because the statute directs NARA to make those records "available" to him. 44 U.S.C. § 2205. But Plaintiff does not explain why a right of *access* constitutes an *ownership* interest justifying a claim for return of property—or how he can invoke the PRA after failing to comply with it. Mot. 11.

---

[1] Plaintiff relies on *Judicial Watch v. NARA*, 845 F. Supp. 2d 288 (D.D.C. 2012), which held that a court cannot compel NARA to revisit a President's categorization of records. *Id.* at 300-01. But that case provides no support for granting extraordinary equitable relief based on Plaintiff's unsubstantiated suggestion that he might have deemed records that indisputably qualify as Presidential records to be personal.

3

Finally, even if Plaintiff had established a property interest in the records bearing classification markings, he still would not be entitled to Rule 41(g) relief. Among other things, those records were recovered under a valid search warrant and are highly relevant to an ongoing criminal investigation. *See Richey v. Smith*, 515 F.2d 1239, 1243-1244 (5th Cir. 1975).

2. The records bearing classification markings are not subject to attorney-client privilege because they are not communications between Plaintiff and his personal lawyers. Mot. 12. Plaintiff does not argue otherwise.

3. The government explained that any assertion of executive privilege over the records bearing classification markings would fail for three independent reasons: Plaintiff cannot assert the privilege "against the very Executive Branch in whose name the privilege is invoked," *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 447-48 (1977); the privilege would in any event be overcome by the government's "demonstrated, specific need" for the evidence, *United States v. Nixon*, 418 U.S. 683, 713 (1974); and Plaintiff should not be heard to assert a privilege that he failed to raise in response to a grand-jury subpoena. Mot. 12-15.

Plaintiff does not respond to any of those arguments. Indeed, except for a brief footnote, his response does not mention executive privilege at all. And the footnote states only that other classified documents recovered before the search contained Plaintiff's handwritten notes and that those notes "could" contain privileged information. Resp. 13 n.5; *see* A73. But the question is not whether the records at issue

4

here might contain material that in other circumstances could give rise to valid claims of executive privilege against disclosure to Congress or the public. Instead, it is whether Plaintiff can assert the privilege to prevent the Executive Branch *itself* from reviewing records that are central to its investigation. The three independent—and unrefuted—reasons why he cannot do so apply equally to any handwritten notes those government records might contain.

### B.     Plaintiff's arguments about classification status are irrelevant.

Plaintiff asserts (at 11) that the government's motion "presupposes that the documents it claims are classified are, in fact, classified" and that the government has "not yet proven that critical fact" because Plaintiff had authority to declassify records while in office. That is doubly mistaken.

First, as the government explained (Mot. 16), nothing in its motion depends on the records' current classification status. The records' classification markings establish that they are government records and that responsible officials previously determined that their unauthorized disclosure would cause damage—including "exceptionally grave damage"—to the Nation's security. Exec. Order 13,526 § 1.2(1) (Dec. 29, 2009). Even if Plaintiff had actually declassified some or all of the records, that would not give rise to any claim of privilege or other basis for restricting the government's use of them. To the contrary, the government would still have a compelling need to review those records for its criminal investigation—and an additional compelling need to understand what

5

was declassified, who saw it, and what ameliorative measures might be necessary to safeguard the Nation's security. Mot. 16.

Second, even if classification status were relevant, Plaintiff gets the law backward by asserting that the government must "prove[]" that records with classification markings are classified. Resp. 11. The government has submitted a detailed inventory cataloguing the classification markings, as well as a redacted photograph showing some of the relevant markings. A51, A115-A121. Records marked as classified must be treated as such "in the absence of affirmative proof to the contrary." *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1368 (4th Cir. 1975). And Plaintiff, as the party seeking relief, bore the burden of proof. Yet despite multiple opportunities, Plaintiff has never actually represented—much less offered evidence—that he declassified any of the relevant records. To the contrary, after persuading the district court to grant injunctive relief and appoint a special master to adjudicate purportedly "disputed issues" about the records' status, A6-A7, Plaintiff has now reversed course: In response to the special master's invitation to identify any records he claims to have declassified and offer evidence to support such claims, Plaintiff *objected* to "disclos[ing] specific information regarding declassification to the Court and to the Government." D.E. 97 at 2.

### C.     Plaintiff's jurisdictional argument lacks merit.

Plaintiff does not challenge this Court's jurisdiction over the portion of the district court's order enjoining further review and use of the records for criminal investigative purposes. A36-A37. But Plaintiff asserts (Resp. 20-26) that this Court

6

cannot stay the portion of the order requiring the government to disclose the documents bearing classification markings as part of the special-master review process because the Court lacks appellate jurisdiction under 28 U.S.C. 1292(a). That is incorrect.

Section 1292(a) provides that "the courts of appeals shall have jurisdiction of appeals from[] * * * [i]nterlocutory *orders* of the district courts * * * granting * * * injunctions." 28 U.S.C. 1292(a)(1) (emphasis added). It is thus the entire *order* that is appealable under Section 1292(a)(1)—not just particular issues within that order. The Supreme Court made exactly that point in construing a neighboring provision: "As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996); *see BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1537-1538 (2021) (similar). Here, the district court granted an injunction in its September 5 order. A14-A37. It follows that this Court has jurisdiction to review the entire order—including the portion directing that "[a] special master shall be appointed to review the seized property." A36. As to the government's invocation of the September 15 order specifying details of the review process, *see* Mot. 20; Resp. 23, that order simply clarified the "exact details and mechanics" of the review process mandated by the September 5 order. A36.

