**22-13005**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

DONALD J. TRUMP,

*Plaintiff/Appellee,*

– v. –

UNITED STATES OF AMERICA,

*Defendant/Appellant.*

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:22-cv-81294-AMC
(Hon. Aileen Cannon)

## BRIEF OF APPELLEE

JAMES M. TRUSTY
IFRAH, PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4140

CHRISTOPHER M. KISE
CONTINENTAL PLLC
101 North Monroe Street
Suite 750
Tallahassee, Florida 32301
(850) 332-0702
ckise@continentalpllc.com

*Counsel for Plaintiff/Appellee*



Donald Trump v. USA, No. 22-13005

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1-1(a)(2) of the Eleventh Circuit Rules, Appellee President Donald J. Trump, submits this Notice of Certificate of Interested Persons and Corporate Disclosure Statement. The following have an interest in the outcome of this proceeding:

1.  American Broadcasting Companies, Inc. (DIS)

2.  Associated Press

3.  Bloomberg, LP

4.  Bratt, Jay I.

5.  Brill, Sophia

6.  Cable News Network, Inc. (WBD)

7.  Cannon, Hon. Aileen M.

8.  Caramanica, Mark Richard

9.  CBS Broadcasting, Inc. (CBS)

10. Corcoran, M. Evan

11. Cornish, Sr., O'Rane M.

12. Cunningham, Clark

13. Dearie, Hon. Raymond J.

14. Dow Jones & Company, Inc. (DJI)

C-1

Donald Trump v. USA, No. 22-13005

15. Edelstein, Julie

16. Eisen, Norman Larry

17. E.W. Scripps Company (SSP)

18. Fields, Lazaro

19. Finzi, Roberto

20. Fischman, Harris

21. Former Federal and State Government Officials

22. Fugate, Rachel Elise

23. Gonzalez, Juan Antonio

24. Gray Media Group, Inc. (GTN)

25. Gupta, Angela D.

26. Halligan, Lindsey

27. Inman, Joseph M.

28. Karp, Brad S.

29. Kessler, David K.

30. Kise, Christopher M.

31. Knopf, Andrew Franklin

32. Lacosta, Anthony W.

33. LoCicero, Carol Jean

Donald Trump v. USA, No. 22-13005

34.    McElroy, Dana Jane

35.    Minchin, Eugene Branch

36.    NBC Universal Media, LLC (CMCSA)

37.    Patel, Raj K.

38.    Rakita, Philip

39.    Reeder, Jr., L. Martin

40.    Reinhart, Hon. Bruce E

41.    Rosenberg, Robert

42.    Seidlin-Bernstein, Elizabeth

43.    Shapiro, Jay B.

44.    Shullman, Deanna Kendall

45.    Smith, Jeffrey

46.    Suarez, Jesus

47.    The New York Times Company (NYT)

48.    The Palm Beach Post

49.    Times Publishing Company

50.    Tobin, Charles David

51.    Trump, Donald J.

52.    Trusty, James M.

Donald Trump v. USA, No. 22-13005

53.    United States of America

54.    Wertheimer, Fred

55.    WP Company, LLC


Dated:  November 10, 2022          */s/ Christopher M. Kise*
                                   Christopher M. Kise

## STATEMENT REGARDING ORAL ARGUMENT

President Trump submits that oral argument would assist the Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT.................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF AUTHORITIES ...........................................................................iv

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF THE CASE..........................................................................2

SUMMARY OF THE ARGUMENT ...............................................................10

STANDARDS OF REVIEW ...........................................................................11

    A.    Standard of Review – Injunction.........................................................11

    B.    Standard of Review – Appointment of Special Master.......................12

ARGUMENT ...............................................................................................13

    A.    THE DISTRICT COURT PROPERLY EXERCISED ITS EQUITABLE JURISDICTION .........................................................13

        1.    The First *Richey* Factor is Not Indispensable ...........................14

        2.    President Trump has an Interest In and Need For the Seized Property .........................................................................15

        3.    President Trump Will be Irreparably Injured Without a Third-Party Review.................................................................26

        4.    President Trump Has No Alternative Adequate Remedy at Law ........................................................................27

    B.    THE SPECIAL MASTER ORDER IS NOT APPEALABLE ...........29

        1.    The Government Did Not List the Special Master Order in its Notice of Appeal Filed *Before* the Appointment of the Special Master ..........................................30

2.   There is No Jurisdiction to Review the Special Master
     Order Under 28 U.S.C. § 1292(a)(1) .........................................32

     i.    *Deckert* and *Curley* Establish the Special
           Master's Appointment is Not an Injunction
           Qualifying for Review Under 28 U.S.C.
           § 1292(a)(1) ....................................................................32

     ii.   A Single Interlocutory-Appealable Issue
           Included Within an Order Containing Rulings
           Regarding Non-Interlocutory-Appealable Issues
           Does Not Render All Rulings in the Order
           Immediately Appealable...................................................41

3.   Pendent Appellate Jurisdiction is Inappropriate ......................46

4.   The Special Master Order is Not Appealable as a
     Collateral Order........................................................................49

C.   THE APPOINTMENT OF A SPECIAL MASTER WAS
     NOT AN ABUSE OF DISCRETION................................................52

D.   THE INJUNCTION WAS NOT AN ABUSE OF
     DISCRETION .................................................................................57

1.   President Trump is Likely to Succeed on the Merits...............57

2.   President Trump Will Suffer Irreparable Injury ......................61

3.   The Balance of Equities Weighs in President Trump's
     Favor .........................................................................................63

4.   The Public Benefits from the Injunction...................................64

CONCLUSION ....................................................................................65

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abney v. United States,*
  431 U.S. 651 (1977) ........................................................................ 42, 45

*Alabama v. U.S. Army Corps of Eng'rs,*
  424 F.3d 1117 (11th Cir. 2005) .................................................. 33, 34, 40

*Alexander v. Fulton Cnty.,*
  207 F.3d 1303 (11th Cir. 2000) ............................................................ 12

*American Historical Ass'n v. Peterson,*
  876 F. Supp. 1300 (D.D.C. 1995) ......................................................... 19

*Armstrong* v. *Bush,*
  924 F.2d 282 (D.C. Cir. 1991) .............................................................. 16

*Armstrong v. Exec. Office of the President,*
  1 F.3d 1274 (D.C. Cir. 1993) ............................................. 16, 18, 19, 20

*Baltimore Contractors v. Bodinger,*
  348 U.S. 176 (1955) ............................................................................. 44

*Black v. Wigington,*
  811 F.3d 1259 (11th Cir. 2016) ............................................................ 47

*Bogard v. Wright,*
  159 F.3d 1060 (7th Cir. 1998) ........................................................ 35, 36

*Bonner v. City of Prichard,*
  661 F.2d 1206 (11th Cir. 1981) ............................................................ 13

*BP P.L.C. v. Mayor & City Council of Baltimore,*
  141 S. Ct. 1532 (2021) ........................................................................ 43

*Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.,*
  112 F.3d 1125 (11th Cir. 1997) ............................................................ 11

*Carpenter v. Mohawk Indus., Inc.,*
  541 F.3d 1048 (11th Cir. 2008) (*per curiam* ...................................... 49

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)...................................................................... 32

*Citizens for Responsibility and Ethics in Washington v. Cheney*,
  593 F. Supp. 2d 194 (D.D.C. 2009).......................................... 16, 19, 23

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)...................................................................... 49

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)...................................................................... 12

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*,
  304 F.3d 1167 (11th Cir. 2002).................................................. 57

*Curling v. Raffensperger*,
  50 F.4th 1114 (11th Cir. 2022) .................................................. 38, 39

*Deckert v. Indep. Shares Corp.*,
  311 U.S. 282 (1940)...................................................... 35, 36, 37

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988)...................................................................... 60

Exec. Order 13526 ........................................................................ 60

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981).............................................................. 35, 41

*In re Search Warrant for L. Offs. Executed on Mar. 19, 1992*,
  153 F.R.D. 55 (S.D.N.Y. 1994).............................................. 54, 55

*Gardner v. Westinghouse Broad. Co.*,
  437 U.S. 478 (1978).............................................................. 33, 34

*Gary W. v. Louisiana*,
  601 F.2d 240 (5th Cir. 1979).................................................... 12, 48

*Gonzalez v. Thaler*,
  565 U.S. 134 (2012)...................................................................... 31

*Grilli v. Metro. Life Ins. Co.*,
  78 F.3d 1533 (11th Cir.1996).................................................... 12

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
  485 U.S. 271 (1988)................................................................. 40, 44, 45

*Hamrick v. Partsfleet, LLC*,
  1 F.4th 1337 (11th Cir. 2021) ............................................... 47

*Hunsucker v. Phinney*,
  497 F.2d 29 (5th Cir. 1974)...................................... 14, 15, 27

*In re Grand Jury Investigation of Hugle*,
  754 F.2d 863 (9th Cir. 1985)................................................. 27

*In re Grand Jury Subpoenas*,
  454 F.3d 511 (6th Cir. 2006)......................................... 55, 56

*In re MDL-1824 Tri-State Water Rights Litig.*,
  644 F.3d 1160 (11th Cir. 2011)...................................... 47, 48

*In re Perrigo Co.*,
  128 F.3d 430 (6th Cir. 1997)................................................ 62

*In re Sealed Search Warrant & Application for a Warrant by Tel. or
Other Reliable Elec. Means*,
  11 F.4th 1235 (11th Cir. 2021) .......................................... 52

*In re Search Warrant dated Nov. 5, 2021*,
  No. 21 MISC.  (AT), 2021 WL 5845146 (S.D.N.Y. Dec. 8, 2021)....53, 54

*In re Search Warrant Issued June 13, 2019*,
  942 F.3d 159 (4th Cir. 2019).............................. 54, 55, 62, 63

*In re Search Warrants Executed on Apr. 28, 2021*,
  No. 21-MC-425 (JPO), 2021 WL 2188150 (S.D.N.Y. May 28, 2021)....53

*Int'l Prod. Corp. v. Koons*,
  325 F.2d 403 (2d Cir. 1963) .......................................... 34, 35

