*Donald J. Trump v. United States of America*, No. 22-13005

No. 22-13005

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

DONALD J. TRUMP,

Plaintiff-Appellee,

v.

UNITED STATES OF AMERICA,

Defendant-Appellant.

---

On Appeal from the United States District Court
for the Southern District of Florida

---

### REPLY BRIEF OF THE UNITED STATES

---

JUAN ANTONIO GONZALEZ
  *United States Attorney*
  *Southern District of Florida*
  *99 NE 4th Street, 8th Floor*
  *Miami, FL 33132*
  *305-961-9001*

MATTHEW G. OLSEN
  *Assistant Attorney General*

JAY I. BRATT
  *Chief, Counterintelligence and Export*
*Control Section*
JULIE EDELSTEIN
SOPHIA BRILL
JEFFREY M. SMITH
  *Attorneys*
  *National Security Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *202-233-0986*

*Donald J. Trump v. United States of America*, No. 22-13005

# <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 28-1(b), the undersigned hereby certifies that the following have an interest in the outcome of this case:

American Broadcasting Companies, Inc. (DIS)

Associated Press

Ayer, Donald B.

Bates, Jeremy C.

Bellinger, John

Bloomberg, LP

Bratt, Jay I.

Brill, Sophia

Brower, Greg A.

Cable News Network, Inc. (WBD)

Cannon, Hon. Aileen M.

Caramanica, Mark Richard

CBS Broadcasting, Inc (CBS)

Cole, William Francis

Corcoran, M. Evan

Cornish, Sr., O'Rane M.

*Donald J. Trump v. United States of America*, No. 22-13005

Cunningham, Clark D.

Dearie, Hon. Raymond J.

Dow Jones & Company, Inc. (DJI)

Edelstein, Julie

Eisen, Norman Larry

E.W. Scripps Company (SSP)

Farmer, John

Finzi, Roberto

Fischman, Harris

Former Federal and State Government Officials

Fugate, Rachel Elise

Gonzalez, Juan Antonio

Gray Media Group, Inc. (GTN)

Gupta, Angela D.

Halligan, Lindsey

Inman, Joseph M.

Joshi, Sopan

Karp, Brad S.

Kessler, David K.

Keisler, Peter Douglas

Kise, Christopher M.

*Donald J. Trump v. United States of America*, No. 22-13005

Knopf, Andrew Franklin

Lacosta, Anthony W.

LoCicero, Carol Jean

McElroy, Dana Jane

Minchin, Eugene Branch

Mitnick, John M.

NBC Universal Media, LLC (CMCSA)

Olsen, Matthew G.

Patel, Raj K.

Rakita, Philip

Reeder, Jr., L. Martin

Reinhart, Hon. Bruce E.

Rosenberg, Robert

Raul, Alan Charles

Seidlin-Bernstein, Elizabeth

Shapiro, Jay B.

Shullman, Deanna Kendall

Smith, Jeffrey M.

Suarez, Jesus

The New York Times Company (NYT)

The Palm Beach Post

*Donald J. Trump v. United States of America*, No. 22-13005

Times Publishing Company

Tobin, Charles David

Troye, Olivia

Trump, Donald J.

Trusty, James M.

United States of America

Weld, William F.

Whitman, Christine Todd

Wertheimer, Fred

WP Company, LLC

Dated:    November 17, 2022                    /s/ Sophia Brill
                                               Sophia Brill

*Donald J. Trump v. United States of America*, No. 22-13005

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT..........................................................C-1

TABLE OF AUTHORITIES............................................................. iii

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................... 3

I.   PLAINTIFF'S ARGUMENTS REGARDING THE PRESIDENTIAL
RECORDS ACT ARE FORFEITED, MERITLESS, AND IRRELEVANT .... 3

II.   THE DISTRICT COURT ERRED IN EXERCISING EQUITABLE
JURISDICTION UNDER *RICHEY* AND HAS NO BASIS TO CONTINUE
EXERCISING JURISDICTION ....................................................... 11

   A.   The District Court Abused Its Discretion Because Plaintiff Failed to
   Establish Callous Disregard of His Constitutional Rights ................................. 11

   B.   The Remaining *Richey* Factors Weigh Further Against the Exercise of
   Jurisdiction and Foreclose the Continued Exercise of Jurisdiction ................ 13

III.   THE DISTRICT COURT ERRED BY ENJOINING THE
GOVERNMENT FROM REVIEWING OR USING THE SEIZED
RECORDS................................................................................. 14

   A.   Plaintiff Has Abandoned His Executive Privilege Arguments ................. 15

   B.   Plaintiff's Single Remaining Attorney-Client Privilege Dispute Cannot
   Justify an Injunction ...................................................................... 16

   C.   Plaintiff Offers No Other Arguments Justifying an Injunction................. 17

   D.   The Government and the Public Suffer Irreparable Injury from the
   Injunction, and the Balance of Equities Requires Reversal ............................. 19

IV.   THE COURT SHOULD TERMINATE THE SPECIAL-MASTER
REVIEW ORDERED BY THE DISTRICT COURT .......................................... 20

   A.   This Court Has Jurisdiction to Review the District Court's Appointment
   of the Special Master ...................................................................... 20

      1.   The Court has pendent appellate jurisdiction................................... 20

      2.   The Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over the entire
      September 5 order........................................................................ 22

*Donald J. Trump v. United States of America*, No. 22-13005

3.   The directive to divulge classified documents is reviewable as a collateral order ........................................................................................................................ 24

**B.  No Remaining Disputes Warrant the Special-Master Review** .................... 25

**CONCLUSION** ..................................................................................................... 26

**CERTIFICATE OF COMPLIANCE** ........................................................................ 27

**CERTIFICATE OF SERVICE** ................................................................................ 28

*Donald J. Trump v. United States of America*, No. 22-13005

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>:**                                                                                          **<u>Page</u>:**