Moreover, the injunction's duration is tied to the special-master review process, and the district court explained that its purpose is "to reinforce the value of the Special Master," A23, A10—which demonstrates that the special-master review process is

7

"inextricably intertwined" with the injunction and that this court may exercise appellate jurisdiction to review that process. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). Indeed, a directive to disclose information that is classified or otherwise implicates national security may itself be immediately appealable as a collateral order even absent an injunction. *Cf. Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 113 n.4 (2009); *see Al Odah v. United States*, 559 F.3d 539, 543-44 (D.C. Cir. 2009).[2]

## II. Absent a partial stay, the government and the public will be irreparably harmed.

The district court's order irreparably harms the government and the public by (A) interfering with the government's response to the national-security risks arising from the mishandling and possible disclosure of records bearing classification markings; (B) impairing a criminal investigation into these critical national-security matters; and (C) forcing the government to disclose highly sensitive materials. Mot. 19-21. To the extent Plaintiff addresses these harms, his arguments lack merit.

As the government explained—and as supported by a sworn declaration from the Assistant Director for the FBI's Counterintelligence Division—the Intelligence Community's (IC's) classification review and national-security assessment cannot uncover the full set of facts needed to understand which if any records bearing

---

[2] If the Court harbors any doubts about its jurisdiction over portions of the September 5 order, it should construe the government's appeal and stay motion as a petition for a writ of mandamus with respect to those portions and grant the petition. *See Suarez-Valdez v. Shearson Leahman/American Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988).

classification markings were disclosed, to whom, and in what circumstances. Mot. 18; A41-A42. The FBI has a critical role in using criminal investigative tools such as witness interviews, subpoenas, and search warrants in pursuit of these facts. A42. The injunction bars the FBI from using the seized records bearing classification markings to do just that. Plaintiff asserts that the government has shown only "that it would be *easier* . . . to conduct the criminal investigation and national security assessment in tandem." Resp. 17. But the injunction *prohibits* DOJ and the FBI from taking these investigative steps unless they are "inextricable" from what the court referred to as the IC's "Security Assessments," A11-A12—a standard that the government must discern on pain of contempt.

Plaintiff next dismisses the government's national-security concerns as "hypothetical." Resp. 17 (citing A11). But the injunction is preventing the government from taking some of the steps necessary to determine whether those concerns have or may become a reality. Moreover, Plaintiff fails to address the harms caused by the injunction's interference in the expeditious administration of the criminal laws, and by the possibility that the government's law-enforcement efforts will be obstructed (or perhaps further obstructed). Mot. 19-20. Plaintiff states only that the injunction will last for a "short period," Resp. 19. At the same time, Plaintiff is already attempting to delay proceedings before the special master. *See* D.E. 97 at 1-2 (seeking to extend deadlines and set hearings "on any Rule 41 or related filings" in "Late November").

9

Finally, Plaintiff offers no response to the irreparable harm that will occur if the government is forced to disclose classified information outside the Executive Branch, including to Plaintiff's counsel. Mot. 20-21. Plaintiff's assertion that the government "would presumably be prepared to share all [records bearing classification markings] publicly in any future jury trial," Resp. 16 n.8, is mistaken. In cases involving the unlawful retention of national defense information, nothing requires the government to pursue charges on the basis of *all* unlawfully retained information or to publicly disclose classified information at trial. To the contrary, the Classified Information Procedures Act provides mechanisms "to protect classified information from unnecessary disclosure at any stage of a criminal trial." Mot. 20-21 (internal quotation marks omitted).

## III. A partial stay would impose no cognizable harm on Plaintiff.

Plaintiff makes little attempt to establish that he would suffer irreparable harm from a partial stay. He briefly asserts (at 19-20) that he could be harmed if the government's criminal investigation proceeds unimpeded. But merely being subject to a criminal investigation is not irreparable harm, and Plaintiff does not argue otherwise. Mot. 21-22. The appropriate time to litigate challenges to a criminal investigation, to a search, or to the government's use of particular evidence is through ordinary criminal motions practice if and when charges are ultimately filed—not through extraordinary civil actions seeking to enjoin aspects of an ongoing criminal investigation.

## CONCLUSION

The district court's order should be stayed to the extent it (1) enjoins the further review and use for criminal-investigative purposes of the seized records bearing classification markings and (2) requires the government to disclose those records for a special-master review process.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
  *United States Attorney*
  *99 NE 4th Street, 8th Floor*
  *Miami, FL 33132*
  *305-961-9001*

MATTHEW G. OLSEN
  *Assistant Attorney General*

JAY I. BRATT
  *Chief, Counterintelligence and Export Control Section*

JULIE EDELSTEIN
SOPHIA BRILL
JEFFREY M. SMITH
  *Attorneys*
  *National Security Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  202-233-0986

*Counsel for Appellant*

September 20, 2022

*Donald J. Trump v. United States of America*, No. 22-13005

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,580 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

                                              */s/ Jeffrey M. Smith*
                                              Jeffrey M. Smith

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jeffrey M. Smith*
Jeffrey M. Smith