*Jones v. Fransen*,
  857 F.3d 843 (11th Cir. 2017).............................................. 9

*Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*,
  845 F. Supp. 2d 288 (D.D.C. 2012)............................... *passim*

*King v. Cessna Aircraft Co.*,
　562 F.3d 1374 (11th Cir. 2009)..............................................................47

*La Buy v. Howes Leather Co.*,
　352 U.S. 249 (1957)................................................................................48

*Macri v. U.S. ex rel. John H. Maxwell & Co.*,
　353 F.2d 804 (9th Cir. 1965)................................................................12

*McFarlin v. Conseco Servs., LLC*,
　381 F.3d 1251 (11th Cir. 2004)...........................................................44

*Microsoft Corp. v. Baker*,
　137 S. Ct. 1702 (2017)..........................................................................45

*Mohawk Indus., Inc. v. Carpenter*,
　558 U.S. 100 (2009).....................................................................*passim*

*Nat'l Org. for the Reform of Marijuana Laws v. Mullen*,
　828 F.2d 536 (9th Cir. 1987)...............................................................36

*Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*,
　451 U.S. 77 (1981)................................................................................47

*Paez v. Mulvey*,
　915 F.3d 1276 (11th Cir. 2019)..............................................46, 47, 48

*Reynolds v. McInnes*,
　380 F.3d 1303 (11th Cir. 2004)...........................................................12

*Richey v. Smith*,
　515 F.2d 1239 (5th Cir. 1975)........................................................11, 13

*Shakman v. Clerk of Cook Cnty.*,
　994 F.3d 832 (7th Cir. 2021)...............................................................36

*Siegel v. LePore*,
　234 F.3d 1163 (11th Cir. 2000)...........................................................11

*Smith v. Barry*,
　502 U.S. 244 (1992)..............................................................................31

*Summit Med. Assocs., P.C. v. Pryor*,
　180 F.3d 1326 (11th Cir. 1999)...........................................................47

*Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,*
   385 U.S. 23 (1966)..............................................................32, 33, 34, 35

*Thompson v. Enomoto,*
   815 F.2d 1323 (9th Cir. 1987).................................................... 36

*Tidewater Oil Co. v. United States,*
   409 U.S. 151 (1972).................................................................. 45

*Trump v. United States,*
   No. 22-13005, 2022 WL 4366684 (11th Cir. Sept. 21, 2022)........ 8, 9, 14

*United States v. Chapman,*
   559 F.2d 402 (5th Cir. 1977)..................................................... 14

*United States v. Howell,*
   425 F.3d 971 (11th Cir. 2005).................................................... 27

*United States v. Melquiades,*
   394 F. App'x 578 (11th Cir. 2010) ..........................................57, 59

*United States v. Neill,*
   952 F. Supp. 834 (D.D.C. 1997)............................................54, 55, 63

*United States v. Nixon,*
   418 U.S. 683 (1974).................................................................. 35

*United States v. Rodriguez-Aguirre,*
   264 F.3d 1195 (10th Cir. 2001)................................................... 59

*Vital Pharmaceuticals, Inc. v. Alfieri,*
   23 F. 4th 1282 (11th Cir. 2022) ................................................. 11

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008).................................................................48, 57

*Wreal, LLC v. Amazon.com, Inc.,*
   840 F.3d 1244 (11th Cir. 2016)................................................... 57

*Yamaha Motor Corp. v. Calhoun,*
   516 U.S. 199 (1996).................................................................. 43

**Statutes & Other Authorities:**

18 U.S.C. § 793(e) ........................................................................ 61

18 U.S.C. § 2071 .......................................................................... 22

28 U.S.C. § 1291 ........................................................ 29, 32, 46, 49

28 U.S.C. § 1291(a)(1) ............................................................ 34, 50

28 U.S.C. § 1292 .................................................. 10, 29, 30, 42

28 U.S.C. § 1292(a) .................................................. 29, 30, 32, 43

28 U.S.C. § 1292(a)(1) ............................................................ *passim*

28 U.S.C. § 1292(b) ............................................................ 8, 43, 44

44 U.S.C. § 2201 ............................................................................ 2

44 U.S.C. § 2201(2) ...................................................................... 17

44 U.S.C. § 2201(3) ...................................................................... 17

44 U.S.C. § 2203(b) ...................................................................... 17

44 U.S.C. § 2203(f)(1) .................................................................. 17

44 U.S.C. § 2204 .......................................................................... 23

44 U.S.C. § 2205(3) ...................................................................... 23

50 U.S.C. § 3161 .......................................................................... 60

Fed. Prac. & Proc. Juris. § 3922 (2d ed.) ................................. 33

Fed. R. App. P. 3(c)(1)(B) ........................................................... 31

Fed. R. App. P. 27(d)(1)(E) ......................................................... 66

Fed. R. App. P. 27(d)(2)(A) ......................................................... 66

Fed. R. App. P. 32(a)(5) ............................................................... 66

Fed. R. App. P. 32(a)(6) ............................................................... 66

Fed. R. Civ. P. 53 ............................................................ 12, 35, 39

Fed. R. Civ. P. 53(b) ................................................................ 5, 6

Fed. R. Crim. P. 41(g) ....................................................................... 1

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction in accordance with its equitable powers and Federal Rule of Criminal Procedure 41(g). The order appealed was entered on September 5, 2022, (the "Injunction" or "Injunction Order") and the Government filed its Notice of Appeal on September 8, 2022. Accordingly, this Court only has jurisdiction to review the Injunction Order under 28 U.S.C. § 1292(a)(1) and lacks any jurisdiction to review the District Court's September 15, 2022, order appointing a special master (the "Special Master Order").

## STATEMENT OF THE ISSUES

1. Whether the District Court properly exercised its equitable jurisdiction?

2. Whether this Court has jurisdiction to review the Special Master Order and, if so, whether the District Court abused its discretion in appointing a special master?

3. Whether the District Court abused its discretion in temporarily enjoining the Government from reviewing and using records seized during a search of President Trump's residence?

## STATEMENT OF THE CASE

During his term in office, President Trump exercised his discretion under the Presidential Records Act ("PRA"), 44 U.S.C. § 2201, *et. seq*., to categorize certain records as "Presidential" and others as "personal." Under the PRA, at the completion of his term, the National Archives and Records Administration ("NARA") was to assume responsibility for any Presidential records but had no role with respect to records the President categorized as personal. Nonetheless, following his departure from the White House, NARA communicated with representatives of President Trump about obtaining what NARA believed were "Presidential records." App. at 47. Thereafter, to resolve issues NARA had raised, President Trump voluntarily surrendered fifteen boxes to NARA. *Id*. NARA reviewed those records and apparently determined that, in its opinion, President Trump still retained possession of what NARA believed were "Presidential records." *Id*.

Then, instead of affording President Trump the deference granted to him under the PRA, and instead of filing a *civil action* seeking to challenge President Trump's designation *process* (the only appropriate and authorized course of action under the PRA), NARA made a referral

2

to the Department of Justice, resulting in the near immediate commencement of a criminal investigation. *Id.* at 48–50. In connection with that investigation, the Government then issued a grand jury subpoena to the Custodian of Records for the Office of Donald J. Trump, seeking documents bearing classification markings. *Id.* at 51. On June 3, 2022, certain responsive documents were produced to the Government. *Id.* at 51–52.

Thereafter, on August 8, 2022, the Government executed a search warrant at President Trump's residence. Immediately following the raid, President Trump's counsel asked the Government for: (1) a copy of the affidavit in support of the warrant; (2) the Government's consent to appoint a special master to "protect the integrity of privileged documents;" (3) a detailed list of what was taken from the residence and from where; and (4) an opportunity to inspect the seized property. *Id.* at 120–121. The Government declined these requests. *See id.* at 121.

Seeking protection from the consequences of an unlawful search and seizure, and to safeguard his interest in the seized materials, President Trump filed the underlying civil action, moving for judicial

3

oversight and additional relief. *See generally id*. at 1, 32. Specifically, President Trump requested the District Court: (1) appoint a special master; (2) enjoin further review of seized materials by the Government until a special master is appointed; (3) require the Government to supply a sufficiently detailed Receipt for Property; and (4) require the Government to return any item seized that was not within the scope of the search warrant. *See id*. at 41.

After thorough briefing by the parties, *see generally id*. at 1, 32, 48, 58, the District Court exercised its "equitable jurisdiction and inherent supervisory authority" to safeguard the rights of President Trump as a citizen subject to a potentially unlawful search and seizure, granting his motion in part. *See id*. at 117. "[M]indful of the need to ensure at least the appearance of fairness and integrity under the extraordinary circumstances," *id*., the District Court entered a temporary Injunction, stating:

> The Government is **TEMPORARILY ENJOINED** . . . from further review and use of any of the materials seized from Plaintiff's residence on August 8, 2022, for criminal investigative purposes pending resolution of the special master's review process as determined by

> this Court. The Government may continue to
> review and use the materials seized for purposes
> of intelligence classification and national security
> assessments.

*Id.* at 139–140. The Injunction did not require the Government to submit

records to any special master (as none had yet been appointed) and

contained only a statement of prospective intent to appoint a special

master:

> A special master ***shall be*** **APPOINTED**. . . to
> review the seized property, manage assertions of
> privilege and make recommendations thereon, and
> evaluate claims for return of property. The exact
> details and mechanics of this review process will
> be decided expeditiously following receipt of the
> parties' proposals as described below.

*Id.* at 139 (emphasis added). The Injunction Order made clear the

identity, duties, and scope of review of any special master would be the

subject of a separate order entered in accordance with Federal Rule of

Civil Procedure 53(b). *Id.* at 140.

The next day, the Government filed its Notice of Appeal of the

Injunction Order. *See id.* at 141. Then, on September 8, 2022, the

Government moved for a partial stay of the Injunction Order to the

extent it: (1) enjoined the further review and use for criminal

5

investigative purposes of records bearing classification markings that were seized; and (2) required the Government to disclose purported "classified records" to a special master for review. *See id.* at 144. However, the Injunction Order did not include any language appointing and identifying the Special Master, much less setting forth the scope of review and/or turnover of any seized materials. Rather, it simply precluded the Government from using any of the seized materials for criminal investigative purposes pending completion of the special master process.