*Abney v. United States*,

  431 U.S. 651 (1977) ................................................................................ 24

*Access Now, Inc. v. Southwest Airlines Co.*,

  385 F.3d 1324 (11th Cir. 2004) ................................................................ 3

*Al Odah v. United States*,

  559 F.3d 539 (D.C. Cir. 2009) ................................................................ 25

*American Society for Testing & Materials v. Public.Research.Org, Inc.*,

  896 F.3d 437 (D.C. Cir. 2018) ............................................................ 22, 23

*Armstrong v. Bush*,

  924 F.2d 282 (D.C. Cir. 1991) .................................................... 3, *passim*

*Armstrong v. Exec. Office of the President*,

  1 F.3d 1274 (D.C. Cir. 1993) ................................................................ 7, 8

*Ashcroft v. Iqbal*,

  556 U.S. 662 (2009) ................................................................................ 21

*Bernard v. Airline Pilots Ass'n*,

  873 F.2d 213 (9th Cir. 1989) ................................................................ 23

*BP P.L.C. v. Mayor and City Council of Baltimore*,

  141 S. Ct. 1532 (2021) ...................................................................... 23, 24

*Donald J. Trump v. United States of America*, No. 22-13005

# <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>                                                                                            <u>Page:</u>

*Carcieri v. Salazar,*

   555 U.S. 379 (2009) ..................................................................... 10

*Clinton v. Jones,*

   520 U.S. 681 (1997) ..................................................................... 21

*Cohen v. Beneficial Industrial Loan Corp.,*

   337 U.S. 541 (1949) ..................................................................... 24

*Hunsucker v. Phinney,*

   497 F.2d 29 (5th Cir. 1974) ........................................................ 11

*In re $67,470.00,*

   901 F.2d 1540 (11th Cir. 1990) .................................................. 12

*In re Dukes,*

   909 F.3d 1306 (11th Cir. 2018) ............................................... 3, 4

*In re Seabulk Offshore, Ltd.,*

   158 F.3d 897 (5th Cir. 1998) ...................................................... 23

*In re Search of Office of Tylman,*

   245 F.3d 978 (7th Cir. 2001) ...................................................... 14

*Judicial Watch v. National Archives and Records Administration,*

   845 F. Supp. 2d 288 (D.D.C. 2012) ...................................... 4, 7, 8

*Donald J. Trump v. United States of America*, No. 22-13005

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page:**

*Microsoft Corp. v. Baker*,

    137 S. Ct. 1702 (2017)........................................................................ 24

*Mohawk Industries, Inc. v. Carpenter*,

    558 U.S. 100 (2009)........................................................................... 25

*MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*,

    965 F.3d 1210 (11th Cir. 2020)........................................................ 15

*Nixon v. Administrator of General Services*,

    433 U.S. 425 (1977)........................................................................... 15

*Oklahoma v. Castro-Huerta*,

    142 S. Ct. 2486 (2022)...................................................................... 23

*Reaves v. Sec'y, Fla. Dep't of Corr.*,

    872 F.3d 1137 (11th Cir. 2017)........................................................ 15

*Richey v. Smith*,

    515 F.2d 1239 (5th Cir. 1975)..................................................... 1, *passim*

*Sapuppo v. Allstate Floridian Ins. Co.*,

    739 F.3d 678 (11th Cir. 2014).......................................................... 15

*Snepp v. United States*,

    444 U.S. 507 (1980)........................................................................... 10

*Donald J. Trump v. United States of America*, No. 22-13005

# TABLE OF AUTHORITIES

**Cases:**                                                                                               **Page:**

*Trump v. United States,*

2022 WL 4366684 (11th Cir. Sept. 21, 2022)....................................................11, *passim*

*United States v. Castro,*

883 F.2d 1018 (11th Cir. 1989) ....................................................................... 12

*United States v. Chapman,*

559 F.2d 402 (5th Cir. 1977) ......................................................................... 11

*United States v. Dean,*

80 F.3d 1535 (11th Cir. 1996) ....................................................................... 12

*United States v. Nixon,*

418 U.S. 683 (1974).................................................................................... 15

*Whole Woman's Health v. Jackson,*

142 S. Ct. 522 (2021).............................................................................21, 22

*Yamaha Motor Corp. v. Calhoun,*

516 U.S. 199 (1996)................................................................................... 23

*Donald J. Trump v. United States of America*, No. 22-13005

# <u>TABLE OF AUTHORITIES</u>

<u>**Statutes & Other Authorities:**</u>                                                        <u>**Page:**</u>

18 U.S.C. § 793 ................................................................................... 9, 12

18 U.S.C. § 1519 ................................................................................ 9, 12

18 U.S.C. § 2071 .................................................................................... 12

28 U.S.C. § 1291 .................................................................................... 24

28 U.S.C. § 1292 ............................................................................21, *passim*

28 U.S.C. § 1447 ................................................................................ 23, 24

44 U.S.C. § 2112 ...................................................................................... 8

44 U.S.C. § 2201 ................................................................................... 2, 5

44 U.S.C. § 2202 ................................................................................. 6, 13

44 U.S.C. § 2203 ............................................................................... 5, 6, 7

44 U.S.C. § 2204 .................................................................................... 10

44 U.S.C. § 2905 ................................................................................. 8, 10

44 U.S.C. § 3106 ...................................................................................... 8

Exec. Order No. 13,526, 75 Fed. Reg. 707 (Jan. 5,  2010) ............................. 13

Fed. R. Civ. P. 53 ................................................................................... 22

Fed. R. Crim. P. 41 ............................................................................. 9, 14

The Presidential Records Act, Pub. L. No. 95-591, 92 Stat. 2523 (1978) ...................... 5

*Donald J. Trump v. United States of America*, No. 22-13005

## **INTRODUCTION**

This proceeding should come to an end. After the government executed a judicially authorized search, Plaintiff initiated litigation purportedly to protect interests in asserting executive and attorney-client privilege over records the government had recovered. But Plaintiff failed to meet this Court's established test governing the exercise of equitable jurisdiction. *See Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975). Further, Plaintiff's executive and attorney-client privilege claims provided no basis for the extraordinary injunction and special-master review ordered by the district court. There is no precedent or basis for enjoining the Executive Branch from reviewing its own records obtained pursuant to a valid warrant—including records bearing classification markings, which are the very subject of the offenses being investigated. At the outset of this litigation, moreover, the government's filter team had already segregated materials potentially subject to attorney-client privilege, which it was prepared to share with Plaintiff to resolve any disputes.