On September 15, 2022, the District Court entered the Special Master Order, appointing the Honorable Raymond J. Dearie, Senior United States District Judge for the Eastern District of New York. *See* Gov. App. at Tab 91, p.1. The Special Master Order conformed to the requirements of Federal Rule of Civil Procedure 53(b), including, *inter alia*, authorizing Judge Dearie to review all the seized materials and to adjudicate certain disputes between the parties. *Id.*

That same day, the District Court denied the Government's stay request, noting it was not inclined to hastily adopt the Government's

contention the approximately 100 purportedly "classified" documents were, in fact, classified:

> [E]venhanded procedure does not demand unquestioning trust in the determinations of the Department of Justice. Based on the nature of [the] action, the principles of equity require the Court to consider the specific context at issue, and that consideration is inherently impacted by the position formerly held by Plaintiff. The Court thus continues to endeavor to serve the public interest, the principles of civil and criminal procedure, and the principles of equity. And the Court remains firmly of the view that appointment of a special master to conduct a review of the seized materials . . . is fully consonant with the foregoing principles and with the need to ensure at least the appearance of fairness and integrity under unprecedented circumstances.

App. at 179–180.

On September 16, 2022, the Government filed a Motion for Partial Stay Pending Appeal in this Court. The Government's motion did not identify a basis for appellate jurisdiction. President Trump's response ("Response to Stay") noted the Court lacked jurisdiction to review the Special Master's appointment and authority because the Special Master Order was not an appealable interlocutory order. *See* Response to Stay at 20–27. Citing 28 U.S.C. § 1292(a)(1), and numerous cases interpreting

the statute, President Trump argued the appointment of a special master is a procedural order—not an injunction—and thus not subject to interlocutory review. *See id.* at 20–23. Therefore, as the requirements of 28 U.S.C. § 1292(b) were not met, the Court lacked jurisdiction. *See id.* at 23–25. The Government's reply ("Gov't Stay Reply") argued: (1) the court of appeals had jurisdiction to review the appointment of a special master because it was included in the same "order" as the Injunction; and (2) because the Injunction is "inextricably intertwined" with the appointment of the Special Master, the Court could review both decisions. Gov't Stay Reply at 7–8.

The Court granted the Government's motion, finding the Government had established entitlement to the stay "to the extent that it (1) requires the government to submit for the special master's review the documents with classification markings and (2) enjoins the United States from using that subset of documents in a criminal investigation." *Trump v. United States*, No. 22-13005, 2022 WL 4366684, *1 (11th Cir. Sept. 21, 2022). The Court found it had jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), "which provides courts of appeals with jurisdiction over

8

interlocutory orders granting injunctions." *Id.* at *6. The Court further noted it was not reviewing the District Court's appointment of a special master but was instead addressing "the district court's orders as they require the United States to act and refrain from acting." *Id.* at *6 n.3.

Then, the Court "[n]evertheless" found the appointment of the Special Master was "otherwise nonappealable" but subject to review because it was "inextricably intertwined" with an appealable order, or was "'necessary to ensure meaningful review of an appealable decision." *Id.* at *6 n.3 (quoting *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017)).

Thereafter, arguing this Court lacked jurisdiction to reach the Special Master Order, President Trump filed a limited application for stay of this Court's order in the Supreme Court. *See* Application, *Trump v. United States*, No. 22A283 (Oct. 4, 2022). The Supreme Court denied the requested relief. *See id.* (Oct. 13, 2022).

9

## SUMMARY OF THE ARGUMENT

This investigation of President Trump by the administration of his political rival is both unprecedented and misguided.  In what at its core is a document dispute that has spiraled out of control, the Government wrongfully seeks to criminalize the possession by the 45th President of his own Presidential and personal records.

Recognizing the exceptional circumstances, President Trump's interest in the seized materials, the potential irreparable injury, and the lack of any other remedy, the District Court exercised appropriately its equitable jurisdiction, determining the appointment of a special master and entry of a limited injunction were "fully consonant" with "the public interest, the principles of civil and criminal procedure, and the principles of equity."  App. at 180.

Additionally, the Special Master Order is not appealable under 28 U.S.C. § 1292 and not subject to pendent appellate jurisdiction or the collateral order doctrine.  Assuming the Court finds it has jurisdiction, it should nonetheless affirm because the District Court did not abuse its discretion in finding a special master was warranted due to the

10

exceptional circumstances presented and the associated need for adequate procedural safeguards.

The District Court also did not abuse its discretion in temporarily enjoining the Government's use of the seized materials because the unprecedented nature of this investigation supports the narrowly tailored injunction.

## STANDARDS OF REVIEW

This Court reviews *de novo* a question regarding its jurisdiction. *Vital Pharmaceuticals, Inc. v. Alfieri,* 23 F. 4th 1282, 1288 (11th Cir. 2022). This Court reviews for abuse of discretion a district court's decision to exercise equitable jurisdiction. *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975).

### A. Standard of Review – Injunction.

The grant or denial of a preliminary injunction is a decision within the discretion of the district court and review of that decision is extremely narrow. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126, 1127 (11th Cir. 1997) (citation omitted). This Court may reverse a district court's grant or denial of a preliminary injunction only if there was a *clear* abuse of discretion. *Siegel v. LePore*, 234 F.3d 1163,

11

1175 (11th Cir. 2000). Thus, an appellate court will "uphold any district court determination that falls within a permissible range of permissible conclusions." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990); *see also Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1326 (11th Cir. 2000) (court of appeals must affirm unless "the district court has made a clear error of judgment, or has applied an incorrect legal standard.")

## B.    Standard of Review – Appointment of Special Master.[1]

The appointment of a special master under Federal Rule of Civil Procedure 53 is reviewed under an abuse of discretion standard. *Reynolds v. McInnes*, 380 F.3d 1303, 1305, n.3 (11th Cir. 2004) (citing *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533, 1538 (11th Cir.1996)); *Gary W. v. Louisiana*, 601 F.2d 240, 245 (5th Cir. 1979); *see also Macri v. U.S. ex. rel. John H. Maxwell & Co.*, 353 F.2d 804, 809 (9th Cir. 1965) (In reviewing "an order of reference to a special master pursuant to Fed. R. Civ. P. 53, the only inquiry by Court of Appeals would center on question of whether trial court abused its discretion.").

---

[1] As developed below, the Court should not reach this question because the Special Master Order is not appealable.

12

## ARGUMENT

### A. THE DISTRICT COURT PROPERLY EXERCISED ITS EQUITABLE JURISDICTION.

The District Court properly exercised its equitable jurisdiction because it found the *Richey* factors weighed in President Trump's favor.[2] *See Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975).[3] In *Richey*, the former Fifth Circuit set forth a series of factors to consider in relation to the exercise of equitable jurisdiction. *See id.* at 1245. The non-exhaustive list of factors include: (1) whether the government displayed a callous disregard for the movant's constitutional rights; (2) whether the movant has an individual interest in and need for the seized property; (3) whether the movant would be irreparably injured by denial of the return of the seized property; and (4) whether the movant otherwise has an adequate remedy at law. *Id.* The District Court appropriately found factors two through four weighed in favor of exercising jurisdiction. App. at 124–128.

---

[2] Although this brief responds to the Government's arguments regarding equitable jurisdiction under *Richey*, the Fourth Amendment provides broader authority to assert jurisdiction and accord relief than that provided under Rule 41(g). *See* Brief for Clark Cunningham as Amicus Curiae at 8.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

### 1.    The First *Richey* Factor is Not Indispensable.

The Government argues the District Court's finding President Trump's rights were not callously disregarded warrants reversal on its own.  The motions panel relied significantly on the "indispensability of an accurate allegation of callous disregard" statement in *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977).  *See* Appellant Br. at 23 (quoting *Trump*, 2022 WL 4366684, at *7).  However, *Chapman's* reference to "indispensability" was made in the context of describing *Richey's* holding.  *See Chapman*, 559 F.2d at 406.

*Chapman* did *not* hold the first *Richey* factor is, in fact, indispensable.[4]  Indeed, such a holding would obviate the need to address factors two through four.  To be sure, *Chapman* weighed factors two through four, despite the movant not showing callous disregard.  *See Chapman*, 559 F.2d at 406 ("Hunsucker's other factors are also lacking.").  And *Hunsucker v. Phinney*, upon which *Richey* relies, does not elevate the factor above the others.  497 F.2d 29, 34 (5th Cir. 1974).  In any event,

---

[4] "Indispensable" is defined as "absolutely necessary" or "not subject to being set aside or neglected."  *Merriam-Webster Dictionary Online*, https://www.merriam-webster.com/dictionary/indispensable.

14

the District Court's finding as to callous disregard was limited to the "record to date" on September 5, 2022.  App. at 125.[5]

Finally, citing *Hunsucker*, the Government argues a district court's exercise of equitable jurisdiction to review seized evidence in a pre-indictment posture must present "exceptional" circumstances.  497 F.2d at 34.  If the facts presented here—namely, the unprecedented search and seizure of items from President Trump's home by the administration of his political rival—do not present circumstances so "exceptional" to warrant the exercise of equitable jurisdiction, no case ever will.