The district court nonetheless enjoined the government from using or reviewing any of the recovered documents for criminal investigative purposes pending a special-master review. Well over three months after the government lawfully executed its search, it is still unable to use the vast majority of those documents. The special-master proceeding has confirmed that there is no reason for the injunction or the special-master review to continue. In this appeal, Plaintiff has largely abandoned any claim that the seized records should be withheld from the government based on executive

1

*Donald J. Trump v. United States of America*, No. 22-13005

privilege. His brief offers scarcely a word on the topic. And having now reviewed every seized record except those bearing classification markings, Plaintiff has only a single attorney-client privilege dispute with the government involving one portion of a one-page document.

Instead, Plaintiff has shifted tactics, unveiling a startling theory that all of the seized records—including government documents bearing classification markings—are his "personal" property under the Presidential Records Act (PRA), 44 U.S.C. § 2201 *et seq.* That theory is meritless, and the Court need not consider it because it was not raised below and is entirely irrelevant: Even if the seized records were Plaintiff's "personal" property, they would still be lawfully obtained evidence, nothing in the law would prohibit the government from using or reviewing them, and there would still be no basis for an extraordinary injunction and special-master proceeding.

There is no reason for the injunction and the special-master review to continue. Plaintiff has copies of every seized record except those bearing classification markings, to which he is clearly not entitled. And Plaintiff's single dispute with the government regarding attorney-client privilege can be resolved through the process originally directed by the magistrate judge. This Court should therefore reverse the district court's injunction and direct the district court to dismiss the case.

*Donald J. Trump v. United States of America*, No. 22-13005

## ARGUMENT

I. **PLAINTIFF'S ARGUMENTS REGARDING THE PRESIDENTIAL RECORDS ACT ARE FORFEITED, MERITLESS, AND IRRELEVANT**

Plaintiff devotes much of his brief to novel and erroneous assertions about the PRA. Because these claims permeate Plaintiff's arguments on multiple issues, the government addresses them at the outset.

### A. Plaintiff Forfeited These Arguments by Not Raising Them Below

"'As a general rule,' an issue raised for the first time on appeal will not be considered" by this Court. *In re Dukes*, 909 F.3d 1306, 1322 (11th Cir. 2018) (internal quotations omitted); *see, e.g.*, *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citing cases).

Plaintiff's filing initiating this suit never suggested that he had deemed the seized records to be "personal" records. Rather, Plaintiff stated that an injunction and special master were "needed to preserve the sanctity of executive communications and other privileged materials." DE.1:14. In referencing the PRA, Plaintiff merely quoted case law establishing that "'the PRA accords the President virtually complete control over his records during his term of office'" and noted that the PRA does not have a criminal enforcement mechanism. DE.1:12 (quoting *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991) (*Armstrong I*)). Plaintiff's supplemental filing simply repeated the latter point. DE.28:3; *see also* DE.58:2-3 (reply brief) (similar).

3

*Donald J. Trump v. United States of America*, No. 22-13005

None of those three filings cited *Judicial Watch v. National Archives and Records Administration*, 845 F. Supp. 2d 288 (D.D.C. 2012), upon which Plaintiff now relies (incorrectly) in claiming authority to convert Presidential records into "personal" records by removing them from the White House. And nowhere in those filings did Plaintiff suggest that he had exercised that purported authority with regard to the seized records—much less why that would warrant an injunction and special-master review. Rather, Plaintiff asserted that the case "center[s] around [Plaintiff's] possession . . . of his own *Presidential* records," DE.58:2 (emphasis added); *see also* DE.127:8 (transcript) ("What we are talking about here, in the main, are Presidential records in the hands of the 45th President of the United States."); DE.127:9 (similar). Unsurprisingly, the district court did not rely on this novel PRA theory in issuing its injunction and appointing a special master.[1] Because this argument has been "raised for the first time on appeal," *In re Dukes*, 909 F.3d at 1322, it need not be considered here.

## B. Plaintiff's PRA-Related Claims Are Meritless and Irrelevant

Even if Plaintiff's PRA-related arguments were properly before this Court, they would not affect the outcome of this appeal. The PRA does not give a President

---

[1] In subsequent briefs opposing the government's motion for a stay pending appeal, Plaintiff cited *Judicial Watch* and suggested that he *could have* designated the seized records as his "personal" records. *See* DE.84:14; Response to Mot. for Partial Stay at 14-15. But even then, Plaintiff did not claim that he *in fact* had designated the records as "personal" records, and these filings in any event were not considered by the district court in issuing the order on appeal.

*Donald J. Trump v. United States of America*, No. 22-13005

authority to effectively nullify the law simply by taking Presidential records with him when he leaves office and thereby implicitly designating them as "personal." Even if it did, that would not entitle Plaintiff to any relief, because nothing in the law prohibits the government from obtaining and reviewing "personal" records pursuant to a judicially authorized search warrant.

1. <u>The PRA does not permit Plaintiff to convert Presidential records into "personal" property</u>

In the wake of Watergate, Congress enacted the PRA "to establish the public ownership of presidential records and ensure the preservation of presidential records for public access after the termination of a President's term in office." *Armstrong I*, 924 F.2d at 290; *see also* Pub. L. No. 95-591, 92 Stat. 2523 (1978) ("An Act . . . to insure the preservation of and public access to the official records of the President"). The law defines "Presidential records" as all records created or received by the President or his staff in the course of the President's performance of "official or ceremonial duties." 44 U.S.C. § 2201(2). "Personal records" are those materials "*of a purely private or nonpublic character*" which "do *not* relate to or have an effect upon" the President's performance of those duties. *Id.* § 2201(3) (emphases added). The PRA renders the President "exclusively responsible for custody, control, and access" to his Presidential records during his term of office. *Id.* § 2203(f). Documentary materials produced or received by the President or his staff "shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately." *Id.*

*Donald J. Trump v. United States of America*, No. 22-13005

§ 2203(b). "Upon the conclusion of a President's term of office," the PRA provides that "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." *Id.* § 2203(g)(1); *see also id.* § 2202 ("[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records").