### 2.  President Trump has an Interest In and Need For the Seized Property.

President Trump has an individual interest in and need for the seized property because the law recognizes it is presumptively his

---

[5] Indeed, the record now reveals the Government seized not only 100 purportedly classified documents, but (as noted previously, *see* App. at 129–130) also many strictly personal items (passport, medical records, tax documents, etc.) and approximately 22,000 pages of (presumptively personal) records.  Appellant Br. at 9 (noting seizure of 13,000 documents totaling approximately 22,000 pages).    Thus, notwithstanding the Government's argument it only sought records bearing classification markings, which was all the subpoena sought and Attachments A and B to the search warrant authorized, it nevertheless took the liberty to seize a spate of President Trump's personal items, all of which lack any plausible relation to a national security investigation.

personal property.  By executing a search warrant at President Trump's residence and seizing thousands of pages of documents, the Government wholly disregarded the deference accorded to a President under the PRA. The PRA authorizes the President alone to designate records as either Presidential or personal and "'accords the President virtually complete control over his records during his term of office.'" *Armstrong v. Exec. Office of the President ("Armstrong II")*, 1 F.3d 1274, 1291 (D.C. Cir. 1993) (quoting *Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282, 290 (D.C. Cir. 1991)).  Judicial review of a president's creation, management, or disposal decisions is precluded by the PRA.  *Armstrong I*, 924 F.2d at 290 ("[T]he PRA precludes review of the President's recordkeeping practices and decisions.").  The Archivist "lacks the authority under the PRA to inspect the President's records or survey the President's records management practices." *Id.*  Consequently, "neither the Archivist nor the Congress has the authority to veto the President's disposal decision." *Id. See Citizens for Responsibility and Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 198 (D.D.C. 2009) (noting that, in enacting the PRA, Congress "limited the scope of judicial review and provided little

oversight authority for the President and Vice President's document preservation decisions").

The PRA "distinguishes Presidential records from 'personal records'" and "requires that all materials produced or received by the President, 'to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately.'" *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 845 F. Supp. 2d 288, 291 (D.D.C. 2012) (quoting 44 U.S.C. § § 2203(b)); *see also* 44 U.S.C. § 2201(2)–(3). "*The categorization of the records during the Presidency controls what happens next* . . . . The statute assigns the Archivist *no role* with respect to personal records once the Presidency concludes." *Id.* (emphasis added). "The PRA contains no provision obligating or even permitting the Archivist to assume control over records that the President 'categorized' and 'filed separately' as personal records. At the conclusion of the President's term, the Archivist only '***assumes responsibility for the Presidential records***.'" *Id.* (emphasis added) (quoting 44 U.S.C. § 2203(f)(1)). "[T]he PRA does not confer any mandatory or even discretionary authority on the Archivist to classify records. Under the statute, this responsibility is left solely to the

17

President." *Id.* at 301 (describing categorization decision made by President Clinton as not within the discretion of the Archivist as the subject materials "were not provided to the Archives at" the end of the Clinton presidency and were thus not designated as Presidential Records by the President).[6]  As such, President Clinton had sole discretion to classify a record as personal or Presidential. *See Jud. Watch, Inc.*, 845 F. Supp. 2d at 301.

Here, under the PRA, President Trump's categorization of records during his term was likewise within his sole discretion.  The PRA makes plain any records President Trump deemed to be his personal records during his term in office are presumptively his personal records.  "The only reference in the [PRA] to the designation of records as personal

---

[6] Likewise, here, President Trump's decision to retain certain records as "personal" and to not provide same to the Archives at the end of his presidency constitutes a demonstrable, and effective, exercise of his discretion under the PRA to categorize those records.  Indeed, President Trump was still the President of the United States when, for example, many of the documents at issue were packed (presumably by the GSA), transported, and delivered to his residence in Palm Beach, Florida. *See* Patricia Mazzei and Julia Echikson, *Trump has arrived in Palm Beach to begin life as a private citizen*, The New York Times, Jan. 20, 2021, available at https://www.nytimes.com/2021/01/20/us/trump-palm-beach.html (last accessed, November 10, 2022). *See* Amend. XX, § 1.  Thus, under the PRA, those records are presumptively personal.

versus Presidential also calls for the decision to be made by the executive
. . . The PRA contains no provision obligating or even permitting the
Archivist to assume control over records that the President 'categorized'
and 'filed separately' as personal records." *Jud. Watch, Inc.,* 845 F. Supp.
2d at 301.

However, while a President's creation, management and disposal
decisions under the PRA are not subject to review, the "guidelines
describing which *existing* materials will be treated as presidential
records in the first place are subject to judicial review." *Armstrong II*, 1
F. 3d at 1294 (emphasis in original).  Thus, the PRA does "not necessarily
foreclose judicial review of a decision to denominate certain materials
'personal records' of a former President.  Such judicial review may be
available to ensure that Presidential records are not disposed of as
personal records at the end of an Administration . . . ." *Cheney*, 593 F.
Supp. 2d at 216 (quoting *American Historical Ass'n v. Peterson*, 876 F.
Supp. 1300, 1314 (D.D.C. 1995)).  Therefore, under the PRA, the decision
of a President during that President's term is subject to initial deference
and limited judicial review.  Thereafter, the only avenue available to
challenge the categorization by a President of a particular record as being

Presidential or personal is through a civil proceeding challenging the guidelines or the process utilized to make the categorization decision.

Reflecting the level of initial deference accorded a President under the PRA, the Court noted in *Judicial Watch* that "because the [subject materials] are not physically in the government's possession, [NARA] submits that it would be required to seize them directly from President Clinton" and NARA considered such seizure to be an "***extraordinary request' that is 'unfounded [and] contrary to the PRA's express terms* . . . .'" *Id.* at 302–303 (emphasis added).  Similarly, the PRA likewise contains no provision authorizing the United States Department of Justice to seize records from a former President that were designated as personal by that President during his term in office.

Thus here, since President Trump had complete authority under the PRA to designate initially the records at issue as "personal" during his presidency, and the seized records "were not provided to the Archives at" the end of his presidency, the seized records are presumptively

20

personal.[7]  *Cf. Jud. Watch, Inc.*, 845 F. Supp. 2d at 301.  Under the PRA,

that designation is entitled to deference and the Government simply

lacked any authority to direct the seizure of President Trump's personal

property.  Instead of initiating a criminal investigation and executing a

search warrant, the Government should simply have availed itself of the

appropriate process under the PRA, namely, filing a ***civil action*** seeking

to challenge the ***process*** by which President Trump designated the

records as personal.[8]  In any event, President Trump's categorization

decisions made during his term of office cannot possibly form the basis

for any criminal investigation.  To the extent those categorization

decisions are subject to challenge under the PRA, that is an entirely civil

---

[7] Thus, contrary to the Government's contention, Appellant Br. at 46, the designation was not "some hypothetical, prior designation[] of some records as personal."  To the contrary, the designations were made during the course of the presidency pursuant to the express authority granted to President Trump (or any other President for that matter) under the PRA.
[8] In taking issue with the holding in *Judicial Watch*, the Government claims NARA would be "without authority or recourse if a President were to designate records that are plainly official government documents as personal records."  *See* Appellant Br. at 46 n.11.  This argument ignores fully (and conveniently) NARA's ability to pursue a ***civil*** action to challenge the designation ***process***.  The problem here is that NARA failed to do so, and instead pursued a course of action not authorized under the PRA.

21

matter.  However, it is simply untenable to conclude ***any President*** may be subject to a criminal charge for exercising the unfettered rights set forth in the PRA to categorize certain documents as "personal" during that President's term of office.

The Government advances the absurd argument that "unclassified records may constitute evidence of potential violations of 18 U.S.C. § 2071, which prohibits 'conceal[ing]' or 'remov[ing]' government records." Appellant Br. at 35.  This again ignores the absolute discretion vested in a President as to the creation, management and disposal of Presidential records and the deference accorded such President as to categorization decisions.  A President cannot possibly be subject to criminal liability for exercising the authority granted under the PRA.  If (correctly or otherwise) President Trump designated records as personal during his presidency, he cannot be charged criminally for "conceal[ing]" or "remov[ing]" them as he had the absolute right to do so under the PRA.

Here, the function of the Special Master is to aid the District Court in not just evaluating privilege claims (as the Government seems to suggest) but also in determining which of the seized documents are personal records which should be returned; although the District Court

is the ultimate arbiter.  Thus, whether President Trump can claim an interest in certain documents or categories of documents may depend upon a review by the Special Master or District Court.  Where certain documents were designated by President Trump as "personal" during his presidency, those documents remain such unless and until that designation is challenged successfully in an appropriate ***civil*** action seeking review of the ***process*** by which the designation was made.  Those documents must and should therefore be returned to President Trump, acknowledging fully the deference to which he remains entitled under the PRA.[9]

Here, the Government has this all backwards.  President Trump need not advance "proof" the records are personal.  His decision to retain them already establishes them as such under the PRA.  That decision controls until the designation process is successfully challenged.  *Cheney*,

---

[9] Under the PRA, President Trump also has specified rights to restrict access to his Presidential records, 44 U.S.C. § 2204, and an absolute right to access (or have his designee access) those Presidential records, 44 U.S.C. § 2205(3).  These rights further accord President Trump a sufficient interest in the seized materials even if they are Presidential records.

593 F. Supp. 2d at 198.  Thus, contrary to the Government's contention, the burden is *not* on President Trump to prove now what category, personal or Presidential, a document falls into because under the PRA he already made that decision and it remains final until the *process* is challenged.   The Government simply cannot seize first and challenge later.[10]

The ultimate disposition of the seized materials is indisputably governed by the provisions of the PRA.  Thus, at best, NARA might be able to challenge President Trump's designation process in an appropriate civil forum asserting that certain records designated initially by President Trump as "personal" are in fact Presidential records. However, without a meaningful review of the seized materials by a neutral arbiter with an appreciation for the PRA framework, President Trump will be severely prejudiced.  This is likely precisely why the District Court entered the Injunction and Special Master Order.  What is

---

[10] Given the Government's complete disregard of the PRA and the deference to be afforded thereunder to President Trump, it may now fall on the District Court to make the requisite adjudication as to the propriety, *vel non*, of the designation process.  Since the Government has created this mess, it certainly cannot be heard now to complain about such adjudication.

clear regarding all the seized materials is that they belong with either President Trump (as his personal property to be returned now pursuant to Rule 41(g)) or later with NARA (following an appropriate civil challenge to the designation process), but not with the Department of Justice. However, it is not even possible for this Court, or anyone else for that matter, to make *any* determination as to which documents and other items belong where and with whom without first conducting a thoughtful, organized review. The recognized discretionary authority of President Trump under the PRA, the deference to be accorded President Trump's initial determination of records as "personal" and the Government's subsequent attempts to characterize the exercise of that discretion and deference as a potential crime, underscore fully President Trump's contention that both the Injunction Order and Special Master Order were appropriate and necessary under the circumstances. President Trump has an obvious interest in his own personal (and even Presidential) records and the District Court acted within its discretion in recognizing a neutral party was needed to facilitate adjudication of the legal status of the documents.