While an ordinary reader would thus infer that the President must file and maintain his official records and give them to the National Archives and Records Administration (NARA) when his presidency ends, Plaintiff adds into the statute a wholly new power: the "complete authority" to "designate . . . records . . . as 'personal'" *simply by taking them* when his term of office concludes. Br. 20; *see id.* at 18 n.6. That is, Plaintiff insists that a President can "designate" official records—including, for example, policy memoranda or even classified intelligence reports—as "personal" property, without any regard to whether that designation is consistent with the law. That authority—effectively, to render the statute a nullity—appears nowhere in the PRA's text. Rather, the PRA directs that the President "shall take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance" of his official duties "are adequately documented and that such records are preserved and maintained *as Presidential records.*" 44 U.S.C. § 2203(a) (emphasis added).

Lacking textual support, Plaintiff instead relies on language from inapposite cases. In *Armstrong I*, the D.C. Circuit held that the PRA generally does not permit *private*

*Donald J. Trump v. United States of America*, No. 22-13005

*parties* to seek judicial review "of the President's compliance with the PRA." 924 F.2d at 290. Explaining why such private enforcement suits would disrupt the balance Congress sought in enacting the PRA, the court noted that the law aimed to "minimize outside interference with the day-to-day operations of the President and his closest advisors" and thus gives the President "virtually complete control over his records during his term of office." *Id.* at 290; *accord* 44 U.S.C. § 2203(f). That observation says nothing about a President's purported ability to transform Presidential records into "personal" ones upon his departure. Indeed, the D.C. Circuit subsequently emphasized that *Armstrong I* "does not stand for the unequivocal proposition that all decisions made pursuant to the PRA are immune from judicial review"—even where private litigants are concerned. *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1293 (D.C. Cir. 1993) (*Armstrong II*); *see also id.* at 1290 (the PRA does not "bestow on the President the power to assert sweeping authority" over which materials he designates as Presidential records).

Plaintiff's reliance on *Judicial Watch* is similarly misplaced. In that case, a district court held that a third party cannot bring a claim to *compel* NARA to revisit or overrule a categorization of records that a former President made during his term of office, because NARA's tools to enforce the PRA "are committed to the agency's sole discretion." 845 F. Supp. 2d at 302. Notably, NARA itself agreed that the records at issue—audiotapes created by former President Clinton with his biographer during his administration—were personal records. *Id.* at 293. Additionally, although the court

7

*Donald J. Trump v. United States of America*, No. 22-13005

opined that the responsibility to classify records as "personal" or "Presidential" "is left solely to the President" while in office, *id.* at 301, the court nowhere suggested that the PRA bestows affirmative power to ignore the law by designating what are obviously Presidential records as "personal" records.

Indeed, *Judicial Watch* emphasized the "enforcement mechanism" available to NARA to request that the Attorney General "institute an action for the recovery of missing records." *Id.* at 302; *see* 44 U.S.C. §§ 2112(c), 2905(a), 3106(a). Even Plaintiff appears to recognize that such an enforcement mechanism exists. *See* Br. 19-21 & n.7. But under Plaintiff's theory, any such action would be pointless: a court would have to treat any records removed from the White House as "personal" records *because* they were removed.[2]

### 2. A document's status as "Presidential" or "personal" is irrelevant

Even if Plaintiff could have designated the seized records as "personal" records, that would provide no basis for an injunction or special-master review. A document's categorization as a "personal" record does not preclude the government from obtaining

---

[2] Perhaps recognizing that problem, Plaintiff asserts that the government's recourse is limited to "filing a *civil action* seeking to challenge the *process* by which [Plaintiff] designated the records as personal." Br. 21; *see also id.* at 19-20. Plaintiff confuses cases brought by private litigants under the Administrative Procedure Act—which the *Armstrong* cases limited to challenges regarding PRA-related procedures and guidelines, *see Armstrong II*, 1 F.3d at 1292-94—with the express authority that the PRA and related provisions give the Attorney General to initiate an action "for the recovery of records unlawfully removed," 44 U.S.C. § 2905(a); *see also id.* §§ 2112(c), 3106(a).

*Donald J. Trump v. United States of America*, No. 22-13005

it through a search warrant or using it in a criminal investigation. Law enforcement officials routinely conduct judicially authorized searches to seize evidence of crimes, *see* Fed. R. Crim. P. 41(c)(1), and that evidence routinely consists of personal effects, including personal papers. Nothing in the law prohibits the government from using documents recovered in a search if they are "personal," and the search warrant here authorized the government to seize materials stored collectively with records bearing classification markings regardless of their status as "personal" or Presidential records. *See* U.S. Br. 8.

Yet Plaintiff claims that all seized records he purportedly deemed "personal" must "therefore be returned" to him, Br. 23, presumably based on Plaintiff's even more novel suggestion that the PRA *preempts* criminal laws and criminal procedure and somehow renders the government's search unlawful. *See, e.g.*, Br. 20 ("the PRA . . . contains no provision authorizing the United States Department of Justice to seize records from a former President that were designated as personal"); *id.* at 58 ("[t]he Government has here deployed the unlawful tactic of ignoring the PRA [and] seizing personal records"). That argument is meritless. The government executed its search based on a judicial finding of probable cause that it would uncover evidence of violations of multiple criminal laws, including laws prohibiting the unauthorized retention of national defense information and obstruction of justice. U.S. Br. 8; *see* 18 U.S.C. §§ 793, 1519. The search sought, moreover, to recover extraordinarily sensitive documents, the disclosure of which could damage national security, that were being

*Donald J. Trump v. United States of America*, No. 22-13005

kept in a location not approved for the storage of classified information. The government did not execute its search to enforce the PRA, to advance the historic preservation mission of NARA, or to challenge Plaintiff's "categorization decisions" as to records. Br. 21.