### 3.    President Trump Will be Irreparably Injured Without a Third-Party Review.

As the District Court determined, President Trump "faces an unquantifiable potential harm by way of improper disclosure of sensitive information to the public." App. at 125–126. This is evidenced by various media reports regarding the contents of purportedly "classified" documents seized by the Government in this case.[11] Irreparable injury could occur if the Government were permitted to improperly use the documents seized:

> As a function of [President Trump's] former position as President of the United States, the stigma associated with the subject seizure is in a league of its own. A future indictment, based to any degree on property that ought to be returned, would result in reputational harm of a decidedly different order of magnitude.

*Id.* at 126. The posture in which this case presents itself cannot be overstated. President Trump, who continues to be politically active, can only be harmed by an improper, perpetual inquiry into his discretionary actions while in office, or worse yet, an indictment.

---

[11] *See, e.g.*, Devlin Barrett and Carol D. Leonnig, *Material on foreign nation's nuclear capabilities seized at Trump's Mar-a-Lago*, WASH. POST (Sept. 6, 2022), https://www.washingtonpost.com/national-security/2022/09/06/trump-nuclear-documents/.

### 4. President Trump Has No Alternative Adequate Remedy at Law.

The District Court properly determined that "without Rule 41(g), [President Trump] would have no legal means of seeking the return of his property for the time being and no knowledge of when other relief might become available."  App. at 126–127.  Indeed, courts routinely adjudicate Rule 41(g) motions.  *See, e.g.*, *United States v. Howell*, 425 F.3d 971, 973 (11th Cir. 2005).  Occasionally, like the case here, said motions occur prior to a formal charge.  *See, e.g.*, *In re Grand Jury Investigation of Hugle*, 754 F.2d 863, 865 (9th Cir. 1985) ("[A] court is not required to defer relief [relating to privileged material] until after issuance of the indictment."); *Hunsucker*, 497 F.2d at 32 (same).

In the District Court, the Government claimed a court cannot enjoin its use of the documents it has determined are classified.  App. at 148–151.  Therefore, the argument goes, President Trump has no right to have the documents reviewed by him or his designee or returned to him, because the Government has unilaterally determined they are classified, and thus, the Government should be permitted to continue to use them to build a criminal case against him.

27

However, there remains a fundamental disagreement as to not only the classification status of certain documents, but also who is ultimately entitled to them. The Injunction Order made no findings as to the classification status of any documents, nor any finding regarding what party was ultimately entitled to access or possess such records. For good reason, the District Court had not yet begun to review the seized documents and the parties had not completed briefing on whether the documents are Presidential or personal records. Thus, whether the Government is entitled to retain some or all the seized documents has not been determined by any court. That ultimate determination is an issue separate from the Injunction Order currently on appeal.[12]

---

[12] Despite the Government's attempts to paint the ruling as a finding on the merits, the Injunction Order is limited:

> The Court pauses briefly to emphasize the limits of this determination. [President Trump] ultimately may not be entitled to return of much of the seized property or to prevail on his anticipated claims of privilege. That inquiry remains for another day. For now, the circumstances surrounding the seizure in this case and the associated need for adequate procedural safeguards are sufficiently compelling to at least get [President Trump] past the courthouse doors.

App. at 128.

## B.    THE SPECIAL MASTER ORDER IS NOT APPEALABLE.

Courts of Appeals, like all federal courts, are courts of limited jurisdiction.  Generally, federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "A final decisio[n] is typically one by which a district court disassociates itself from a case." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (cleaned up).

Congress authorized interlocutory review only in limited instances. 28 U.S.C. § 1292. Relevant here, courts of appeals have jurisdiction to review interlocutory orders of the "district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ."    28 U.S.C. § 1292(a)(1).    They also have jurisdiction to consider interlocutory orders pertaining to receivers or the rights and liabilities of parties in admiralty. *See id.* § 1292(a)(2)–(3).  If an order does not satisfy one of the enumerated criteria in § 1292(a), a district court can certify an order to the court of appeals if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation

. . . .” *Id.* § 1292(b).  If the district court certified its interlocutory order as appealable, the court of appeals would then have discretion whether to permit such appeal to be taken.  *Id.*  Lastly, as it pertains to the regional courts of appeals, Congress also authorized the Supreme Court to “prescribe rules . . . to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under” the statute.  *Id.* § 1292(e).

Here, the Court lacks jurisdiction to review the Special Master Order because it is not appealable under § 1292, not subject to pendent appellate jurisdiction, and not a collateral order.

### 1.    The Government Did Not List the Special Master Order in its Notice of Appeal Filed *Before* the Appointment of the Special Master.

The Special Master Order is not appealable because it was entered a week *after* the Government appealed the District Court’s Injunction Order.  On September 5, 2022, the District Court entered a temporary injunction enjoining the Government’s review and use of the materials seized from President Trump’s residence for criminal investigative purposes.  The District Court further stated it would later appoint a special master “to review the seized property,” but that the “exact

details and mechanics of this review process will be decided expeditiously following receipt of the parties' proposals as described below." App. at 139. Three days after the Injunction Order, the Government filed a Notice of Appeal listing the September 5, 2022, Injunction Order as the order being appealed. However, the District Court did not actually appoint the Special Master and grant the Special Master any authority until September 15, 2022. Federal Rule of Appellate Procedure 3(c)(1)(B) requires a notice of appeal to "designate the . . . appealable order . . . from which the appeal is taken . . . ." Fed. R. App. P. 3(c)(1)(B). "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992). Further, "[a]lthough courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal." *Id.*; *cf. Gonzalez v. Thaler,* 565 U.S. 134, 147 (2012).

Here, the Government did not—and could not—designate the District Court's September 15, 2022, Special Master Order in its September 8, 2022, Notice of Appeal. This deprives the Court of jurisdiction. The recent amendments to Rule 3 do not change this. *See*

31

Fed. R. App. P. 3 cmt. (2021 amendments designed to eliminate need to list every order for which appeal is taken as related to the merger rule). This is not a situation where the Government did not list an older order in appealing a more recent order. Here, the Government attempts to add an order to its appeal that *did not exist* when it filed its notice of appeal. As such, this court lacks jurisdiction over the Special Master Order.

## 2. There is No Jurisdiction to Review the Special Master Order Under 28 U.S.C. § 1292(a)(1).

### i. *Deckert* and *Curley Establish* the Special Master's Appointment is Not an Injunction Qualifying for Review Under 28 U.S.C. § 1292(a)(1).

The District Court's appointment of a special master is not an injunction merely because it requires some action by a party. Section 1292(a)(1), an exception to the finality rule in § 1291, permits interlocutory appeals over orders pertaining to injunctions. 28 U.S.C. § 12992(a)(1). Because § 1292(a) is an exception to the finality rule and policy against piecemeal appeals, it is narrowly construed. *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981); *Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24 (1966) ("[F]ederal law

expresses the policy against piecemeal appeals. Hence we approach this statute somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." (citation omitted)). Thus, the exception in § 1292(a)(1) "does not embrace orders that have no direct or irreparable impact on the *merits* of the controversy." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 482 (1978) (emphasis added) (holding that allowing orders relating only to pretrial procedures to fall within § 1292(a)(1) "would compromise 'the integrity of the congressional policy against piecemeal appeals.'" (quoting *Switz. Cheese*, 385 U.S. at 25)).

Further, "[i]t is not enough to qualify for appeal under this statute that a requested order be addressed to a party and command action, or even that it be enforceable by contempt." 15B C. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 3922 (2d ed.). "There are, of course, many orders entered by a trial court during the pendency of a suit, requiring the parties to act . . . in a particular way. However, not all such orders, regardless of how they are characterized . . . are 'injunctions' for the purposes of 28 U.S.C. § 1292(a)(1)." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005).

This Court has outlined the requirements for what qualifies as an

injunction to be appealable under § 1292(a)(1):

> First, the interlocutory order appealed must have the first two
> elements of an injunction, that is, it must be: (1) a clearly
> defined and understandable directive by the court to act or to
> refrain from a particular action; and (2) enforceable through
> contempt, if disobeyed. However, merely establishing that the
> order under consideration is a court order commanding or
> preventing an action, and enforceable by contempt, does not
> make it "an injunction" under § 1292(a)(1). As noted earlier,
> an injunction in the traditional sense must be an order that
> gives some or all of the substantive relief sought in the
> complaint. Thus, "[t]he § 1292(a)(1) exception [to the final
> judgment rule] does not embrace orders that have no direct
> or irreparable impact on the merits of the controversy."

*Alabama*, 424 F.3d at 1128–29 (alterations in original) (footnotes omitted)
(quoting *Gardner*, 437 U.S. at 482). This is because it is "better . . . to
read § 1292(a)(1) as relating to injunctions which *give or aid in giving
some or all of the substantive relief* sought by a complaint . . . ." *Id.* at
1129 n.17 (quoting *Int'l Prod. Corp. v. Koons*, 325 F.2d 403, 407 (2d Cir.
1963)); *see also Switz. Cheese*, 385 U.S. at 25 ("Orders that in no way touch
on the merits of the claim but only relate to pretrial procedures are not in
our view interlocutory within the meaning of § 1291(a)(1)." (quotations
omitted)). And § 1292(a)(1) should not be read to encompass "restraints
or directions in orders concerning the conduct of the parties or their
counsel, unrelated to the substantive issues in the action . . . ." *Id.*

34

(quoting *Koons*, 325 F.2d at 407). Ultimately, "such a construction provides a better fit with the language of the statute . . . and with the policy considerations which led Congress to create this exception to the federal final judgment rule." *Id.* (quoting *Koons*, 325 F.2d at 407).