Plaintiff's repeated assertion that the PRA contains no criminal enforcement mechanism, Br. 20-21, thus aims at a straw man. And Plaintiff's assertion that the government's only recourse is to bring a civil suit simply reads these criminal laws and the government's "compelling interest in protecting . . . the secrecy of information important to our national security," *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980), out of existence. Nothing in the PRA repeals or displaces the criminal authorities that formed the basis for the search. "[A]bsent a clearly expressed congressional intention an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (internal quotations and alterations omitted).[3]

Simply put, the government can review and use materials obtained in its judicially authorized search regardless of whether they are Presidential or "personal" records. At

---

[3] Indeed, the PRA itself states that Presidential records shall not be made available to anyone who "has been convicted of a *crime* relating to the . . . removal . . . of records of the Archives." 44 U.S.C. § 2204(f) (emphasis added). *See also id.* § 2905(a) (referencing "other redress provided by law").

*Donald J. Trump v. United States of America*, No. 22-13005

most, a record's categorization under the PRA speaks to whether that record would be provided to NARA or returned to Plaintiff after the government's investigation concludes.

## II.    THE DISTRICT COURT ERRED IN EXERCISING EQUITABLE JURISDICTION UNDER *RICHEY* AND HAS NO BASIS TO CONTINUE EXERCISING JURISDICTION

### A.    The District Court Abused Its Discretion Because Plaintiff Failed to Establish Callous Disregard of His Constitutional Rights

The first *Richey* factor—whether the government displayed a "callous disregard" for constitutional rights—is both the "foremost consideration" and is "indispensab[le]." U.S. Br. 21-23; *Trump v. United States*, 2022 WL 4366684, at \*7 (11th Cir. Sept. 21, 2022) (per curiam) (quoting *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977)). Although Plaintiff counters that *Chapman* only used the word "indispensability" in "describing *Richey*'s holding," Br. 14, *Chapman*'s interpretation of *Richey* is itself binding precedent. Nor does *Chapman*'s consideration of the remaining *Richey* factors undercut this point. *Cf. Trump*, 2022 WL 4366684, at \*7 (considering remaining factors "for the sake of completeness").

Moreover, the entire purpose of the "anomalous jurisdiction" described in *Richey*, *Chapman*, and *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir. 1974), is to enable a district court to hear "actions for the suppression or return of *unlawfully seized property* even though no indictment has been returned and no criminal prosecution is yet in existence." *Chapman*, 559 F.2d at 406 (emphasis added); *see Hunsucker*, 497 F.2d at 32

*Donald J. Trump v. United States of America*, No. 22-13005

("federal district courts have power to order the suppression or return of *unlawfully seized property* even though no indictment has been returned") (emphasis added). Where there has been no unlawful seizure, the exercise of pre-indictment jurisdiction is inappropriate. Indeed, the two cases Plaintiff cited below further support that conclusion. DE.28:8; *see United States v. Dean*, 80 F.3d 1535, 1542 (11th Cir. 1996), *modified*, 87 F.3d 1212 (11th Cir. 1996) ("doctrine of 'equitable' or 'anomalous' jurisdiction" enables courts to "adjudicate actions for the return of *unlawfully seized property* even though no indictment has been returned") (emphasis added); *In re $67,470.00*, 901 F.2d 1540, 1544 (11th Cir. 1990) (similar); *see also United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989) ("anomalous jurisdiction extends to federal law enforcement officers who have failed to observe standards for law enforcement established by federal rules governing searches and seizures").[4]

---

[4] Plaintiff also suggests that the government's search was unlawful by misstating the government's arguments and the scope of the search warrant. The government has never claimed that its search "only sought records bearing classification markings," and that is not "all . . . Attachments A and B to the search warrant authorized." Br. 15 n.5. Attachment B authorized the government to seize "[a]ll physical documents and records constituting evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793, 2071, or 1519," including, *inter alia*, "[a]ny physical documents with classification markings, *along with* any containers/boxes (including any other contents) in which such documents are located, as well as any other containers/boxes that are collectively stored or found together with the aforementioned documents and containers/boxes." MJ-DE.125:38 (emphasis added).

**B. The Remaining *Richey* Factors Weigh Further Against the Exercise of Jurisdiction and Foreclose the Continued Exercise of Jurisdiction**

For the reasons explained in Part I, *supra*, Plaintiff's new assertion that he has an "interest in and need for the seized property" because the seized records are "presumptively his personal property," Br. 15-16, is forfeited and baseless. The Presidential records seized by the government are owned exclusively by the United States. 44 U.S.C. § 2202.

That is particularly so as to records bearing classification markings. Those markings indicate, at a minimum, that the records contain information "owned by, produced by or for, or . . . under the control of the United States Government." Exec. Order No. 13,526, § 1.1(2), 75 Fed. Reg. 707, 707 (Jan. 5, 2010).[5] Plaintiff does not claim—and cannot claim—any legitimate "need" to review or retain government documents whose disclosure could damage national security. To the contrary, the government has a compelling interest in protecting that information, and "courts should order review of such materials in only the most extraordinary circumstances." *Trump*, 2022 WL 4366684, at *11.

Moreover, Plaintiff has now had an opportunity to review all of the seized records except those bearing classification markings, and the government has no

---

[5] Although Plaintiff maintains that there is a "fundamental disagreement as to . . . the classification status of certain documents," Br. 28, he still has never provided any evidence or even any specific assertion that he declassified any of the seized records. *See Trump*, 2022 WL 4366684, at *8.