Here, the Special Master Order fails to satisfy this test. First, this was not an action directed to a party—it appointed a third-party as special master pursuant to Federal Rule of Civil Procedure 53. The appointment of a special master is interlocutory and not immediately appealable. *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 291 (1940) (compiling cases). Although appointment of a special master ordinarily requires some action by the parties, this does not transform it from a procedural order into an immediately appealable injunction under § 1292(a)(1). *See Bogard v. Wright*, 159 F.3d 1060, 1063 (7th Cir. 1998) ("The appointment of a special master . . . although it is an order to do . . . is deemed a procedural order, and procedural orders, though they often have the form of an injunction, are not classified as injunctions for purposes of section 1292(a)(1)." (citing *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377–78 (1981); *United States v. Nixon,* 418 U.S. 683, 690–91 (1974))). Other courts have routinely held appointment of a special master is not

appealable under § 1292(a)(1). *See, e.g.*, *Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 838 (7th Cir. 2021) ("Nor does § 1292(a)(1) provide us jurisdiction, as '[t]he appointment of a special master' is a procedural order, and 'procedural orders, though they often have the form of an injunction, are not classified as injunctions for purposes of section 1292(a)(1).'" (quoting *Bogard*, 159 F.3d at 1063)); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen,* 828 F.2d 536, 540 (9th Cir. 1987) (stating that appointment of special master was not an appealable order under 28 U.S.C. § 1292(a)(1)); *Thompson v. Enomoto,* 815 F.2d 1323, 1326–27 (9th Cir. 1987) (same).

The Government fails to mention the Supreme Court's decision in *Deckert v. Independence Shares Corp.* 311 U.S. 282 (1940). There, the plaintiffs filed a securities action against Independence Shares Corporation and others, alleging fraud and misrepresentation in the sale of contract certificates from an insolvent corporation. *Id*. at 285. The plaintiffs sought the appointment of a receiver to take possession and liquidate the insolvent corporation's assets and sought an injunction restraining transfer and disposition of the assets. *Id*. The district court denied the appointment of a receiver, instead approving of the addition of

36

two plaintiffs, issuing an injunction prohibiting transfer or disposition of assets, and appointing a special master to take testimony and file a report regarding the alleged insolvency of the corporation. *Id*. at 286. The corporation appealed. *Id*. Without considering whether the appeals were premature, the Court of Appeals reversed the district court's orders on the ground that the Securities Act did not authorize the imposition of equitable relief. *Id*.

Citing to what is now codified in 28 U.S.C. § 1292(a)(1), the Supreme Court held that the appeal from the order granting the temporary injunction was not premature, but "[t]he orders allowing the addition of two plaintiffs *and referring the issue of insolvency to a master were interlocutory and not appealable*." *Id*. at 290–91 (emphasis added). The Court noted the appropriate time for an appellate review of the special master order was after "an appeal from a final decree." *Id*. at 291. Like *Deckert*, the District Court issued the Injunction Order and ten days thereafter the Special Master Order.

Further, this Court recently applied the *Alabama* factors in holding a district court's statement of prospective intent to grant requested relief within an order was not an injunction warranting interlocutory appeal.

37

*See Curling v. Raffensperger*, 50 F.4th 1114 (11th Cir. 2022).  In *Curling*, the plaintiffs challenged two Georgia voting regulations and requested a preliminary injunction.  *Id*. at 1117.  Regarding the first regulation, the district court entered an injunction, ordering the Georgia Secretary of State to provide back-up paper voter lists to counties, which was subsequently stayed pending appeal by this Court.  *Id*. at 1120. Thereafter, as to the second issue regarding ballot scanner settings, by separate order, the district court stated the plaintiffs were entitled to a preliminary injunction and asked the plaintiffs to propose the scope of injunctive relief targeting the deficiencies it identified regarding the ballot scanners.  *Id*.  Although the plaintiffs submitted their proposal promptly, the district court never ruled on it.  *Id*.  Nevertheless, the state defendants appealed both orders.  *Id*.

This Court held that the second order relating to ballot scanners was not appealable because it was not an injunction, despite the district court's statement that "injunctive relief" was "warranted."  *Id*. at 1125– 1126.  "The court's [ballot scanning] order set just one thing: a timeline for putting that future relief into effect . . . upon receipt of Plaintiffs' proposed remedy . . . and Defendants' response."  *Id*.  at 1126.

Like *Curling*, as it relates to the appointment of a special master, the Injunction Order "set just one thing: a timeline for putting that future [special master] relief into effect . . . upon receipt of Plaintiff['s] proposed [candidates for special master] . . . and Defendant['s] response." *Id.*; App. at 139–140. Regarding the appointment of a special master, the Injunction Order carries no "clearly defined and understandable directive" regarding the Special Master's duties and responsibilities. *Curling*, 50 F. 4th at 1126. Indeed, the District Court invited the parties to propose candidates for the appointment, as well as proposed orders outlining the special master's duties and limitations as required by Federal Rule of Civil Procedure 53. App. at 140. Because the Injunction Order did not require the Government to act or refrain from acting as it relates to a then-unidentified special master, it is not an injunction for purposes of § 1291(a)(1).

To the extent the statement of prospective intent to appoint a special master impliedly required the Government to act, neither the Injunction Order (as it relates to the statement of prospective intent to appoint a special master) nor the Special Master Order have a "direct or irreparable impact on the merits of the controversy." *See id.* The Government

39

conceded as much.  *See* Gov't Resp. to Application.  *Trump v. United States*, No.  22A283, 2022 WL 8171963 at 24 (Oct. 12, 2022) (special master's review of classified documents is an "issue separate from the merits of the underlying dispute[.]").   Indeed, the Injunction Order (as it relates to the statement of prospective intent to appoint a special master) and Special Master Order relate only to the *conduct* of the litigation.  *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988) (order "that relates only to the conduct or progress of litigation . . . ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1).").  Stated differently, an orderly, transparent review by a special master is not the ultimate relief sought—it is an intermediary procedural step.  Indeed, the Special Master Order was issued to facilitate (not adjudicate) resolution of the merits.[13]

    To hold otherwise would render *every* discovery order directing

---

[13] Although President Trump requested appointment of a special master, the Government cannot seriously contend the Special Master Order adjudicated the "merits of the controversy."  *See Alabama*, 424 F.3d at 1129. The District Court could itself review the seized materials that decision would simply not have been appealable on an interlocutory basis.  Appointment of a special master to perform this task is therefore a procedural order and does not itself adjudicate any the merits.

records be produced to a special master an order directing a party "to act," conferring appellate jurisdiction. This is simply not the law. *Mohawk Indus.*, 558 U.S. at 108 (citing *Risjord*, 449 U.S. at 374); *see also* 15B Wright & Miller, *supra* § 3914.23 ("[T]he rule remains settled that most discovery rulings are not final."). A decision to the contrary would create an unmanageable standard for what qualifies as an "injunction" for appealability purposes, expanding interlocutory review under § 1292(a)(1) into a morass of limitless appeals.

Accordingly, this Court lacks jurisdiction to review the Injunction Order (as it relates to the statement of prospective intent to appoint a special master) and Special Master Order under § 1292(a)(1).

> **ii.      A Single Interlocutory-Appealable Issue Included Within an Order Containing Rulings Regarding Non-Interlocutory-Appealable Issues Does Not Render All Rulings in the Order Immediately Appealable.**

Federal courts should be hesitant to unnecessarily expand appellate jurisdiction. *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 113–14. The Government has argued in this litigation that all rulings in a single *order* can be bootstrapped into an appeal so long as at least one issue ruled upon is immediately appealable under 28 U.S.C. § 1292(a)(1). *See* Appellant

41

Br. at 49–50 ("It is thus the entire *order* that is appealable . . . ." (emphasis in original)). This argument misses the mark. *See Abney v. United States*, 431 U.S. 651, 655 (1977). In *Abney*, this Court reviewed the jurisdiction of the Court of Appeals in the context of a motion to dismiss an indictment. *Id.* In the motion to dismiss, the petitioners made two arguments: "(a) that retrial would expose them to double jeopardy; and (b) that the indictment, as modified by the election [of offenses], failed to charge an offense[,]" *i.e.*, that the indictment was insufficient. *Id.* "The District Court denied *the motion.*" *Id.* (emphasis added). This Court held the denial of a motion to dismiss an indictment on double jeopardy grounds is immediately appealable. *Id.* at 662. However, the Court, "[did] not hold that other *claims* contained in the motion to dismiss are immediately appealable as well." *Id.* at 663.

Applying *Abney's* reasoning to § 1292 makes sense. *See Swint*, 514 U.S. at 49–50 (*Abney* rule "bears on civil cases as well."). Otherwise, every ruling on a request for an injunction would necessarily render all other aspects of an injunction order appealable. As recognized in *Swint*, other separate decisions in an order containing at least one appealable ruling are not immediately appealable. *Id.* at 50–51 ("We need not definitively

or preemptively settle here whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related *rulings* that are not themselves independently appealable.").

To be sure, the Supreme Court has interpreted a neighboring provision, § 1292(b), to allow review of all issues in an order. *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996); *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1540 (2021). However, § 1292(b)'s text—specifically requiring a controlling question of law as to which there is substantial ground for difference of opinion— recognizes a wholly different purpose than § 1292(a), rendering *Yamaha* and *BP P.L.C.* inapplicable to § 1292(a)(1).

Both § 1292(a)(1) and § 1292(b) are limited exceptions to the final judgment rule. But § 1292(b) is permissive, providing a court of appeals discretion to allow an appeal. This discretion is triggered *only if* the district court certifies the issue. *Id.* Both the district court and the court of appeals must find the *order* contains an unsettled controlling question of law that "may materially advance the ultimate termination of the litigation." *Id.* Expanding jurisdiction to allow the court of appeals to review the entirety of a certified order thus comports with judicial

43

economy. § 1292(b); *see McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) ("[T]he appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation . . . ." (cleaned up)).