*Donald J. Trump v. United States of America*, No. 22-13005

objection to Plaintiff retaining copies. DE.182-1:9. Therefore, even if the district court's exercise of jurisdiction was permissible at the outset, Plaintiff has already been given all the relief to which he could be entitled. "[T]he law does not allow . . . any additional relief beyond" a Rule 41(g) movant obtaining copies of seized records, because Rule 41(g) is "not intended to deny the government the use of evidence it needs during its investigations and prosecutions." *In re Search of Office of Tylman*, 245 F.3d 978, 979, 980 (7th Cir. 2001). Under *Richey*, in other words, Plaintiff can no longer claim an injury from the deprivation of the seized unclassified records.

## III.   THE DISTRICT COURT ERRED BY ENJOINING THE GOVERNMENT FROM REVIEWING OR USING THE SEIZED RECORDS

Even if the district court's exercise of jurisdiction were proper, the court erred by enjoining the government's review and use of materials recovered through a judicially authorized search pending a special-master review. The government has explained why it is likely to succeed on the merits as to any executive privilege claims and why Plaintiff's potential attorney-client privilege claims did not justify an injunction. U.S. Br. 28-40. Plaintiff counters that he is "likely to succeed on the merits," Br. 57, but Plaintiff appears unsure what the "merits" consist of, much less why he should prevail. Plaintiff's response brief abandons his arguments related to executive privilege, and his claims regarding attorney-client privilege are functionally moot. The government and the public are irreparably injured while the district court's injunction persists, and this Court should reverse it.

*Donald J. Trump v. United States of America*, No. 22-13005

## A. Plaintiff Has Abandoned His Executive Privilege Arguments

The government explained why *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) (*Nixon v. GSA*), and *United States v. Nixon*, 418 U.S. 683 (1974), dispose of any executive privilege claims that Plaintiff could make. U.S. Br. 28-38. Plaintiff's brief offers no response; he does not even cite *Nixon v. GSA*, and he cites *United States v. Nixon* just once in discussing appellate jurisdiction. Br. 35.

A party "abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments or authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (citing cases). *See, e.g.*, *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 n.4 (11th Cir. 2017) ("appellee has waived the argument by failing to discuss it in its answer brief") (internal quotations and alterations omitted). Although Plaintiff has asserted executive privilege during the special-master proceeding, he offers no response to the government's arguments in this appeal. He has therefore abandoned any claim that executive privilege justifies restricting the government's review of the seized records.[6]

---

[6] In the special-master proceedings, Plaintiff has asserted executive privilege as to 121 out of 2,916 documents—nearly always as a fallback argument if the special master rejects his contention that they are "personal" records. DE.182-1:9 n.3. Plaintiff has not provided specific justifications for shielding any particular documents. Additionally, although Plaintiff's filings below contain legal arguments regarding executive privilege, *see* DE.171:9-18; DE.183-1:6-11, Plaintiff does not even reference those filings here, and this Court "disapprove[s] in the strongest possible terms of incorporation by reference of district court briefing." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1220 n.3 (11th Cir. 2020) (internal quotations omitted). Should the

*Donald J. Trump v. United States of America*, No. 22-13005

## B. Plaintiff's Single Remaining Attorney-Client Privilege Dispute Cannot Justify an Injunction

Even before the special-master review began, the government's filter team had reviewed all seized records and segregated those that could be subject to potential claims of attorney-client privilege. U.S. Br. 8-12. The government's opening brief noted three instances in which the investigative team, following the filter protocol and applying broad criteria, subsequently ceased review of a document and provided it to the filter team for further review. U.S. Br. 39-40. The filter team concluded that none of the three documents is privileged; and—as the public record now reflects—Plaintiff agrees. *See* DE.138:2 (Plaintiff not asserting privilege as to document referred to as B-076); DE.158-1:1 and DE 162 (same, as to "Document 21" and "Document 22"); *see also* DE.148 (sealed filter team filing describing these documents).

The government's filter team has also now returned to Plaintiff a limited set of documents segregated by the filter team—as it sought to do at the very outset, *see* U.S. Br. 25—thus mooting any hypothetical disputes about attorney-client privilege as to those documents. *See* DE.138:2.

Most importantly, Plaintiff has now reviewed all of the other seized records except those bearing classification markings. The sole remaining dispute pertains to one

---

Court consider those arguments nonetheless, the government respectfully requests that its counterarguments also be considered. *See* DE.173:10-15; DE.182-1:9-13.

*Donald J. Trump v. United States of America*, No. 22-13005

portion of a one-page document, *see* DE.182-1:1,[7] and the filter protocols originally directed by the magistrate judge provide a mechanism to resolve such disputes, *see* MJ-DE.125:31-32. Plaintiff has not asserted attorney-client privilege as to any other seized record. Plaintiff's general criticisms of filter teams are therefore irrelevant, *see* Br. 54-56, 62-63, and there can be no reason to enjoin the government from reviewing or using records as to which Plaintiff has *declined* to assert attorney-client privilege.

### C. Plaintiff Offers No Other Arguments Justifying an Injunction

Plaintiff offers no other plausible claims on which he could prevail, and therefore no reasons supporting an injunction. *See* Br. 57-61. First, Plaintiff contends that he has standing under Rule 41(g) based on his arguments about the seized records' purported status as "personal" under the PRA and because some of the seized records are actual personal records. Br. 58. As explained above, Plaintiff's PRA arguments lack merit, and a document's status as a "personal" record would not entitle Plaintiff to its return. *See supra* Part I. Indeed, personal records comingled with classified documents could be important evidence establishing ownership or possession. *See* U.S. Br. 35-36.

Plaintiff next asserts in conclusory fashion that he "has a claim of privilege over at least some of the seized documents." Br. 60. In support, he cites the district court's opinion denying the government's motion for a partial stay (Supp. App. 175-76

---

[7] That document was identified by the investigative team during the special-master review and, consistent with the filter protocol, it was referred to the filter team. The filter team has filed a sealed letter to the Special Master regarding its position. DE.186.