Section 1292(a)(1), on the other hand, provides mandatory jurisdiction: "the courts of appeals *shall have jurisdiction* of appeals from . . . interlocutory orders . . . granting . . . injunctions . . . ." *See* § 1292(a)(1). Here, the courts of appeals have no discretion to refuse review of interlocutory orders granting injunctions. The purpose of § 1292(a)(1) is not judicial economy, it is to potentially shield a litigant, because an injunction impacts a party's rights without a full trial on the merits. *See Baltimore Contractors v. Bodinger*, 348 U.S. 176, 181 (1955) ("No discussion of the underlying reasons for modifying the rule of finality appears in the legislative history, authough [sic] the changes seem plainly to spring from a developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable consequence."), *overruled on other grounds by Gulfstream Aerospace*, 485 U.S. at 287. Thus, allowing review of rulings besides those pertaining to

44

injunctive relief does not further the need to protect from "serious, perhaps irreparable consequence[s]." *Id.*; *see also Tidewater Oil Co. v. United States*, 409 U.S. 151, 167–68 (1972) ("Greater importance obviously was attached to those types of interlocutory orders specified in subsection (a) than to those covered by (b).").

Permitting appeals under § 1292(a)(1) of all rulings in a single order would foster gamesmanship by litigants and create unnecessary labor for district courts. For example, litigants could file a single motion seeking to modify an injunction and rule on discovery. If the district court ruled on the single motion with a single order, the non-appealable discovery ruling would conceivably transform into an appealable issue by the sheer virtue it was ruled upon in the same order as an appealable issue. In other contexts, the Supreme Court has narrowly interpreted provisions affording appellate jurisdiction to avoid such gamesmanship. *See Abney*, 431 U.S. at 663 (restricting appellate jurisdiction); *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1714–15 (2017) (narrowing appellate jurisdiction to prevent "inventive litigation ploys" to obtain interlocutory review of order striking class allegations). To avoid unnecessarily expanding the scope of appellate review, district courts would need to ensure any order

45

concerning any ruling possibly constituting injunctive relief be entirely separate from other rulings regardless of whether those issues were presented simultaneously. Otherwise, the district court, without input from the court of appeals, would expand the jurisdiction of the court of appeals. Surely, Congress did not intend as much. Accordingly, this Court lacks jurisdiction to adjudicate the Special Master Order under 28 U.S.C. §§ 1291–1292.

### 3.    Pendent Appellate Jurisdiction is Inappropriate.

Contravening this Court's precedent, the motions panel noted it had jurisdiction to review the appointment of the Special Master because such ruling was "inextricably intertwined" with the Injunction.

"Pendent appellate jurisdiction is limited and rarely used." *Paez v. Mulvey*, 915 F.3d 1276, 1291 (11th Cir. 2019).[14] "It is not available

---

[14] The Supreme Court has never endorsed the use of pendent appellate jurisdiction in conjunction with an appealable order before the court under § 1292(a)(1) and has cautioned against further expansion of appellate jurisdiction via judicial decisions. *See Swint*, 514 U.S. at 48 ("Congress' designation of the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable warrants the Judiciary's full respect."); *see also Mohawk*, 558 U.S. at 114 (same); *id.* (Thomas, J., concurring) (same). The mere fact the documents in dispute bear classification markings

46

unless the non[-]appealable issue is 'inextricably intertwined' with or 'necessary to ensure meaningful review' of the appealable issue." *Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016) (quoting *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1335 (11th Cir. 1999)). Pendent appellate jurisdiction "does not exist where 'resolution of the non[-]appealable issue [is] not necessary to resolve the appealable one.'" *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1352 (11th Cir. 2021) (quoting *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009). "Issues are not 'inextricably intertwined' with the question on appeal when 'the appealable issue can be resolved without reaching the merits of the nonappealable issues.'" *Paez*, 915 F.3d at 1291 (quoting *In re MDL-1824 Tri-State Water Rights Litig.*, 644 F.3d 1160, 1179 (11th Cir. 2011)).

Here, the Injunction is not "inextricably intertwined" with the appointment of the Special Master. Resolution of the Injunction "can be

---

should not change the outcome because the statutory intent is clear. "[O]nce Congress addresses a subject . . . the justification for lawmaking by the federal courts is greatly diminished. Thereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 n.34 (1981).

resolved without reaching the merits of the Special Master issue. *See id.* The Injunction focused on the Government's ability to use documents for criminal investigative purposes. The focus of that inquiry is whether President Trump has a possessory interest in the documents—his likelihood of success—and whether irreparable harm would occur. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (explaining factors for a preliminary injunction). Resolution of whether the Special Master Order was legally warranted turns on a different legal question: whether the District Court abused its discretion in appointing a special master. *See Gary W. v. Louisiana*, 601 F.2d 240, 244 (5th Cir. 1979). In determining whether a District Court abused its discretion in appointing a special master, courts look at whether the special master's authority exceeds that authorized by Rule 53, if special masters have been appointed in similar circumstances, *id.*, or if the appointment displaces the court or impairs a party's right to trial, *see La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957). None of these factors require the reviewing court to assess the merits of the case. These are distinct issues—and each can certainly be decided independent from the other. *See Paez*, 915 F.3d at 1291.

48

### 4. The Special Master Order is Not Appealable as a Collateral Order.

The collateral order doctrine, as formulated in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), states that "'an order is appealable if it (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment.'" *Mohawk Indus.*, 558 U.S. at 105 (quoting *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1052 (11th Cir. 2008) (*per curiam*)).

First, *Mohawk*, was a collateral appeal of an order compelling disclosure of attorney-client communications based upon waiver—not an appeal of a special master appointment. *See* 558 U.S. at 104. The Eleventh Circuit dismissed the appeal for lack of jurisdiction under 28 U.S.C. § 1291. Affirming the dismissal, the Supreme Court—after explaining in detail effective appellate review could be had by other means—specifically addressed the potential floodgate consequences of an adverse ruling when it noted that were it to "approve collateral order appeals in the attorney-client privilege context, many more litigants would choose that route." *Id.* at 113. The Supreme Court continued that

49

these litigants would, in a sense, attempt to stretch the coil, and "likely seek to extend such a ruling to disclosure orders implicating many other categories of sensitive information, raising an array of line-drawing difficulties." *Id.* In fact, the Supreme Court explicitly expressed no opinion as to an argument by the Government participating as *amicus curiae* proposing that "collateral order appeals should be available for rulings involving certain government privileges 'in light of their structural constitutional grounding under the separation of powers, relatively rare invocation, and unique importance to government functions.'" *Id.* at 113 n.4. The Supreme Court's refusal to entertain the extension of the collateral order doctrine suggested by the Government in *Mohawk* cannot be interpreted as support for the Government's claim as to the appealability of the Special Master's appointment.

Furthermore, a straight application of the *Cohen* test shows the Special Master Order is not an appealable collateral order. The September 5 Injunction Order—the order the Government appealed —did not at all determine the special master issue. The Order requires future action by both the District Court and the parties. App. at 140 (directing parties to submit a joint filing recommending "special master

candidates" and to propose "the special master's duties and limitations"). Stated differently, the Injunction Order's reference to the special master process is nothing more than an injunction with an expiration date; and federal courts routinely issue injunctions with time limitations.  Second, there is no particularly important issue that needs to be addressed regarding the appointment of the Special Master. Special masters are appropriate in cases like this, where a review of thousands of documents is necessary.[15]  Third, the District Court's Special Master Order will be reviewable on appeal.  Thus, the balance of factors weighs against employing the collateral order doctrine. Accordingly, the Special Master Order is not an appealable collateral order.

---

[15] As noted, the District Court could itself have undertaken review of the seized materials, and that decision would certainly not have given rise to an interlocutory appeal.  *See supra*, n.13.  Appointing a special master to conduct this exercise does not thereby alter the appealability of any order.

C.    **THE APPOINTMENT OF A SPECIAL MASTER WAS NOT AN ABUSE OF DISCRETION.**[16]

The District Court provided more than adequate reasoning as to why a special master was needed to further review the documents in question.    *See* App. at 130.    The very purpose of a special master is to serve as a *neutral third party*, with authorization from the District Court, reviewing documents to facilitate resolution of the parties' disagreements.  In opposing any neutral review of the seized materials, the Government seeks to halt a reasonable first step toward restoring order, enhancing the public perception of fairness, and protecting the constitutional and statutory rights of a former duly elected President.

Rule 41(g) "offers the remedy of returning . . . improperly seized documents protected by privilege *before* the government has reviewed them." *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1247 (11th Cir. 2021) (emphasis in original). Of course, doing so necessitates a review of the seized documents to determine which are subject to return.  The facts presented to the District Court—namely, a first-of-its-kind search of a

---

[16] Should the Court determine it lacks jurisdiction to review the Special Master Order, it need not consider these alternative arguments.

former President's home—weigh heavily in favor of the District Court's exercise of equitable jurisdiction. The mere appearance of fairness, at a time when the Nation remains bitterly divided, should be given utmost deference, something that will not occur if privilege determinations are made by an interested party. *Cf. In re Search Warrant dated Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2021 WL 5845146, at *1 (S.D.N.Y. Dec. 8, 2021) ("In light of the potential First Amendment concerns that may be implicated by the review of the materials seized from Petitioners, the Court finds that the appointment of a special master will 'help[ ] to protect the public's confidence in the administration of justice.'" (quoting *In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150, at *4 (S.D.N.Y. May 28, 2021))). Notably, in *In re Search Warrant dated Nov. 5, 2021*, the court appointed a special master because "it is important that the procedure adopted . . . not only be fair but also appear to be fair." 2021 WL 5845146, at *2. The public's confidence in the executive and judicial branches will regrettably continue to erode if this Court deprives President Trump of the Special Master review the District Court ordered. *Cf. In re Search Warrant dated Nov. 5, 2021*, 2021 WL 5845146, at *2 (current or former employees of

media company had devices seized from their residence and retired federal judge was appointed as special master to review seized items and rule on constitutional protections, such as First Amendment, and privilege)

The Government's internal review team is insufficient. Although this Court has approved the use of government filter teams, making privilege determinations is a function of the judiciary, not the executive. *See In re Search Warrant Issued June 13, 2019 ("Baltimore Law Firm")*, 942 F.3d 159,176 (4th Cir. 2019) ("[W]hen a dispute arises as to . . . the attorney-client privilege or work-product doctrine, the resolution of that dispute is a judicial function."). The use of Government filter teams is questioned with fair regularity. *See, e.g.*, *United States v. Neill*, 952 F. Supp. 834, 841 n.13 (D.D.C. 1997) (("[T]here is no doubt that, at the very least, the 'taint team' procedures create an appearance of unfairness."). The Government's use of its own employees to conduct privilege reviews, even if done honestly, creates a perception of unfairness. *See, e.g., In re Search Warrant for L. Offs. Executed on Mar. 19, 1992 ("White Plains Law Firm")*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994). As stated in *White Plains Law Firm*:

> [R]eliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable, and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice. It is a great leap of faith to expect that members of the general public would believe any such Chinese wall would be impenetrable; this notwithstanding our own trust in the honor of an AUSA.