*Donald J. Trump v. United States of America*, No. 22-13005

(DE.89:5-6)). But the district court did not find that Plaintiff has any specific or valid claim of privilege, and Plaintiff has failed to offer reasons supporting any such claims here. As to Plaintiff's assertions about authority to declassify documents while President, Br. 60-61, the government has already explained why those claims are irrelevant, U.S. Br. 43-45, and Plaintiff offers no response. *See also Trump*, 2022 WL 4366684, at *8 (Plaintiff's "declassification argument is a red herring").

Finally, Plaintiff states that after the special-master review, he "will be entitled to return of some of the seized items," including "not only [the] privileged materials but also [] the seized materials (*i.e.*, personal records) unrelated to the investigation." Br. 61. That assertion is wholly unsupported. At most, Plaintiff is entitled to a single page of a single document if he prevails on a disputed claim of attorney-client privilege. He offers no authority supporting his entitlement to materials that he claims are "unrelated to the investigation," or for the notion that "personal records" have no such relation. Again, to the extent Plaintiff relies on his theory that the PRA precludes the use of criminal investigative processes to enforce criminal statutes, he is incorrect. And in any case, Plaintiff already has copies of all seized records except those bearing classification markings.

In short, there are no live issues on which Plaintiff can plausibly succeed. Absent any likelihood of any success on the merits of any claim, there is no justification for an injunction.

*Donald J. Trump v. United States of America*, No. 22-13005

## D. The Government and the Public Suffer Irreparable Injury from the Injunction, and the Balance of Equities Requires Reversal

This Court correctly concluded that the district court's injunction as initially constituted caused the government irreparable harm. *See Trump*, 2022 WL 4366684, at *11. Plaintiff does not appear to dispute that. Instead, he claims the government has not "proffered any evidence [that] its criminal investigation has been hampered" during the special-master process that has ensued. Br. 64.

First, as the party seeking injunctive relief, Plaintiff bore the burden of demonstrating an irreparable injury, and he failed to meet it. Plaintiff points only to purported harm arising from the government's investigation and the potential threat of prosecution. Br. 26. As this Court and the government have explained, that is not a legally cognizable injury. *Trump*, 2022 WL 4366684, at *8; U.S. Br. 25-26.

Second, although this Court's stay mitigated the injunction's most severe harms to the government and the public, the rest of the injunction has impeded the government's investigation in other ways. The sole purpose for which the government has been permitted to review the seized unclassified records is to participate in a prolonged dispute with Plaintiff about their categorization. The government has been enjoined from using unclassified records comingled with records bearing classification markings to (for example) piece together timelines related to when these materials might have been compiled or accessed, or to question witnesses who may be familiar with

*Donald J. Trump v. United States of America*, No. 22-13005

these documents' contents. Beyond that, the government cannot be expected to disclose to Plaintiff specific investigative steps that it would take absent the injunction.

## IV.  THE COURT SHOULD TERMINATE THE SPECIAL-MASTER REVIEW ORDERED BY THE DISTRICT COURT

### A. This Court Has Jurisdiction to Review the District Court's Appointment of the Special Master

Plaintiff argues that this Court lacks jurisdiction to review the district court's September 15, 2022 order (DE.91) appointing Judge Raymond Dearie as the special master, which Plaintiff refers to as "the Special Master Order." Br. 28-41. But the government is not appealing that order. Rather, the government seeks review of the district court's September 5, 2022 order (DE.64), which provides that a "special master shall be APPOINTED to review the seized property" and that the government is "ENJOINED from further review and use of any of the materials seized from Plaintiff's residence on August 8, 2022, for criminal investigative purposes pending resolution of the special master's review process." DE.64:23. As this Court has already held, it has jurisdiction to consider that aspect of the district court's order.

#### 1. The Court has pendent appellate jurisdiction

As the Court correctly recognized in granting a partial stay, this Court has pendent jurisdiction over the portion of the order providing for appointment of a special master because it is expressly tied to the injunction. *See Trump*, 2022 WL 4366684, at *6 n.3. Pendent appellate jurisdiction permits review of an otherwise non-appealable issue if it is "'inextricably intertwined with' or 'necessary to ensure

*Donald J. Trump v. United States of America*, No. 22-13005

meaningful review of'" an immediately appealable ruling. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 531 (2021); *see, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997) (because appellate court had jurisdiction to review district court's denial of motion to dismiss on Presidential immunity grounds, it had pendent jurisdiction to review district court's ruling staying trial); *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009) (affirming appellate jurisdiction to review denial of a motion to dismiss for failure to state a claim pendent to the denial of qualified immunity, citing other cases).

The injunction here is an immediately appealable ruling under 28 U.S.C. § 1292(a)(1), and it expressly applies "pending resolution of the special master's review." DE.64:23. The district court itself explained that it issued the injunction "in natural conjunction with th[e] appointment [of the special master], and consistent with the value and sequence of special master procedures." DE.64:1; *see also* DE.64:19 (injunction was necessary "to uphold the value of the special master review"). The special-master review is thus inextricably intertwined with the injunction; indeed, it was the very predicate for the injunction. *See Jones*, 520 U.S. at 707 n.41.

Plaintiff asserts that the propriety of the injunction "can be resolved without reaching the merits of the Special Master issue." Br. 47-48 (internal quotations omitted). In initiating these proceedings, however, Plaintiff asserted that his "request for a Special Master is closely related to the request to enjoin any further review of seized material." DE.28:7. Plaintiff was correct at the outset. The government has argued that the injunction is unwarranted precisely because the special-master review process is

*Donald J. Trump v. United States of America*, No. 22-13005

unwarranted. U.S. Br. 47-48. That is, the government contends that there is no basis for the injunction because Plaintiff lacks claims of executive or attorney-client privilege that could plausibly justify a special-master review process. Plaintiff simply ignores the nature of the government's arguments in claiming that the validity of the injunction turns on "whether [Plaintiff] has a possessory interest in the documents . . . and whether irreparable harm would occur," and that the special-master appointment turns on various issues related to Federal Rule of Civil Procedure 53. Br. 48.

Furthermore, pendent jurisdiction is available for the independent reason that it is "necessary to ensure review of the immediately appealable order." *Whole Woman's Health*, 142 S. Ct. at 531. As just explained, this Court cannot fully evaluate the merits of the injunction without evaluating the merits of appointing a special master to review executive and attorney-client privilege claims.