*Id*. Ultimately, "substantial questions of fundamental fairness are raised where, in connection with a criminal prosecution, the government invades [the attorney-client] privilege." *Neill*, 952 F. Supp. at 839.

The unprecedented nature of this investigation—an invasion into President Trump's home by the administration of his political rival—demands not only fairness, but the perception of fairness. *See Baltimore Law Firm*, 942 F.3d at 182–83; *Neill*, 952 F. Supp. at 839; *White Plains Law Firm*, 153 F.R.D. at 59. The perception of fairness is not the only reason to question the Government in protecting President Trump's rights. The successful use of internal Government filter teams has a questionable past. As the Sixth Circuit stated, Government filter or "taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors." *In re Grand Jury Subpoenas*,

454 F.3d 511, 523 (6th Cir. 2006). This is so, because the teams employed to screen for privilege also possess a "conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serious risk to holders of privilege, and this supposition is substantiated by past experience." *Id.* Errors in government filter review processes—inadvertent or otherwise—occur regularly, including in the case *sub judice*, which the District Court used to justify the relief it crafted. *See* App. at 131 (noting investigative team had already been exposed to potentially privileged material on at least two occasions).

Concerning the seizure of items from President Trump's residence, the Government had established a Privilege Review Team, but its initial screening "failed to identify potentially privileged material" resulting in investigators being "exposed" to material that was potentially privileged. *Id.* For the foregoing reasons, the Court should find the District Court did not abuse its discretion in appointing the Special Master.

**D.    THE INJUNCTION WAS NOT AN ABUSE OF DISCRETION.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Appellate review of a preliminary-injunction decision . . . is exceedingly narrow because of the expedited nature of the proceedings in the district court." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).  The review is "deferential" to respect the district court's "difficult judgments about the viability of a plaintiff's claims based on a limited record and 'without the luxury of abundant time for reflection.'"  *Id.* (quoting *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171–72 (11th Cir. 2002)).  As the District Court found, President Trump satisfies that criteria.

### 1.    President Trump is Likely to Succeed on the Merits.

President Trump is likely to succeed on the merits because he has an interest in *at least* a portion of the seized documents, *see United States v. Melquiades*, 394 F. App'x 578, 584 (11th Cir. 2010) (claimant need only

allege "a colorable ownership, possessory or security interest *in at least a portion* of the" seized property (emphasis added)); has a legitimate claim of privilege over some of the seized documents, App. at 57–59 (describing Government's possession of documents it believes are subject to the attorney-client privilege); and is entitled to the return of some of the seized documents. *See id.* The Government argues it needs certain documents to conduct its investigation, which is not in dispute. However, given the unprecedented circumstances presented, a neutral assessment is required to determine which documents the Government is entitled to review and use in its investigation.

*First*, President Trump satisfies the Rule 41(g) standing requirements. As noted, the Government seized not only 100 purportedly classified documents, but also many strictly personal items (passport, medical records, tax documents, *etc*.) and approximately 22,000 pages of (presumptively personal) records. Since many of the documents were designated as personal by President Trump during his presidency, they remain personal until his designation process is successfully challenged. The Government has here deployed the unlawful tactic of ignoring the PRA, failing to accord President Trump the traditional deference under

the PRA, seizing personal records, and then seeking to force President Trump to establish his possessory interest. As the District Court recognized, "to satisfy the standing requirements" under Rule 41(g), the claimant need only allege "a colorable ownership, possessory or security interest *in at least a portion* of the" seized property. *Melquiades*, 394 F. App'x at 584 (emphasis added) (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001)). President Trump has satisfied this initial threshold. If the Government disputes President Trump's interest in the seized property, it "may rebut the [] allegations with evidence . . . [and] the court [must] . . . decide the [Rule 41(g)] motion." *Id.* at 580.

Noting the "disputes as to the proper designation of the seized materials, the legal implications flowing from those designations, and the intersecting bodies of law permeating those designations," the District Court did not err—clearly or otherwise—by "declin[ing] to conduct a subset-by-subset, piecemeal analysis of the seized property, based entirely on the Government's representations about what is contained in a select portion of the property." App. at 175–176. Moreover, as

59

explained in greater detail above, President Trump also has an interest in Presidential records created during his presidency.

*Second*, President Trump has a claim of privilege over at least some of the seized documents.  App. at 175–176.  Although the Government attempts to parse out subsets of documents over which it asserts President Trump could never claim privilege, this argument is without merit.  The Government again presupposes the documents bearing classification markings are, in fact, classified.   The President has broad authority governing classification of, and access to, classified documents. *See Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988). Congress provided certain parameters for controlling classified information but primarily delegated to the President how to regulate classified information.  50 U.S.C. § 3161.

The Executive Order which controlled during President Trump's term designates the President as an original classification authority, *see* Exec. Order 13526 § 1.3(a)(1) (Dec. 29, 2009), and grants authority to declassify information to either the official who originally classified the information or that individual's supervisors—necessarily including the President.  *Id.* § 3.1(b)(1), (3).  Yet, the Government contends President

60

Trump, who had unfettered authority to declassify documents, willfully retained classified information in violation of the law. *See* 18 U.S.C. § 793(e). Moreover, the Government seeks to preclude any opportunity for consideration of this issue.

*Third*, after a deliberative, neutral review of the seized materials, President Trump will be entitled to return of some of the seized items. *See Richey*, 515 F.2d at n.5 ("It follows that one entitled to the return of original documents is entitled to their return prior to and not after examination or reproduction by government agents."). This would apply not only to privileged materials but also to the seized materials (*i.e.*, personal records) unrelated to the investigation.

## 2. President Trump Will Suffer Irreparable Injury.

The documents should first be reviewed by a neutral third party. As found by the District Court, President Trump "faces an unquantifiable potential harm by way of improper disclosure of sensitive information to the public." App. at 125–126. This is evidenced by various media reports regarding the contents of documents bearing classification markings

seized by the Government.[17]   As the District Court noted, irreparable injury could most certainly occur if the Government were permitted to improperly use the documents seized:

> As a function of [President Trump's] former position as President of the United States, the stigma associated with the subject seizure is in a league of its own. A future indictment, based to any degree on property that ought to be returned, would result in reputational harm of a decidedly different order of magnitude.

App. at 126.

The most apparent irreparable injury concerns the privileged documents. *See, e.g.*, *Baltimore Law Firm*, 942 F.3d at 175 ("[A]n adverse party's review of privileged materials seriously injures the privilege holder."); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) ("We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm."). Whether attorney-client or executive privilege, the danger of irreparable harm remains.

---

[17] *See* Barret and Leonnig, *supra* n.11.

### 3. The Balance of Equities Weighs in President Trump's Favor.

The balance of equities weighs in President Trump's favor because the temporary preliminary injunction will not substantially injure other interested parties. The Injunction is not sought to stop the Department of Justice's investigation. Rather, it implements a short pause until a neutral special master—and the District Court, if needed —reviews the seized materials to ensure the prosecution team does not receive President Trump's privileged records or unlawfully retain his personal records. Maintaining the status quo, where the Government cannot use certain records in its investigation, provides little, if any, harm. To be sure, it is within the executive branch's purview to expeditiously investigate and prosecute criminal activity, but that obligation cannot outweigh President Trump's right to a fair process where his privileged documents and communications remain privileged. *See Baltimore Law Firm*, 942 F.3d at 181–82 ("[D]elay in the government's investigations here does not outweigh the harm to the Law Firm and its clients caused by the Filter Team's review."); *cf. Neill*, 952 F. Supp. at 839 (explaining how the right to fair trial is lost if the

Government accesses privileged information to which it is not entitled). The Government has not proffered any evidence its criminal investigation has been hampered during the Special Master review process. There is thus no compelling reason to permit the continuation of an investigation of President Trump by the administration of his political rival without the District Court's limited judicial oversight.

### 4. The Public Benefits from the Injunction.

As the District Court observed, a criminal investigation of this import—an investigation of President Trump by the administration of his political rival—requires enhanced vigilance to ensure fairness, transparency, and maintenance of the public trust. *See* App. at 138 ("[T]he investigation and treatment of a former president is of unique interest to the general public, and the *country* is served best by an orderly process that promotes the interest and perception of fairness." (emphasis added)).

Given the significance of this investigation, it must be conducted in a manner that gives the public confidence in its outcome. The Court should simply not allow the Government to cloak these proceedings from public view based on its unverified assertions. The Special Master—and

the District Court—should not be inhibited from exercising the jurisdiction afforded to them.  The process set out by the District Court benefits the Government, President Trump, and the American people.  Vacating the Injunction Order only erodes public trust and the perception of fairness.

## CONCLUSION

The District Court properly exercised its equitable jurisdiction and did not abuse its discretion in entering the Injunction Order.  Moreover, the Special Master Order is not appealable and, in any event, the appointment of a special master was not an abuse of discretion.  Based on the foregoing, the Court should affirm.

James M. Trusty
IFRAH LAW PLLC
1717 Pennsylvania Avenue N.W.
Suite 650
Washington, DC 20006

Christopher M. Kise
CONTINENTAL PLLC
101 North Monroe Street
Suite 750
Tallahassee, FL 32301
(850) 332-0702

*Counsel for President Donald J. Trump*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 12,893 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Christopher M. Kise*
Christopher M. Kise

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of November, 2022, I caused the foregoing to be electronically filed using the Court's CM/ECF System, thereby serving all registered users in this case by operation of that electronic filing system.

/s/ *Christopher M. Kise*
Christopher M. Kise