2. <u>The Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over the entire September 5 order</u>

Even setting pendent appellate jurisdiction aside, this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which provides that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts . . . granting . . . injunctions." The September 5th order granted an injunction against the government. Appellate jurisdiction thus lies over that entire order, including the provision that a "special master shall be APPOINTED to review the seized property." DE.64:23; *see American Society for Testing & Materials v. Public.Research.Org, Inc.*, 896 F.3d

437, 445 (D.C. Cir. 2018) ("because this order granted an injunction, we may consider the entire [order] pursuant to 28 U.S.C. § 1292(a)(1)") (internal quotations omitted); *In re Seabulk Offshore, Ltd.*, 158 F.3d 897, 899 n.2 (5th Cir. 1998); *Bernard v. Airline Pilots Ass'n*, 873 F.2d 213, 215 (9th Cir. 1989) (similar).

The Supreme Court explained as much when it construed parallel language in 28 U.S.C. § 1292(b): "As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original); *see also BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1537-1538 (2021) (employing the same interpretation of "order" to conclude that a court of appeals has jurisdiction to review all grounds for removal addressed in a remand order, not just the federal-officer ground providing the basis for appellate review under 28 U.S.C. § 1447(d)).

Plaintiff argues that *Yamaha* and *BP* are inapposite because Section 1292(b) supposedly serves a different purpose than Section 1292(a). Br. 43. But what matters is the statutory text, not its perceived purpose. *See Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496-97 (2022). The plain text of Section 1292(a)(1) confers jurisdiction to review "orders . . . granting . . . injunctions"—just as the text of Section 1292(b) confers jurisdiction to review certain "order[s]" that "involve[] a controlling question of law," and just as the text of Section 1447(d) confers jurisdiction to review certain "order[s] remanding a case."

*Donald J. Trump v. United States of America*, No. 22-13005

Plaintiff's observation that a court of appeals has discretion to reject an appeal under Section 1292(b) but not Section 1292(a), Br. 43-44, is irrelevant. That fact cannot change Section 1292(a)'s plain text. And courts of appeals have no discretion to refuse appeals under Section 1447(d) either, but that does not undermine the textual point above. *See BP*, 141 S. Ct. at 1538.

Plaintiff errs in invoking *Abney v. United States*, 431 U.S. 651 (1977), which relates to the collateral order doctrine and the materially different text of 28 U.S.C. § 1291. Br. 45. There, the Court held that the denial of a motion to dismiss an indictment on double-jeopardy grounds is immediately appealable under the collateral order doctrine but that other claims in a motion to dismiss are not necessarily immediately appealable. 431 U.S. at 657-63. Specifically, the Court held that a ruling rejecting a double-jeopardy claim qualifies as a "final decision" within the meaning of Section 1291 under the test set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), but a ruling rejecting a different ground supporting a motion to dismiss does not. *Abney*, 431 U.S. at 658; *see also Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (applying the collateral order doctrine and construing the term "final decision" under Section 1291). That reasoning is inapplicable to Section 1292(a), which provides appellate jurisdiction over "orders," not just particular "decision[s]" within those orders.

3.  The directive to divulge classified documents is reviewable as a collateral order

Finally, this Court has jurisdiction under the collateral order doctrine to review the aspects of the district court's order requiring that the government produce classified

*Donald J. Trump v. United States of America*, No. 22-13005

documents for the special-master review. *See Al Odah v. United States*, 559 F.3d 539, 542-544 (D.C. Cir. 2009) (per curiam); *cf. Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 113 n.4 (2009) (leaving the question open). An interlocutory ruling is immediately appealable as a collateral order if it is "conclusive," "resolve[s] important questions separate from the merits," and is "effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Industries*, 558 U.S. at 106 (citation omitted).

The district court's order compelling the disclosure of documents bearing classification markings conclusively determines the government's obligation to disclose those sensitive materials; compelled disclosure outside the Executive Branch is an important issue separate from the merits of the underlying dispute; and disclosure, once made, is irreversible. The D.C. Circuit held exactly that in *Al Odah*, finding appellate jurisdiction to review an order compelling disclosure of classified records. 559 F.3d at 543-44; *see* U.S. Br. 50-51. Plaintiff does not even cite *Al Odah* or explain why an order to disclose classified information is not conclusive, important, separate, and irreversible.

## B. No Remaining Disputes Warrant the Special-Master Review

For the reasons explained above, there are no outstanding disputes that warrant a special-master review. Plaintiff's arguments related to the PRA lack merit and do not entitle him to any relief; Plaintiff's executive privilege arguments lack merit, and he has abandoned them before this Court; and Plaintiff's dispute with the government regarding attorney-client privilege boils down to a portion of a one-page document. That dispute can readily be addressed by the magistrate judge through the mechanism

*Donald J. Trump v. United States of America*, No. 22-13005

specified in the government's search warrant application. MJ-DE.125:32 (parties can "seek a ruling from the court regarding any attorney-client privilege claims as to which the [filter team] and the privilege-holder cannot reach agreement").

## **CONCLUSION**

For these reasons, the Court should reverse the district court's September 5 order with instructions to dismiss this action.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
*United States Attorney*
*99 N.E. 4th Street, 8th Floor*
*Miami, FL 33132*
*(305) 961-9001*

MATTHEW G. OLSEN
*Assistant Attorney General*

JAY I. BRATT
*Chief, Counterintelligence and Export Control Section*
JULIE EDELSTEIN
SOPHIA BRILL
JEFFREY M. SMITH
*Attorneys*
*National Security Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-233-0986*

*Counsel for Appellant*

November 17, 2022

*Donald J. Trump v. United States of America*, No. 22-13005

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,498 words. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Garamond.


*/s/ Sophia Brill*
Sophia Brill

*Donald J. Trump v. United States of America*, No. 22-13005

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 17, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Sophia Brill*
Sophia Brill